# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| HEARTLAND SURGICAL ) <br> SPECIALTY HOSPITAL, LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MIDWEST DIVISION, INC. d/b/a ) <br> HCA MIDWEST DIVISION, *et al.*, ) <br> ) <br> Defendants. ) <br> _____ ) | Case No. 05-2164-MLB-DWB |

## **MEMORANDUM AND ORDER**

Before the Court is Plaintiff Heartland Surgical Specialty Hospital, LLC's ("Heartland's") motion to compel against Defendant CIGNA HealthCare of Ohio, Inc. ("CIGNA"). (Doc. 414.) The nature of the underlying anti-trust litigation is well-known to the Court and all parties and need not be detailed here.

In its motion, Heartland seeks a declaration that CIGNA has waived the attorney-client privilege with respect to legal advice CIGNA received from its in-house counsel concerning contractual exclusivity provisions. Heartland also requests the reasonable expenses in making its motion. The parties have fully

1

briefed the matter, including supplemental memoranda.[1]  (Docs. 415, 416, 419, 420, 421, 422, 423, 424, 425.)

## FACTUAL BACKGROUND

In response to document discovery requests, Defendant Midwest Division, Inc. d/b/a HCA Midwest Division ("HCA")[2] produced to Heartland a February 2, 2004, memorandum HCA received from CIGNA which discussed, among other things, contractual exclusivity provisions being negotiated between HCA and CIGNA for inclusion in an HCA/CIGNA contract (the "HCA/CIGNA Contract Memorandum").  (Doc. 415 at 3.)  The HCA/CIGNA Contract Memorandum stated, *inter alia*:

> PPO Exclusivity: On the subject of PPO exclusivity/rate trigger language, CIGNA has both legal concerns and management directives that restrict it from committing to such language.  Our anti-trust attorney has reviewed the current and proposed language and has found that CIGNA is at risk and should not proceed.  This finding is based, in part, on a review of the case facts from a recent case in Oregon.  We strongly believe it is in HCA's and CIGNA's best interests to avoid the increased possibility of a similar situation ever happening here.

---

[1] The motions, memoranda, and exhibits considered in this motion were the subject of a previous Order by this Court, dated January 10, 2007, which directed certain portions of the documents be filed electronically under seal.  (Doc. 375.)  The parties have complied with the Court's Order in that regard and the underlying issue is now ripe for consideration.

[2] Although HCA is a co-defendant in this litigation, it is not a party to the current dispute.

2

(Doc. 416 at 8.)  When CIGNA produced its privilege log to Heartland, CIGNA claimed attorney-client privilege protected the disclosure of documents concerning the legal advice CIGNA had received from its attorneys regarding the HCA/CIGNA contract negotiations.  (Doc. 415 at 5.)  Heartland argues that these documents are not privileged and that CIGNA, "by voluntarily disclosing to a third party the specific legal advice CIGNA received from its counsel" concerning exclusivity provisions, "and/or otherwise placing such advice at issue in the litigation," has "waived whatever privilege may have originally attached to those communications and their subject matter."  (Doc. 414 at 1.)

## DISCUSSION

Federal Rule of Evidence 501 dictates that the common law governs claims of privilege in federal-question cases.  FED. R. EVID. 510.  Privileges are to be strictly construed and narrowly applied.  *See Trammel v. United States*, 445 U.S. 40, 50 (1980) (stating that "testimonial exclusionary rules and privileges . . . must be strictly construed"); *Univ. Of Pa. v. EEOC*, 493 U.S. 182, 189 (1990) (stating that although privileges are to be decided on a case by case basis, the Court was disinclined to "exercise this authority expansively").  The burden of establishing the applicability of a privilege rests with the party asserting the privilege.  *United States v. Lopez*, 777 F.2d 543, 552 (10th Cir. 1985).

The attorney-client privilege applies to communications between a client and an attorney, made in confidence, under "circumstances from which it may reasonably be assumed that the communication will remain in confidence." *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006) (citing *Lopez*, 777 F.2d at 552). "Because confidentiality is key to the privilege, '[t]he attorney-client privilege is lost if the client discloses the substance of an otherwise privileged communication to a third party.'" *Id.* (quoting *United States v. Ryans*, 903 F.2d 731, 741 n.13 (10th Cir. 1990)). Voluntary disclosure by the client holding the attorney-client privilege waives the privilege. *United States v. Bernard*, 877 F.2d 1463 1465 (10th Cir. 1989). If a court finds that a waiver of a privilege has occurred, the waiver is to be narrowly construed, but applies to all other communications relating to the same subject matter. *See, e.g.*, *Kovacs v. Hershey Co.*, No. 04-cv-01881, 2006 WL 2781591, at *6 (D. Colo. Sept. 26, 2006) ("Waivers of the [attorney-client] privilege have been held to be narrowly construed. The scope of the waiver turns on the scope of the disclosure, and the inquiry is whether the disclosure involves the same subject matter as the desired testimony." (internal quotations and citations omitted)); *IMC Chem.s, Inc. v. Niro Inc.*, No. 98-2348-JTM, 2000 WL 1466495, at *16 (D. Kan. July 19, 2000) ("Fairness determines the proper scope [of the waiver of attorney-client privilege

based on disclosure]. When a party or its attorney discloses privileged communications upon deposition, fairness generally dictates that the privilege is waived as to all communications related to the disclosed matters.").

Heartland argues CIGNA waived its attorney-client privilege when it disclosed the following three sentences in the HCA/CIGNA Contract Memorandum:

> Our anti-trust attorney has reviewed the current and proposed language and has found that CIGNA is at risk and should not proceed. This finding in based, in part, on a review of the case facts from a recent case in Oregon. We strongly believe it is in HCA's and CIGNA's best interests to avoid the increased possibility of a similar situation ever happening here.

Heartland asserts CIGNA has waived any attorney-client privilege with respect to the HCA/CIGNA Contract Memorandum and has also, therefore, waived the attorney-client privilege with respect to that memorandum's subject matter. (Doc. 415 at 3.) Heartland also argues CIGNA waived claims of attorney-client privilege by placing the HCA/CIGNA Contract Memorandum "at issue" in the current lawsuit. (Doc. 415 at 9.) CIGNA responds that waiver of attorney-client privilege does not apply to legal conclusions given during the course of contract negotiations (Doc. 419 at 4) and, even if it does apply, waiver should not be found to the broad extent argued by Heartland (Doc. 419 at 8). CIGNA also denies that it has placed

attorney-client privileged communications at issue in this litigation.[3]  (Doc. 419 at 9.)

Heartland asserts CIGNA is, in effect, proposing the Court find its disclosure in the HCA/CIGNA Contract Memorandum was a "selective waiver" that does not waive the attorney-client privilege beyond the limited disclosure made.  The recent case of *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179 (10th Cir. 2006) discusses the selective waiver doctrine.  In *Qwest*, the Tenth Circuit considered whether Qwest had waived the attorney-client privilege with respect to documents it had already produced to a government agency.  Qwest produced its documents pursuant to an agreement with the agency that purported to maintain the attorney-client privilege of the documents, but did not foreclose further disclosure by the government.  *Id.* at 1181-82.  After considering cases from other jurisdictions, the Tenth Circuit refused to adopt "a selective waiver doctrine as an exception to the

---

[3] As an initial matter, the parties also appear to dispute the relevancy of the requested discovery.  CIGNA states that documents Heartland cites supporting its relevance assertion "have nothing whatsoever to do with this dispute." (Doc. 419 at 4.)  The Court agrees that Heartland unnecessarily referenced extraneous materials in its motion.  The motion to compel, however, concerns an issue at the very heart of the litigation: whether defendants conspired with each other, through the use of exclusionary contractual agreements, to effect a boycott of Heartland. (Doc. 249 at ¶ 39.)  CIGNA denies these allegations and asserts its conduct was "supported by a legitimate and procompetitive business justification." (Doc. 270 at ¶ 92.)  Discovery on this topic is therefore relevant.  *See* FED. R. CIV. P. 26(b)(1) (permitting discovery of "any matter, not privileged, that is relevant to the claim or defense of any party"and clarifying that the information need not be admissible at trial "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence").

general rules of waiver upon disclosure of protected material." *Id.* at 1192. The Court stated that "[b]ecause exceptions to the waiver rules necessarily broaden the reach of the privilege or protection, selective waiver must be viewed with caution." *Id.* at 1195.

As a result of the *Qwest* decision, this Court is foreclosed from finding a selective waiver has taken place, and the general rules of waiver of attorney-client privilege apply. Heartland cites the case of *United States v. Bernard*, 877 F.2d 1463 (10th Cir. 1989), for support for its position that CIGNA has waived all claim of privilege it may have had in connection with any legal advice regarding the HCA/CIGNA exclusivity provision. In *Bernard*, an appeal from a criminal conviction, a third-party testified that the defendant told him his attorney had verified the legality of a loan proposal the defendant made to the third-party. *Id.* at 1465. The district court ruled that the defendant had waived his attorney-client privilege in regard to loans made by the defendant to the third party. *Id.* The Tenth Circuit held that the defendant had "willingly sacrificed his attorney-client confidentiality and privilege by voluntarily disclosing the confidential communication" to the third party. *Id.* The Court went on to state that "[a]ny voluntary disclosure by the client is inconsistent with the attorney-client relationship and waives the privilege." *Id.* The Court found that the defendant had

used the attorney-client conversation to induce the third party to engage in a loan, which was inconsistent with the confidential nature of the attorney-client privilege. *Id.*

Heartland argues the *Bernard* case is controlling because, like the defendant in *Bernard* who revealed his attorney's advice in an effort to induce a third-party during negotiations, CIGNA revealed its conversation with its counsel in an effort to sway negotiations over contract language. Heartland argues that CIGNA disclosed the substance of the underlying communication with its attorneys and *Bernard* forecloses CIGNA from now claiming privilege with respect to this topic.

In response, CIGNA argues that a "subject-matter waiver" has not been shown because its disclosure falls into a protected category of disclosures that assert a party's position on a legal matter during business negotiations. Contrary to its assertions, however, there is no such special category recognized by the Tenth Circuit case law, and the recent *Qwest* opinion makes it very clear that this Circuit is unwillingly to allow the maintenance of attorney-client privilege once a disclosure of that privileged communication has been made. *See Qwest*, 450 F.3d at 1192 (characterizing the selective waiver doctrine as "a leap, not a natural, incremental step in the common law development of privileges and protections").

In addition, CIGNA's arguments based on subject-matter waiver are

8

misplaced. The subject matter waiver doctrine deals with situations in which a party "injects into the case an issue that in fairness requires an examination of privileged communications." *B.H. v. Gold Fields Mining Corp.*, No. 04-CV-0564, 2006 WL 2757809, at *4 (N.D. Okla. Dec. 19, 2006) (quoting *Cox v. Adm'r United States Steel & Carnegie*, 17 F.3d 1386, 1422 (11th Cir. 1994) ); *see also In re Commercial Fin. Servs.*, 247 B.R. 828, 846 n.21 (Bankr. N.D. Okla. 2000) ("The issue of fairness does not arise until the partial disclosure of privileged information is placed *at issue* in the case by the disclosing party, *i.e.*, the partially disclosed information is used as a 'sword.'"). As discussed more fully below, CIGNA has not "placed in issue" evidence shielded by the attorney-client privilege. Therefore, CIGNA's discussion of subject-matter waiver and CIGNA's insistence that Heartland establish legal prejudice or some fairness argument supporting waiver by CIGNA of the attorney-client privilege is not relevant.[4]

CIGNA did much more here than generically take a position on a legal issue.

---

[4] One district court case, *United States v. Graham*, No. 03-CR-089-R, 2003 WL 23198792, at *5 (D. Colo. Dec. 2, 2003), discusses the subject-matter waiver doctrine in relation to a voluntary disclosure of documents protected by the attorney-client privilege. These circumstances would seemingly make *Graham* apply to the facts of this motion, and may be the source of the confusion with regard to the subject matter waiver doctrine.
   Even applying *Graham*, however, CIGNA has not made a compelling argument. *Graham* held that the disclosure of the document constituted not only a waiver of the privilege as to the disclosed document, but also as to "all documents relating to the subject matter of the disclosed documents," which is the precise argument supporting Heartland's position in this motion.

9

CIGNA's statements in the memorandum to HCA are more than generic negotiation points. The statements reveal the precise advice of CIGNA's attorney to CIGNA with regard to the contractual exclusivity language at issue. It is clear that CIGNA has waived the attorney-client privilege as to that communication.[5]

Heartland, however, seeks a finding by this Court that more than the memorandum has lost its privileged status. As noted above, the scope of the waiver of an attorney-client privilege is determined by the scope of the disclosure. Here, CIGNA disclosed its attorney's thoughts about contractual exclusivity arrangements based on the attorney's anti-trust concerns. As discussed above, because the Court finds that a waiver of a privilege has occurred, the waiver, although narrowly construed, applies to all other communications relating to the same subject matter. *Kovacs v. Hershey Co.*, No. 04-cv-01881, 2006 WL 2781591, at *6 (D. Colo. Sept. 26 2006); *IMC Chem.s, Inc. v. Niro Inc.*, No. 98-2348-JTM, 2000 WL 1466495, at *16 (D. Kan. July 19, 2000). The Court therefore finds that documents claimed as privileged by CIGNA on this topic have also been subjected to CIGNA's waiver of its attorney-client privilege.

---

[5] CIGNA claims the ruling sought by plaintiff would "cripple business negotiations and call into question the routine conduct of parties in negotiations." (Doc. 419 at 2.) The Court doubts the extreme nature of this argument. A contracting party is free to negotiate using its legal concerns as a backdrop, as long as they do not reveal the precise opinions of its attorneys on the subject.

The Court directed that CIGNA submit several documents for *in camera* review by the Court. (Doc. 349.) In a supplemental memorandum, CIGNA informs the Court that only the following documents (totaling sixteen pages) from its privilege log are at issue in this motion to compel: Priv.CHC-0001-0002, Priv.CHC-0004-0007, Priv.CHC-0008-0012, Priv.CHC-0013, Priv.CHC-0024-0025, and Priv.CHC-0026-0027. (Doc. 422 at 4.) The Court has reviewed all of the documents submitted for *in camera* review and finds that only the following documents are not privileged as CIGNA has waived the attorney-client privilege with respect to each.

- Documents Priv.CHC-0001-0002 are a two-page internal memorandum from a CIGNA attorney to a CIGNA employee, dated July 22, 2003, discussing the anti-trust implications of proposed exclusivity provisions in the CIGNA/HCA contract. This topic is the direct subject matter of the CIGNA memorandum to HCA and, therefore, any attorney-client privilege is waived as to these documents as well.

- Documents Priv.CHC-0004-0007 are a draft of the HCA/CIGNA Contract Memorandum, dated January 30, 2004. The draft is certainly within the subject matter of the waived document and attorney-client privilege is waived to it as well.

- Documents Priv.CHC-0008-0012 are an internal email chain providing legal analysis of an Oregon anti-trust case. The email is dated January 28, 2004, within days of the draft of the HCA/CIGNA Contract Memorandum, and it appears obvious that it is this discussion of a "case from Oregon" that CIGNA is referring to in the HCA/CIGNA Contract Memorandum. Therefore, Documents Priv.CHC-0008-0012's attorney-client privilege status is also waived.

- Document Priv.CHC-0013 is an internal email also regarding the Oregon case (dated January 27, 2004) and, for the same reasons as Documents Priv.CHC-008-0012, Document Priv.CHC-0013's privileged status has been waived.

- Documents Priv.CHC-0024-0025 are the same documents as Priv.CHC-0001-0002 and the privilege status of these two pages is accordingly waived as well.

- Documents Priv.CHC-0026-0027 are notes made by the CIGNA attorney who drafted the internal memorandum identified above in Documents Priv.CHC-0001-0002 (and Documents Priv.CHC-0024-0025 which are the same as Priv.CHC-0001-0002). CIGNA identifies the notes as being made in 2003. The notes appear to be a draft of the memorandum this CIGNA attorney wrote, which the Court has previously identified as subject to waiver. Therefore, these Documents are also no longer privileged.

As a result of the Court's findings, the above documents have lost their protection from discovery and are no longer protected by the attorney-client privilege.

The Court will also briefly address Heartland's second argument for waiver, however, as a means of foreclosing similar arguments in the future. Heartland asserts CIGNA has placed the HCA/CIGNA Contract Memorandum "at issue" in this litigation and has therefore also waived its attorney-client privilege on this basis. In its Third Amended Complaint, Heartland alleged:

> At least some of the Defendants have also furthered their unlawful conspiracy through a series of exclusionary contractual arrangements that prevent managed care insurers from contracting with Heartland and other "niche" or "specialty" hospitals like it in the Kansas City metropolitan area. . . . Indeed, at least one managed care

>    defendant initially balked at one of the hospital defendant's proposed "exclusivity" provisions, communicating that such a provision raised substantial legal concerns and violated its own internal management directives with respect to its business practices. . . .

(Doc. 249 at ¶ 4.)  In its Answer to Heartland's Third Amended Complaint, CIGNA answered Heartland's allegation by stating:

>    CHC-OHIO is without knowledge as to whether this paragraph purports to allege facts involving CHC-OHIO, and on that basis denies it.  To the extent the allegations in paragraph 4 of the Complaint are directed to CHC-OHIO, CHC-OHIO denies that it participated in or furthered any unlawful conspiracy through exclusionary contracts or otherwise; that its agreements cause any market foreclosure; and that its agreements lack legitimate business justifications.  CHC-OHIO admits that in the course of comprehensive negotiations with a hospital network over the terms and conditions of CHC-OHIO's contractual relationship with the hospital, the issue of network configuration was negotiated.  To the extent the allegations in paragraph 4 purport to describe those negotiations, CHC-OHIO denies that the description of the negotiation contained in paragraph 4 of the Complaint is accurate and in the proper context, and denies that the negotiations are properly characterized.  To the extent the allegations of paragraph 4 of the Complaint relate to defendants other that CHC-OHIO, CHC-OHIO lacks information sufficient to form a belief as to the truth of the allegations in paragraph 4 of the Complaint, and therefore denies them.

(Doc. 270 at ¶ 4.)  Heartland, by picking individual words and phrases from CIGNA's Answer, constructs an argument that CIGNA "affirmatively disputed Plaintiff's 'characterize[ation]' of the memorandum and further claimed that the

legal advice set forth in the memorandum must be placed 'in the proper context.'" (Doc. 415 at 9 (quoting CIGNA's Answer, Doc. 270 at ¶ 4).)

The Court does not accept Heartland's contrived view of the pleadings. As evident from Heartland's Third Amended Complaint and CIGNA's Answer, set forth above, CIGNA in no way referred to legal advice of its attorneys. CIGNA admits that it engaged in contract negotiations with a hospital network and that the issue of network configuration was negotiated, but never references any particular position it had with respect to those negotiations and certainly does not disclose its attorneys' advice with respect to those negotiations. These generic statements do not constitute waiver of an attorney-client privilege. CIGNA has not placed the substance of the communications it received from counsel at issue in this litigation and no basis for finding a waiver of attorney-client privilege exists on these grounds.

## AWARD OF MOVANT'S EXPENSES

Heartland asks this Court for an award of its expenses in making its motion. (Doc. 414 at 1.) FED. R.CIV. P. 37 governs the award of fees and expenses incurred in relation to a motion to compel discovery that is granted by the court. Rule 37(d) requires that "the court shall" require a party failing to respond to discovery requests to pay the reasonable expenses, including attorney's fees, caused by the

failure, "unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." The Rule also requires the movant to "include a certification that the movant has in good faith conferred or attempted to confer with the party failing to answer or respond in an effort to obtain such answer or response without court action." FED. R. CIV. P. 37(d).

As stated, the award of expenses is mandatory, unless the Court finds that CIGNA's objections were "substantially justified." A finding of substantial justification "depends on the particular facts of each case." *Hutchinson v. Pfeil*, No. 98-5043, 1999 WL 1015557, at *3 (10th Cir. Nov. 9, 1999). In this matter, Heartland made a good faith effort to obtain the documents prior to filing its motion to compel. However, CIGNA's failure to produce the documents was substantially justified, pending a ruling of this Court. The documents at issue were confidential and, absent waiver, protected by the attorney-client privilege. A Court finding of waiver was reliant on a Court determination that CIGNA had waived not only the attorney-client privilege with respect to the HCA/CIGNA Contract Memorandum, but also as to underlying documents covering the subject matter of that memorandum. CIGNA's reluctance to produce these documents was not done in bad-faith and was substantially justified.

## CONCLUSION

As stated above, the burden of establishing the applicability of a privilege rests with the party asserting the privilege. *United States v. Lopez*, 777 F.2d 543, 552 (10th Cir. 1985). CIGNA has not met its burden with respect to the specific documents listed above.

Heartland's motion to compel is GRANTED in part and DENIED in part. The Court finds that CIGNA has waived the attorney-client privilege with respect to the documents listed above. CIGNA should adjust its claims of privilege and its privilege log accordingly and disclose these documents to Heartland. Heartland's request for expenses in this matter is DENIED.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas on this 6th day of February, 2007.

      s/ DONALD W. BOSTWICK
DONALD W. BOSTWICK
U.S. MAGISTRATE JUDGE