## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| HEARTLAND SURGICAL | ) | |
| SPECIALTY HOSPITAL, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 05-2164-MLB-DWB |
| | ) | |
| MIDWEST DIVISION, INC. d/b/a | ) | |
| HCA MIDWEST DIVISION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Before the Court is Plaintiff Heartland Surgical Specialty Hospital LLC's

("Heartland's") motion to compel production of documents from the Kansas

Hospital Association ("KHA") (Doc. 404.)[1]  In its motion, Heartland asks that

KHA be compelled, pursuant to a subpoena, to produce all documents withheld on

the basis of First Amendment privilege.  The parties have fully briefed the matter.

---

[1] Heartland made its motion pursuant to FED. R. CIV. P. 37(a) and 45(e) and D. Kan. Rule 37.1.  As KHA correctly points out, however, Rule 37(a) does not address a motion to compel production of documents based on a subpoena to a nonparty.  *See* FED. R. CIV. P. 37(a) (governing motions to compel disclosure pursuant to Rule 26(a) or discovery pursuant to Rules 30, 31, 33, and 34).  In its Reply, Plaintiff states that its motion is properly considered as a motion to compel production pursuant to FED. R. CIV. P. 45(c)(2)(B).  The Court will treat it as such.  The Court will address the applicability of FED. R. CIV. P. 45(e) in connection with discussion of Plaintiff's request for expenses, *infra.*

(Doc. 405, 441, 467.)  The nature of the underlying anti-trust litigation is well-known to the Court and all entities involved in this matter and need not be detailed here.  KHA is not a party to the underlying anti-trust litigation.

FACTUAL BACKGROUND

KHA is an association of at least 125 hospitals across the state of Kansas. One of its primary missions is to represent the interests of its members in the Kansas legislature.  KHA has advocated for bills in the Kansas legislature impacting general and specialty hospitals in both the 2005 and 2006 legislative session.  (Doc. 441 at 3.)

On August 26, 2006, Heartland served a subpoena on KHA asking for production of twelve categories of documents.  (Doc. 405, Ex. 1.)  The twelve categories generally relate to the "activities of the Hospital and Managed Care Defendants in this lawsuit regarding competition from physician-owned specialty hospitals or freestanding surgery centers."  (Doc. 405 at 1.)  On September 13, 2006, KHA produced 192 pages of documents to Heartland and also served Heartland with objections to the subpoena.  (Doc. 405, Ex. 2.)  KHA objected to Heartland's subpoena with overbreadth, unnecessary burden, First Amendment privilege, attorney-client privilege, "privacy/HIPAA," relevance, and "reasonable

compensation" objections.[2]  KHA also produced documents to Heartland

throughout October and November, for a total production of about 1000 pages.

(Doc. 441 at 2.)  Some of the documents produced by KHA were redacted in

accordance with its objections.  KHA also produced a privilege log to Heartland in

November 2006, which identified 56 documents it was withholding or had

redacted.  Of those 56 documents, 47 of the documents were logged in the

privilege log solely based on First Amendment privilege grounds.  (Doc. 405, Ex.

3.)  Heartland clarifies in its reply that its motion seeks *only* the 47 documents

identified by KHA in its privilege log as withheld solely based on the First

Amendment privilege.  (Doc. 467 at 2.)

---

[2]  KHA's objections are as follows: Category 1, overbreadth and unnecessary
burden objections.  Category 2, overbreadth and First Amendment privilege, attorney-
client privilege, and unnecessary burden objections.  Category 3, an overbreadth
objection.  Category 4, overbreadth, First Amendment privilege, and attorney-client
privilege objections.  Category 5, overbreadth, First Amendment privilege, and attorney-
client privilege objections.  Category 6, an overbreadth objection.  Category 12,
"privacy/HIPAA," relevance, and "reasonable compensation" objections.  Objections
were not made to categories 7 through 11.  (Doc. 405, Ex. 2.)

DISCUSSION

FED. R. CIV. P. 45 governs subpoenas to non-parties.[3]  Regarding compliance

with a subpoena by the party served, Rule 45(c)(2)(B) states, in pertinent part:

> [A] person commanded to produce and permit inspection,
> copying, testing, or sampling may, within 14 days after
> service of the subpoena or before the time specified for
> compliance if such time is less than 14 days after service,
> serve upon the party or attorney designated in the subpoena
> written objection to producing any or all of the designated
> materials . . . .  If objection is made, the party serving the
> subpoena shall not be entitled to inspect, copy, test, or
> sample the materials . . . except pursuant to an order of the
> court by which the subpoena was issued.  If objection has
> been made, the party serving the subpoena may, upon
> notice to the person commanded to produce, move at any
> time for an order to compel the production, inspection,
> copying, testing, or sampling.  Such an order to compel
> shall protect any person who is not a party or an officer of
> a party from significant expense resulting from the
> inspection, copying, testing, or sampling commanded.

Regarding claims of privilege, Rule 45(d)(2)(A) states:

> When information subject to a subpoena is withheld on a
> claim that it is privileged . . ., the claim shall be made
> expressly and shall be supported by a description of the
> nature of the documents, communications, or things not
> produced that is sufficient to enable the demanding party to

---

[3] Rule 45 was amended effective December 1, 2006, to conform the provisions for subpoenas to changes in other discovery rules largely related to discovery of electronically stored information.  While the subpoena at issue here was served prior to the effective date of the amendments, the Court does not believe that the amendments affect the issue presented in this case, and the Court will therefore apply and cite to the amended version of the rule.

contest the claim.

KHA's objection to Heartland's subpoena based on the First Amendment privilege states as follows:

> The plaintiff has advised that it considers that this request, and other similar requests identified below, to encompass any materials related to Kansas Hospital Associations lobbying efforts. During both the 2005 and 2006 legislative sessions, the Kansas Hospital Association presented legislative proposals and testimony as to issues concerning specialty hospitals. As part of developing its legislative proposal, it utilized a task force involving representatives of member institutions, including but certainly not limited to St. Luke's South and the Shawnee Mission Medical Center, along with Kansas Hospital Association staff and counsel. KHA is currently in the process of preparing a log of items that it has identified associated with this legislative process. These may include task force minutes, meeting agendas, reports, recommendations from counsel, draft legislative bills, and board minutes.
>
> The First Amendment protects association efforts to influence government to enact laws. In addition, the Supreme Court has recognized that the First Amendment creates a qualified privilege from disclosure of certain information in discovery. The claim of First Amendment privilege requires the trial court to conduct a balancing test before ordering disclosure. This requires that the parties seeking information have independently attempted to obtain the information elsewhere without success, that the information sought go[es] to the 'heart of the matter,' and that the information be of certain relevance. '[I]t has been concluded that compulsory disclosure in the course of a 'fishing expedition' is ruled out in a First Amendment case.' A 'fishing expedition' is exactly the plaintiff's purpose and the plaintiff has made no showing as to any of

the required elements. . . .

(Doc. 405, Ex. 2 at 4) (internal citations omitted).  Heartland argues that KHA has

not shown that the First Amendment applies to the documents requested and, even

if the Court finds that the privilege does apply, the balance of factors weighs in

favor of an Order of production.  (Doc. 405 at 4-7.)

The First Amendment protects "a right to associate for the purpose of

engaging in those activities protected by the First Amendment – speech, assembly,

petition for the redress of grievances, and the exercise of religion."  ***Roberts v.***

***United States Jaycees***, 468 U.S. 609, 618 (1984).  This is generally referred to as

"freedom of expressive association."  *Id.*  The courts have "long understood as

implicit in the right to engage in activities protected by the First Amendment a

corresponding right to associate with others in pursuit of a wide variety of political,

social, economic, educational, religious, and cultural ends.  *Id.* at 622 (citations

omitted).

First Amendment protections may be implicated in the context of discovery

orders, even if all the litigants are private entities.  ***Grandbouche v. Clancy***, 825

F.2d 1463, 1466 (10th Cir. 1987);  ***Britt v. Superior Court of San Diego County***,

574 P.2d 766, 773-74 (Cal. 1978) (en banc) (noting that the chilling effect on First

Amendment rights "is not diminished simply because disclosure is compelled

6

pursuant to a litigation-oriented discovery order" in a private lawsuit).  KHA

claims the First Amendment privilege protects the documents listed in its privilege

log from production in this case.

Initially, KHA has the burden to show that the privilege it is asserting

applies.  ***McCormick v. City of Lawrence, Kansas***, No. 02-2165-JWL, 2005 WL

1606595, at *7 (D. Kan. Jul. 8, 2005) (stating that the party asserting the First

Amendment associational privilege must first make a *prima facie* showing that the

privilege applies).  Then, if the party claiming the privilege has made this *prima*

*facie* showing, the burden shifts to the party seeking the information, and the Court

will apply a balancing test considering the following factors: (1) the relevance of

the evidence; (2) the necessity of receiving the information sought; (3) whether the

information is available from other sources; and (4) the nature of the information.

***Grandbouche***, 825 F.2d at 1466 (*citing **Silkwood v. Kerr-McGee Corp.***, 563 F.2d

433, 438 (10th Cir. 1977)).

The First Amendment associational privilege applies when a discovery order

"entails the likelihood of a substantial restraint upon the exercise by petitioner's

members of their right to freedom of association."  ***NAACP v. Alabama***, 357 U.S.

449, 462 (1958).   Thus, if the compelled disclosure is likely to adversely affect the

ability of an organization and its members to collectively advocate for the

organization's beliefs by inducing members to withdraw from the organization or dissuading others from joining the organization because fear of exposure of their beliefs will lead to threats, harassment, or reprisal, it runs afoul of the First Amendment. *Id.* at 462-63. The type of threats, harassment, and reprisal discussed by the Supreme Court in *NAACP* are threats of physical coercion or bodily harm, economic harm or reprisal, loss of employment, and other public manifestations of hostility. *Id.* at 462.

As the Court noted in *Roberts v. United States Jaycees*, the First Amendment right to associate with others may apply to a wide variety of political, and economic associations. 468 U.S. at 622. For example, the Tenth Circuit has stated that the First Amendment protects "advocacy concerning the lawful modification or elimination of the federal tax system." *Pleasant v. Lovell*, 876 F.2d 787, 795 (10th Cir. 1989). Therefore, KHA's advocacy for modification of Kansas laws concerning general and speciality hospitals would appear to be a type of political or economic association that would also be protected by the First Amendment privilege. *See e.g., East. R.R. President's Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 1356 (1961) (holding that "the Sherman Act does not prohibit two or more persons from associating together in an attempt to persuade the legislature or the executive to tackle particular action with respect to a

law that would produce a restraint or a monopoly"); ***United Mine Workers of Am.
v. Pennington***, 381 U.S. 657, 670 (1965) (noting that a "concerted effort to
influence public officials regardless of intent of purpose" does not violate the
Sherman Act even though intended to eliminate competition).

Heartland argues that the First Amendment privilege is only to protect the
"relatively powerless" from serious threats of economic reprisal, loss of
employment, threat of physical coercion or similar manifestations of public
hostility.  (Doc. 405 at 5.)  The Court does not believe that the privilege is as
restricted in nature as Plaintiff implies.  *See e.g.,* ***Austl./E. USA Shipping
Conference v. United States***, 537 F. Supp. 807, 809-10 (D.C. Cir. 1982) (gathering
cases recognizing precedent that "forced disclosure of activities and associations
protected by the First Amendment" is subject to a balancing of harms and stating
that "petitioning the government is equally central to first amendment values");
***State of Wyoming v. United States Dep't of Agric.***, 208 F.R.D. 449, 454 (D.D.C.
2002) (protecting environmental organizations who allegedly had influence with
U.S. Department of Agriculture in the drafting of forest regulations and noting the
broad scope of the First Amendment privilege to include not only association
membership lists, but also encompassing "the freedom to protest policies to which
one is opposed, and the freedom to organize, raise money, and associate with other

like-minded persons so as to effectively convey the message of the protest").

Finally, courts have rejected similar contentions that the First Amendment protects

only dissident, unorthodox or unpopular organizations, noting that the Amendment

should afford "constitutional protection to the privacy interests of members of *all*

politically oriented associations." ***Britt v. Superior Court of San Diego County***,

574 P.2d at 772 (emphasis in original).

Heartland also argues that KHA has not shown a "reasonable probability"

that production of the requested documents to Heartland will threaten, intimidate or

harass KHA or its members.  (Doc. 405 at 5; Doc. 467 at 7.)  The Court disagrees.

It has been recognized that there are several ways that actions may infringe on the

First Amendment right of association: (1) by the government imposition of

penalties or withholding of benefits; (2) by attempting to require disclosure of the

fact of membership where anonymity is desired; or (3) by attempts to interfere with

the internal organization or affairs of the group. ***Pleasant v. Lovell***, 876 F.2d 787,

795 (10th Cir. 1989) (*citing **Roberts v. United States Jaycees***, 468 U.S. 609, 622-

23 (1984)).  Here, the attempt to require production of KHA's "evaluations of

possible legislation and legislative strategy" (Doc. 441 at 8) is the type of action

that would appear to interfere with KHA's internal organization and with its

lobbying activities, and therefore would have a "chilling effect" on the

10

organization and its members.  *See e.g., **Austl./E. USA Shipping Conference v.
United States**,* 537 F. Supp. at 810-11 (concluding that "[a] factual showing of
actual chilling is not a necessity for a decision forbidding disclosure . . ." and it is
for the court to evaluate the likelihood of a chilling effect under the
circumstances);  ***Britt v. Superior Court of San Diego County***, 574 P.2d at 773-74.


In Plaintiff's Reply, it quotes from a portion of Judge Brimmer's opinion in
***State of Wyoming v. United States Department of Agriculture***, 239 F. Supp. 2d
1219 (D. Wyo. 2002), *vacated as moot*, 414 F. 3d 1207 (10th Cir. 2005).  In
discussing the issue of what constitutes a *prima facie* showing that the
associational privilege applies, Judge Brimmer noted that where discovery seeks
disclosure of an organization's "internal associational activities (i.e., membership
lists, volunteer lists, financial contributor lists, and <u>past political activities of
members</u>)" this is a sufficient showing "because disclosure of these activities chills
freedom of association."  239 F. Supp. 2d at 1237 (emphasis added).  He continues
by stating that as to these types of activities, "federal courts assume, sometimes
implicitly, that the party seeking protection has made his *prima facie* showing. . . ."

11

*Id.*[4]

KHA asserts Heartland is seeking documents related to KHA's strategy of advocating for bills in the Kansas legislature that would have impacted specialty hospitals.  (Doc. 441 at 3.)  This is precisely the type of internal associational activity and past political activity that the First Amendment is designed to protect. Therefore, the Court concludes that KHA has met its *prima facie* burden of showing that production of such material would have a chilling effect and thus the First Amendment privilege applies.  The burden then shifts to Heartland to show how the balancing of factors weighs in support of compelling disclosure of the information covered by the First Amendment privilege.

To overcome KHA's *prima facie* showing, Heartland must show how the following factors weigh in favor of disclosure: (1) the relevance of the evidence; (2) the necessity of receiving the information sought; (3) whether the information is available from other sources; and (4) the nature of the information. **Grandbouche**, 825 F.2d at 1466.  And, as the Tenth Circuit noted in **Silkwood v. Kerr McGee Corp.,** 563 F.2d 433, 438 (10th Cir. 1977), "[f]rom these criteria [the

---

[4]  Judge Brimmer notes that "[I]n a sense, courts have taken judicial notice of the fact that disclosure of these internal associational activities – membership lists, volunteer lists, financial contributor lists, and political activities of the organization's members – will lead to threats, harassment, or reprisal, thereby chilling freedom of association.  239 F. Supp. 2d at 1238 n.14.

four balancing factors noted above], it has to be concluded that compulsory disclosure in the course of a 'fishing expedition' is ruled out in the First Amendment cases."

With regard to the first factor, the relevance of the evidence, Heartland argues that the documents are relevant, but supports this assertion only by stating that the documents "pertain to the claims" Heartland made in its Third Amended Complaint.  (Doc. 405 at 6.)  Heartland goes on to argue relevance by stating that it believes the documents "may reveal these Defendants' views and opinions about specialty hospitals as well as affirmative actions taken by Defendants to exclude Plaintiff Heartland and other doctor-owned facilities from the market."  (Doc. 405 at 7.)  With regard to the fourth factor, the nature of the information sought, Heartland argues that the documents it seeks are "highly important."  Heartland supports this assertion only by stating that "KHA does not hide its opposition to physician-owned specialty hospitals" and KHA "provides a setting where Defendants, including horizontal competitors, can work together to limit the opportunities and viability of specialty hospitals."   (Doc. 407 at 7.)

Heartland addresses the second factor, the necessity of receiving the information sought, and the third factor, whether the information is available from other sources, together, without distinguishing the two.  With regard to these

13

factors, Heartland claims it is unable to obtain the documents it seeks elsewhere. Heartland relates that it has requested KHA documents from another Defendant, but that Defendant refused to produce the documents.  Heartland also states that, even if Defendants produced the KHA documents in their possession, the production would be unlikely to contain all the documents KHA created.  (Doc. 405 at 7.)

KHA replies to these arguments by stating: (1) the privileged documents are of minimal relevance because KHA is not a party, the documents relate only to efforts of KHA before the Kansas legislature, and the documents relate only broadly to KHA's members' views of specialty hospitals (of which membership, "[o]ver 95%" are not parties to this litigation); (2) KHA has produced as much information as possible without specifically disclosing its legislative strategy; and (3) Heartland has not made an attempt to obtain the information from the Defendants who were members of the task force underlying the creation of the privileged documents.   (Doc. 441 at 8-10.)

After considering the balance of the factors, the Court finds that Heartland has not met its burden of showing the balance of the factors weighs in its favor. The information sought is only *minimally* relevant to the claims made in this lawsuit.  *Cf.  Austl./E. USA Shipping Conference v. United States*, 537 F. Supp. at

14

810, 812 (a greater showing of relevance and need is required where First
Amendment issues are at stake in order to give more protection to First
Amendment values); ***State of Wyoming v. United States Dep't of Agric.***, 239 F.
Supp. 2d at 1241 (when a claim of Associational Privilege is asserted, the
relevance standard is more exacting than the minimal showing of relevance under
Rule 26(b)(1), and the information must go to the heart of the matter).  Heartland
seeks information about Defendants' involvement in discussions regarding
exclusion of specialty hospitals, the substance of the claims in this litigation, but
the privileged documents are tangential to those claims as they relate only to
KHA's legislative strategy and proposed legislative language.  In addition, only
two of the present Defendants in this case were a part of the KHA task force.

The necessity of the information sought has also not been shown.  This is a
civil matter and the requested information is not central to the litigation because of
its minimal relevance.  Therefore, Heartland has not shown a truly compelling need
for the information.  In addition, the nature of the information sought is privileged
and "central to first amendment values." ***Austl./E. USA Shipping Conference v.
United States***, 537 F. Supp. 807, 809-10 (D.C. Cir. 1982).  This all suggests that
the subpoena for the KHA documents may be a "fishing expedition." ***Silkwood v.
Kerr McGee Corp.,*** 563 F.2d 433, 438 (10th Cir. 1977).  Further, KHA is not a

15

member to this lawsuit and this weighs against compelling disclosure.  *See e.g.,*

***Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto,*** 211 F.R.D. 658, 662 (D. Kan.

2003), *citing* ***Katz v. Batavia Marine & Sporting Supplies,*** 984 F.2d 422, 424

(Fed.Cir. 1993) (the status of a person as a nonparty is a factor that weighs against

disclosure); ***Echostar Comms. Corp. v. News Corp. Ltd.***, 180 F.R.D. 391, 394 (D.

Colo. 1998) ("the status of a person or entity as a non-party is a factor which

weighs against disclosure").

Finally, Heartland has failed to show that the information Heartland seeks is

clearly unavailable from other sources.  Heartland can directly ask the two

Defendants who were involved in the task force about matters relating to

Heartland, without the need for privileged lobbying strategy materials.[5]  Even if the

information was wholly unavailable to Heartland, however, the balance of the

factors outweighs this one factor in Heartland's favor: the information sought is

not highly relevant; it is not necessary for Heartland to receive the information to

continue to pursue its claims, and the nature of the information is highly privileged.

Because the Court finds that the balance of the factors weighs in support of

---

[5]  Heartland has filed a motion to compel against Defendant Saint Luke's Health System, Inc. seeking a Court Order for the production of lobbying documents from KHA. (Doc. 399 at 12.)  That motion will be the subject of a separate Memorandum and Order from this Court.

maintaining the privilege of the documents as asserted by KHA, Heartland's motion is accordingly DENIED.

## AWARD OF MOVANT'S EXPENSES

Heartland requests that KHA be ordered to pay Heartland's reasonable expenses in making this motion, including its attorneys' fees.  (Docs. 404 at 1-2; 405 at 8.)  Heartland does not articulate the basis for its request for attorneys' fees.

Courts considering this issue have concluded that the only authority in the Federal Rules of Civil Procedure for imposition of sanctions against a nonparty for failure to comply with a subpoena are found in FED. R. CIV. P. 45(e).  ***Cruz v. Meachum***, 159 F.R.D. 366, 368 (D. Conn. 1994); ***24 Hour Fitness U.S.A., Inc. v. 24/7 Tribeca Fitness, L.L.C.***, No. 03 Civ. 4069 (RLE), 2006 WL 1881763 at * 2 (Jul. 6, 2006).   Rule 45(e) states that the failure, without "adequate excuse," to comply with a subpoena may be deemed contempt of court, and further states that an "adequate cause for failure to obey exists when a subpoena purports to require a nonparty to . . . produce at a place not with the [proscribed] limits."  The Rule says nothing more with regard to sanctions.

However, courts construing the contempt provisions of Rule 45(e) have concluded that sanctions such as costs, should not be imposed on a nonparty unless

the court has already issued an order compelling discovery. *Cruz v. Meachum*, 159

F.R.D. at 368; *24 Hour Fitness U.S.A.*, 2006 WL 1881763 at * 2-3. The Court

agrees with this approach. Here the Court has not previously entered any order

compelling production. In fact, the Court has found the documents listed in KHA's

privilege log to be privileged pursuant to the First Amendment. Under these

circumstances, Heartland has not stated any basis for an award of attorneys' fees

and the request for fees is DENIED.

In its response, KHA asks for "costs of complying with the subpoena."

(Doc. 441 at 10.) KHA does not support its request in any manner or cite any

authority providing for such an award of costs. Clearly, if the Court had entered an

order compelling KHA to produce the subpoenaed documents, FED. R. CIV. P.

45(b)(2)(B) specifically provides that "such an order to compel the production

shall protect any person who is not a party or an officer of a party from significant

expense resulting from the inspection and copying commanded." In this case,

however, the Court did not enter an order commanding KHA to produce the

records , so this provision of the rule does not support KHA's request for the costs

of complying with the subpoena. Because KHA has failed to state any legal basis

for the Court to order the payment of the requested costs, KHA's request for costs

is DENIED.

CONCLUSION

Heartland's motion to compel production of documents from the Kansas Hospital Association is DENIED. Heartland's request for an award of costs incurred in bringing the present motion, and KHA's cross-request for an award of costs for complying with the subpoena, are also DENIED.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas on this 16th day of March, 2007.

   s/ DONALD W. BOSTWICK
DONALD W. BOSTWICK
U.S. MAGISTRATE JUDGE