IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

HEARTLAND SURGICAL          )
SPECIALTY HOSPITAL, LLC,    )
                            )
                Plaintiff,  )
                            )
v.                          )          Case No. 05-2164-MLB-DWB
                            )
MIDWEST DIVISION, INC. d/b/a )
HCA MIDWEST DIVISION, *et al.*, )
                            )
                Defendants. )
_____ )

## <u>MEMORANDUM AND ORDER</u>

Before the Court is Defendants' Joint Motion to Compel Heartland Surgical

Specialty Hospital LLC ("Heartland") to Produce a Rule 30(b)(6) Witness with

Knowledge of Its Production of Documents and Data.  (Doc. 409.)  In the motion,

Defendants seek an order compelling Heartland to produce a witness who can

testify regarding topics 8, 9, 10, 16, and 17 of Defendants' notice of 30(b)(6)

deposition.  (Doc. 409 at 1.)  Defendants also request an award of the costs

incurred in bringing the motion and in taking a second Rule 30(b)(6) deposition on

the topics.  (Doc. 409 at 1.)  The parties have fully briefed the matter.  (Docs. 410,

1

446, 474.) [1]  The nature of the underlying anti-trust litigation is well-known to the Court and all parties and need not be detailed here.

## FACTUAL BACKGROUND

Defendants' Rule 30(b)(6) deposition notice to Heartland on November 14, 2006 identified 55 separate topics for the deposition.  (Doc. 350.)  The notice was discussed during the status conference held on November 16, 2006, and the Court granted Defendants' request to split the noticed deposition topics into two Rule 30(b)(6) depositions.[2]  (Doc. 427 at 58-59;  Status Conference Order No. 2, dated November 21, 2006, Doc. 357 at 4.)  Defendants were allowed 11 deposition hours over 2 days for topics 1 through 17 (Doc. 357 at 4) and 24 hours over 4 days for topics 18 through 55 (Docs. 365 at 3; 366 at 1-2).  Defendants commenced their first Rule 30(b)(6) deposition over topics 1 through 17 on November 28, 2006.

This motion concerns only whether Heartland has complied with the

---

[1]  The Court has also granted Defendants' Motion (Doc. 473) for leave to file under seal and to file conventionally the Exhibit B to its Joint Reply.  *See* Doc. 593.

[2]  At the status conference, Cigna's attorney stated that he had provided Heartland's counsel with a copy of the first seventeen topics by letter of October 20, 2006, stating that these were topics Defendants felt could be dealt with initially.  (Doc. 427 at 25.)  Plaintiff counters that this earlier letter did not specifically identify the 17 topics included in the later deposition notice, but instead referred to a deposition concerning "systems documents, accounting system, records, company history and similar background."  (Doc. 446 at 4 n. 2.)  However, Plaintiff's counsel stated at the November 16 status conference that "And they're [Defendants] right.  In October they gave us the initial 17, and we have been consistent all along."  (Doc. 427 at 43.)

requirements of Rule 30(b)(6) with respect to its designated representative's responses to deposition questions on topics 8, 9, 10, 16, and 17.  Those topics are described in the deposition notice (Doc. 350) as follows:

> Topic 8: "The document retention policies applicable to any [Heartland][3] Financial Records,[4] [Heartland] Patient Records,[5] [Heartland] Financial Reports,[6] or [Heartland] Plans and Forecasts."[7]
>
> Topic 9: "The destruction, alteration, or loss of any [Heartland] Financial Records, [Heartland] Patient Records, [Heartland] Financial Reports, or [Heartland] Plans and Forecasts."

---

[3] The notice defines Heartland broadly to include Heartland Surgical Specialty Hospital and "its agents, employees, consultants, investors, owners, members, shareholders, or representatives."

[4] The term "[Heartland] Financial Records" is defined by the notice as "records of Heartland Surgical Specialty Hospital, LLC's income, expenses, assets, liabilities, accounts receivable, accounts payable, profits, losses, or other financial information."

[5] The term "[Heartland] Patient Records" is defined by the notice as "records of Heartland Surgical Specialty Hospital, LLC's patient encounters and patient billing, including but not limited to patient names and addresses, admissions, diagnoses, referring physicians, treating physicians, treatments, fees and charges, discounts, capes, invoices, claims submitted to insurers and other third-party payers, amounts collected from patients, and amounts collected from third-party payers."

[6] The term "[Heartland] Financial Reports" is defined by the notice as "reports that state, summarize or analyze information contained in [Heartland] Financial Records or [Heartland] Patient Records, including but not limited to general ledger, income statements, balance sheets, financial statements, reports on uses and sources of capital, reports on changes in financial position, and reports on owners' equity or payments to owners."

[7] The term "Heartland Plans and Forecasts" is defined by the notice as "any budget, plan, projection, forecast or pro forma statement of Heartland Surgical Specialty Hospital, LLC's patient volume, income, expenses, assets, liabilities, accounts receivable, accounts payable, profits, losses, or other financial information."

Topic 10: "The capabilities of [Heartland's] AdvantX, Great Plains, and Softmed software, the data stored or used with that software, and the reports that can be generated with that software."

Topic 16: "The capabilities of the computer systems and software that [Heartland] uses or has used to create, transmit, or store e-mails and other electronic documents, and the extent to which [Heartland] can identify and produce information responsive to discovery requests in this Lawsuit that are stored in those systems."

Topic 17: "[Heartland's] search for, identification of and production of documents and information responsive to discovery requests in this Lawsuit."

## DISCUSSION

The procedure for taking an oral deposition of an organizational entity is governed by FED. R. CIV. P. 30(b)(6):

> A party may in the party's notice . . . name as the deponent a[n] . . . association . . . and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. . . .  The persons so designated shall testify as to matters known or reasonably available to the organization. . . .

As previously noted, on November 14, 2006, Defendants noticed Heartland pursuant to Rule 30(b)(6) for a deposition on fifty-five topics.  (Doc. 350.)  At the November 16, 2007 status conference, the Court allowed Defendants to split its

4

30(b)(6) deposition in two parts, with the first session dealing with topics 1
through 17.  (Doc. 427 at 58-59;  Status Conference Order No. 2, dated November
21, 2006, Doc. 357 at 4.)  Heartland designated its Chief Executive Officer, Mary
Nan Holley, to provide testimony on these topics.  (Doc. 446 at 1.)

      Heartland now contends for the first time that topics 1 through 17 are
"absurdly broad" (Doc. 446 at 2) and it did not have enough time to prepare for the
deposition (Heartland was "only given two weeks to prepare for the deposition-
which included the Thanksgiving holiday" (Doc. 446 at 6)).  At the November 16
status conference, Plaintiff's counsel did state that the first 17 topics were "very
extensive" (Doc. 427 at 45), but this comment was made in connection with how
long it would take to complete the deposition, not as an objection to the topics
themselves, or whether they were described with "reasonable particularity" as
required by Rule 30(b)(6).  The Court inquired of Heartland if it had determined
how many witnesses would be required to testify on topics 1 through 17, and was
told that they were narrowing down the number of witnesses and were in the
process of educating the corporate representative.  (Doc. 427 at 43-44.)  Heartland
never indicated to the Court that the topics were objectionable or that Heartland
would be unable to produce a knowledgeable corporate representative by the date
set for the deposition.  While Heartland did file an objection to the Rule 30(b)(6)

deposition the day before it was to commence,  *see* Doc. 474, Ex. A, that objection

did not specifically identify any dispute with the scope or description of topics 1

through 17, but merely objected that the notice had not been signed by local

counsel.

Moreover, Heartland never subsequently filed a motion  for a protective

order because it thought topics 1 through 17 were too broad, nor did it file a motion

with the Court seeking additional time to prepare a witness for the Rule 30(b)(6)

deposition.  In any case, it was Heartland's choice to use a designee without

substantial personal knowledge of the noticed topics, and the fact that Ms. Holley

required extensive education about the noticed topics is a burden that must be

borne by Heartland alone.  Finally, Heartland did not seek relief from this Court

due to their contention that the deposition of Ms. Holley had strayed from or

exceeded the parameters of the noticed topics.

Judge Rushfelt has set out the general guidelines with respect to Rule

30(b)(6) depositions:

> For a Rule 30(b)(6) deposition to operate effectively, the
> deposing party must designate the areas of inquiry with
> reasonable particularity, and the corporation must designate
> and adequately prepare witnesses to address these matters.
> If the rule is to promote effective discovery regarding
> corporations the spokesperson must be informed.  A notice
> of deposition made pursuant to Rule 30(b)(6) requires the
> corporation to produce one or more officers to testify with

respect to matters set out in the deposition notice or subpoena.  A party need only designate, with reasonable particularity, the topics for examination.  The corporation then must not only produce such number of persons as will satisfy the request, but more importantly, prepare them so that they may give complete, knowledgeable and binding answers on behalf of the corporation. . . .

Rule 30(b)(6) implicitly requires the designated representative to review all matters known or reasonably available to it in preparation for the Rule 30(b)(6) deposition.  This interpretation is necessary in order to make the deposition a meaningful one and to prevent the sandbagging of an opponent by conducting a half-hearted inquiry before the deposition but a thorough and vigorous one before the trial.  This would totally defeat the purpose of the discovery process.  The Court understands that preparing for a Rule 30(b)(6) deposition can be burdensome.  However, this is merely the result of the concomitant obligation from the privilege of being able to use the corporate (or other organizational) form in order to conduct business. A party does not fulfill its obligations at the Rule 30(b)(6) deposition by stating it has no knowledge or position with respect to a set of facts or area of inquiry within its knowledge or reasonably available. . . .

*Starlight Int'l Inc. v. Herlihy*, 186 F.R.D. 626, 638 (D. Kan. 1999) (internal quotations, alterations and citations omitted).  The initial question, then, is whether Defendants' notice described with "reasonable particularity" the matters on which examination was requested.  If it did, then Defendants satisfied their burden and Heartland was required to produce a knowledgeable designee.

Courts in this district have found a notice of Rule 30(b)(6) deposition topics

to be overbroad when the notice lists topics, but then indicates that the listed topics are not exclusive. ***Reed v. Bennett***, 193 F.R.D. 689, 692 (D. Kan. 2000).  In ***Reed***, the court found the notice did not comply with Rule 30(b)(6) because the corporation could not "identify the outer limits of the areas of inquiry noticed" because the notice stated that the topics of inquiry would include, but not be limited to, the topics listed in the notice.  *Id.*  Here, the Court specifically limited the parties to the noticed topics 1 through 17 (Doc. 357 at 4), so there can be no argument of overbreadth on the basis that the notice was not limited to the topics designated.[8]  Likewise, a notice is not overbroad when its plain language identifies the subject matter of the testimony sought, ***Steil v. Humana Kan. City, Inc.***, 197 F.R.D. 442, 444 (D. Kan. 2000), or is "specific in the information" sought in the notice, as long as the information sought is relevant, ***Ecrix Corp. v. Exabyte Corp***, 95 F. Supp. 2d 1155, 1158 (D. Colo. 2000).

The Court finds that Defendants' notice as to topics 1 through 17 described matters with reasonable particularity and satisfied Rule 30(b)(6).  Topics 8 and 9 identify the "document retention policies" and "destruction, alteration, or loss" of

---

[8]  A notice has also been found to be overbroad when the noticing party could easily find the information in the noticed topics through a less burdensome manner.  ***In re Indep. Serv.  Orgs. Antitrust Litig.***, 168 F.R.D. 651, 654 (D. Kan. 1996).  Heartland has not made an argument in this regard.

Heartland's financial records, patient records, financial reports, and plans and forecasts, as those terms are defined in the notice.  The definitions of patient records and financial reports do use the phrase "including but not limited to," but are then followed by an extensive example list of the records and reports for which information is sought by Defendants.  However, it is clear both from the language used in topics 8 and 9 and from the definitions provided what specific information is being sought.  Topic 10 very specifically lists the information sought by Defendants (capabilities, data, and reports from three listed software programs), as does topic 16 (computer systems and software used for Heartland's email and electronic documents).  The plain language of topic 17 involves Heartland's compliance with discovery requests.  It is true that Defendants sought a large amount of information, but there can be no claim that Heartland could not identify the "outer limits of the areas of inquiry." ***Reed***, 193 F.R.D. at 692.  Further, these topics are relevant to the discovery and documents produced to date in this litigation. *See* FED. R. CIV. P. 26(b)(1) (stating broad allowance of discovery into "any matter, not privileged," and "reasonably calculated to lead to the discovery of admissible evidence").

Having established that the notice provided to Heartland was sufficient, Heartland had a duty to adequately prepare a knowledgeable witness with respect

to the noticed topics.  As previously noted, Defendants' motion concerns *only* topics 8, 9, 10, 16, and 17, and Defendants have identified 6 specific question areas that could not be answered by Ms. Holley:

> 1.  What computer servers does Heartland use, and what data are stored on them?
>
> 2.  What computers, disk drives, and databases were searched for responsive documents?
>
> 3.  What are [Heartland's] document retention policies with respect to e-mail, and what was done to prevent deletion or destruction of responsive e-mail?
>
> 4.  Who is [Heartland's] e-discovery vendor, what was the vendor instructed to do, and what did it do?
>
> 5.  What was done to eliminate non-responsive documents from [Heartland's] production?
>
> 6.  What are the reporting capabilities of [Heartland's] Great Plains and AdvantX software, and can [Heartland] export its Great Plains and AdvantX databases to a file for production to defendants?

(Doc. 410 at 3.)

Question 1 is encompassed by topic 16.  Question 2 is encompassed within topic 17.  Question 3 is encompassed within topics 8 and 9.  Question 4 is encompassed within topics 16 and 17.  Question 5 is encompassed within topic 17. Question 6 is encompassed within topic 10.

With regard to question 1, when asked about specific servers previously

identified within Heartland documents, and the storage and retention of data items

on those servers, Ms. Holley could not identify some of the servers and did not

know the storage or retention policies for some identified servers.  With regard to

question 2, Ms. Holley did not know which network drivers were searched for

responsive discovery documents, whether individual user drives for former

employees were searched for responsive discovery documents, whether physician

owners' e-mails saved to Heartland servers were searched for responsive discovery

documents, whether archived e-mails were searched for responsive discovery

documents,  whether the voice-mail server was searched for responsive discovery

documents, whether the hard drives of individual computers were searched for

responsive discovery documents, or whether former employees Kim Krause and

Jim Morse's individual computer hard drives were searched for responsive

discovery documents.  With regard to question 4, Ms. Holley did not know

"exactly how they [the e-discovery vendor] searched" the Heartland servers, or

"what all was on" the CD database that was produced to Defendants."  Because

Heartland's e-discovery vendor is an agent of Heartland, Ms. Holley should have

been educated on this issue as it is encompassed within topic 17.  *See **Starlight***,

186 F.R.D. at 638 (stating the "affirmative duty to produce a representative who

can answer questions . . . known or reasonably available").[9]   With regard to

question 5, Ms. Holley did not know whether Heartland's counsel did anything to

determine if produced electronic documents were responsive to discovery requests.

Heartland's counsel are the agents of Heartland and Ms. Holley should have been

educated on this issue as it is encompassed within topic 17.  *See **Starlight***, 186

F.R.D. at 638 (stating the "affirmative duty to produce a representative who can

answer questions . . . known or reasonably available").  With regard to question 6,

Ms. Holley did not know whether Heartland's computer systems (AdvantX and

Great Plains) could export data for varying means of production.  This question is

directly encompassed by topic 10.  This overall showing with regard to these

questions establishes that Ms. Holley was unprepared to answer questions on

topics 10, 16, and 17.

　　　With regard to the question 3 identified above, however, Defendants have

not shown that Ms. Holley was either unprepared or did not have the requisite

knowledge to adequately answer the question.  In totality regarding question 3,

Defendants cite the following portions of the transcript.

---

　　　[9]  Ms. Holley did not know the name of the e-discovery vendor, but this
information was later relayed to Defendants, and although Defendants state that not
knowing the name during the deposition prohibited them from "follow-up examination,"
Defendants do not state, and the Court cannot imagine, what follow-up examination
would result simply by knowing the name of the entity.

Q.  I've looked through Deposition Exhibit 31 and did not see a policy about deletion or archiving of E-mail.  Is there such a policy?

A.  All of the policies related to document retention have been included in this packet.

. . .

Q.  Okay.  Does Heartland Surgical Specialty Hospital routinely delete E-mail?

A.  Not to my knowledge.

Q.  Are there size limitations on an individual E-mail account user's mailbox?

A.  Not that I'm aware of.

. . .

Q.  Do individual E-mail account holders have the ability to save E-mail files outside their mailbox?

A.  Yes.

Q.  Where would those E-mails be–where are the potential places those E-mails could be saved?

A.  They're instructed to save those E-mail documents or attachments into their personal drive on the server.

Q.  Are you aware of any other places that E-mail account holders have saved E-mails and attachments?

A.  I wouldn't know.

Q.  Is there any policing of the policy that E-mails and

attachments are to be saved to the personal drive?

MR. McGUIRE:    Object to form.    Vague and ambiguous.

Q.  (By Mr. Bien) Is there anyone who checks to make sure that the policy is followed?

A.  I don't know specifically.

Q.  Who would be the person who would be responsible–or withdraw that.  Who would be the person with knowledge about whether the policy that E-mails and attachments are to be saved to a personal drive is followed?

A.  Mr. Coffman would have knowledge of that.

(Doc. 410 at 5-6 nn.14-16.)  The excerpted transcript portions show only that the policies Heartland has have been given to Defendants, that Heartland does not routinely delete e-mail or limit individual user's e-mail account sizes, and that Ms. Holley did not have knowledge of whether a specific policy was regulated or enforced.  The excerpted transcript portions do not show, as Defendants propound, that Ms. Holley did not know the document retention policies with respect to e-mail and what was done to prevent deletion or destruction of responsive e-mail. Defendants have not shown that Ms. Holley was unprepared to answer this question as encompassed by topics 8 and 9.

Heartland responds to Defendants' contentions by arguing that Ms. Holley was fully prepared and provided responsive and accurate answers with respect to

questions on the topics.  (Doc. 446 at 17-21.)  Heartland points the Court to additional portions of Ms. Holley's deposition transcript for the proposition that these portions show the questions identified by in Defendants' motion were adequately answered.  As stated above, the Court agrees with Heartland that Ms. Holley was adequately prepared with respect to question 3, and the related topics 8 and 9.  Heartland has not, however, adequately controverted Defendants' showing with respect to questions 1, 2, 4, 5 and 6 and the related topics 10, 16, and 17.

With regard to topic 17, Heartland points to excerpted deposition testimony that shows Ms. Holley personally viewed all <u>paper</u> documents for responsiveness to discovery requests, and that Heartland servers were searched, but this does not adequately answer Defendants questions regarding how Heartland ensured its production was responsive, especially its *electronic* production.

With regard to question 6, and therefore topic 10, Heartland claims it has, since the Rule 30(b)(6) deposition, provided all data from the AdvantX and Great Plains databases to Defendants.  Heartland asserts the issue is, therefore, moot. (Doc. 446 at 19.)  Defendants do not directly reply to Heartland's mootness argument, other than to acknowledge that "screen shots" of menu screens for AdvantX reports have been provided but that they are still in need of testimony on the issue from a knowledgeable person.  (Doc. 474 at 6 n.3.)  The Court agrees

15

with Defendants.  Heartland simply alleging that it has given some of  the data to

Defendants does not equate to knowledgeable testimony on topic 10, which

encompassed question 6.

Finally, Heartland argues (Doc. 446 at 5)[10] that the questions at the

deposition were much more technical and detailed in nature than it had anticipated

based on Defendants' statements at the November 16 status conference that they

wanted

> information about the structure of plaintiff's record
> keeping.  What records do they keep?  How do they
> organize those records?  What computer systems do they
> use?  What are the capabilities of those computer
> systems?  How burdensome would it be to produce the
> data in the form that we requested it in 2005?  And is
> there some less burdensome way in which plaintiff could
> produce those data.

(Doc. 427 at 37) (Mitchell Raup, Attorney for Defendant United).  Plaintiff cannot

disregard the specific identification set out in topics 1 through 17 and instead use

Defendants' arguments at the status conference to define the scope of the Rule

30(b)(6) deposition.

While the questions asked in the deposition, particularly about the

capabilities of Heartland's computers and software, may have been detailed in

---

[10]  It appears to the Court that Plaintiff's citations to the transcript of the November
16 status conference on this page of their brief are incorrect.

nature, they clearly fall within the topics described in the notice.  The fact that Ms.

Holley had to state, in response to numerous questions, that the answer to the

question would be known by either Mr. Coffman (Heartland's Director of

Information Technology) or Mr. Van Horn (Heartland's Chief Financial Officer)

clearly indicates that Plaintiff had available other persons who could have been

used as additional Rule 30(b)(6) witnesses to respond to at least some of the first

seventeen topics on behalf of the corporation.  It also indicates that Plaintiff did not

adequately prepare the tendered witness to answer the questions set out in the

identified topics.  The Court, therefore, finds that Heartland failed to produce a

knowledgeable representative with respect to topics 10, 16, and 17.

Regarding the requested relief sought, *Starlight* instructs:

> Corporations, partnerships, and joint ventures have a duty
> to make a conscientious, good-faith effort to designate
> knowledgeable persons for Rule 30(b)(6) depositions and
> to prepare them to fully and unevasively answer questions
> about the designated subject matter.  If the designated
> persons do not possess personal knowledge of the matters
> set out in the deposition notice, the entity is obligated to
> prepare the designees so that they may give knowledgeable
> and binding answers for the organization.  If it becomes
> obvious during the course of the deposition that the
> designee is deficient, the organization is obligated to
> provide a substitute.

*Id.* at 639 (internal quotations, alterations and citations omitted).  Heartland did not

designate a knowledgeable person with regard to topics 10, 16, and 17 of the Rule

30(b)(6) deposition.  Ms. Holley did not possess personal knowledge of these topics and was not prepared to give knowledgeable answers regarding the topics on behalf of the corporation.  Ms. Holley's designation as the Rule 30(b)(6) designee was deficient as to these topics and Heartland must provide a substitute Rule 30(b)(6) designee.

Plaintiff argues that Defendants will have the opportunity to take fact witness depositions of other Heartland employees, including its CFO and Director of Information Technology.  (Doc. 446 at 7.)  This, however, is not the same as a Rule 30(b)6) deposition which presents the testimony of the corporation itself rather than just the personal knowledge of the witness.

Defendants broadly request an additional Rule 30(b)(6) deposition with respect to topics 8, 9, 10, 16, and 17, but they make their motion based on the questions discussed above.  Of course, once questions 1, 2, 4, 5, and 6 are answered (the Court finds that question 3, on topics 8 and 9, has already been adequately answered), Defendants may, and probably will, have additional follow-up questions directly related to topics 10, 16, and 17.  For this reason, Defendants may conduct an additional Rule 30(b)(6) deposition of Heartland, on topics 10, 16, and 17.  Defendants are limited to questions 1, 2, 4, 5, and 6 and any follow-up questions that flow naturally and directly from these questions.  The deposition

will be limited to six (6)  hours in duration.


## AWARD OF COSTS

Defendants ask for "an award of their reasonable attorneys' fees and costs incurred in bringing this motion, and in taking a second Rule 30(b)(6) deposition on those topics, as an appropriate sanction under Rule 37(b)."  (Doc. 410 at 1.) Rule 37(b) governs sanctions for failure to comply with an order of the court.  FED. R. CIV. P. 37(b)(2).

Defendants argue Heartland violated the Court's Status Conference Order No. 2.  (Doc. 357.)  Defendants state that Heartland was previously "ordered to produce a witness with knowledge" on the noticed topics and because the witness did not have the requisite knowledge, Heartland violated the Court's Order.  (Doc. 410 at 1.)  However, in the Order to which Defendants refer, Status Conference Order No. 2 (and likewise at the November 16 status conference), the Court focused only on the issue of the sequencing of Defendants' Rule 30(b)(6) depositions of Heartland, and agreed that the proposed "two sequential Rule 30(b)(6) depositions" would be allowed and the time limit for the first part of the deposition.  (Doc. 357 at 4.)  The Court did not, as Defendants state in their motion, "order [Heartland] to produce a witness with knowledge on those topics."

19

(Doc. 410 at 1.)

Defendants will not be awarded sanctions under Rule 37(b). Defendants have not persuaded the court that Rule 37(b) applies to the situation the parties currently find themselves in. Heartland did not fail to obey Status Conference Order No. 2 because the Order related only to the timing and sequencing of Defendants Rule 30(b)(6) depositions, not substantive matters relating to the scope of the deposition at issue.

Defendants do not ask that Heartland be sanctioned for providing an inadequately prepared Rule 30(b)(6) witness, but instead phrase their request for sanctions only under Rule 37(b) for failure to comply with a court order. However, even if Defendants had motioned the Court in this regard, no costs would be awarded as a sanction. Defendants did not meet and confer regarding the narrow issue presented to the Court. As evidenced by the certificate of compliance, the subject of the meet and confer engaged in by the parties broadly encompassed topics 1 through 17; the entire scope of the first Rule 30(b)(6) deposition. (Doc. 411.) Defendants did not meet and confer with Heartland on the narrower issue of compliance with Rule 30(b)(6) on topics 8, 9, 10, 16, and 17, and certainly not with respect to the 6 question areas identified to the Court.

## CONCLUSION

Defendants' joint motion to compel Heartland to produce a supplemental Rule 30(b)(6) witness with regard to noticed topics 8, 9, 10, 16, and 17 is GRANTED IN PART and DENIED IN PART, as stated more fully herein. Defendants' request for an award of costs is DENIED.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas on this 9th day of April, 2007.

  s/ DONALD W. BOSTWICK      
DONALD W. BOSTWICK
U.S. MAGISTRATE JUDGE