# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| HEARTLAND SURGICAL ) | |
| SPECIALTY HOSPITAL, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 05-2164-MLB-DWB |
| ) | |
| MIDWEST DIVISION, INC. d/b/a ) | |
| HCA MIDWEST DIVISION, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## **MEMORANDUM AND ORDER**

Before the Court is a motion to compel and supporting memorandum filed by Defendant Coventry Health Care of Kansas, Inc. ("Coventry") seeking an order compelling Plaintiff Heartland Surgical Specialty Hospital, LLC ("Heartland") to produce documents responsive to Coventry's Second Request for Production of Documents. (Docs. 589, 590). Coventry specifically seeks documents that are responsive to Request No's 2, 3, 4, 5, 6, 7, 8, and 10. (Doc. 590 at 12.) Coventry also asks for its reasonable expenses in conjunction with its motion pursuant to FED. R. CIV. P. 37(a)(4). (*Id.* at 13.) Heartland has responded and argues that the motion should be denied. (Doc. 658.) (Sealed)  The nature of the underlying anti-trust and tortious interference litigation is well-known to the Court and all parties and will be discussed only when necessary to the Court's discussion below.

At the status conference on April 24, 2007, Coventry stated that it would not be filing a reply concerning the motion and requested an early decision on the motion due to the timing of upcoming depositions. (Doc. 663 at 7-8.) The Court orally announced its decision at the status conference, but indicated that it would also file a formal written opinion. *Id.* at 39-45.

## FACTUAL BACKGROUND

Coventry served its Second Request for Production of Documents on Heartland on February 9, 2007. (Doc. 468.) Heartland served its responses and objections to each of the ten requests on March 16, 2007.[1] (Doc. 550; Doc. 590 Ex. 1.) The parties met and conferred about Heartland's objections (Doc. 590 at 3,

---

[1] Heartland's objections generally were that the requests were overbroad, unduly burdensome and oppressive on their face, that they sought information that was not relevant to the claim or defense of any party and was not reasonably calculated to lead to the discovery of admissible evidence, that some of the information was subject to confidentiality agreements, and that some of the requests sought information protected by the attorney client privilege and work product privilege. As to requests which sought documents or communications related to settlements between Heartland and former defendants in this case, Heartland claimed that these documents were protected by "the settlement communications privilege" and disclosure of the documents would prejudice Heartland by disclosing its litigation and trial strategies, would undermine the public policy justifications for FED. R. EVID. 408 and would violate the provisions of the Court's scheduling order which required the parties to engage in good faith settlement negotiations which were to remain "confidential." (citing Doc. 141 at 4) (Scheduling Order of November 18, 2005, which directed each party to submit to the magistrate judge "a confidential settlement report.") As to requests for personnel files for four former employees, Heartland claimed that these might include documents that were confidential or were protected by confidentiality clauses with third parties and disclosure might "undermine the public policy justifications that favor the resolution of potential disputes between parties." (Doc. 590 Ex. 2 *passim*.)

2

and Ex's 2, 3.) The parties apparently resolved any disputes or issues concerning requests 1 and 9, but did not reach any agreement on the other requests, and Heartland did not produce any documents in response to those other requests. (Doc. 590 at 3.)

## DISCUSSION

The requests at issue in this motion to compel can be grouped into four general categories of documents:

1. Documents evidencing the transfer of a patient from Heartland to another health care facility (Request No. 2);

2. Settlement agreements related to this litigation and the related communications with settled parties (Request No.s 3 and 4);

3. Personnel files, including any separation or settlement agreements, with four former employees (Request No.s 5, 6, 7 and 8); and

4. Documents which evidence or reflect the granting, suspension or revocation of a named doctor's privileges to provide services at Heartland (Request No. 10).

Each of these categories will be discussed separately.

1. <u>Documents evidencing the transfer of a patient from Heartland to another health care facility (Request No. 2)</u>

The Court has previously outlined the tests for determining relevance under FED. R. CIV. P. 26, and will not repeat this basic standard. *See e.g.*, ***Heartland Surgical Speciality Hosp., L.L.C. v. Midwest Division, Inc.***, No. 05-2164-MLB-

3

DWB, 2007 WL 950282, at *2-3 (D. Kan. Mar. 26, 2007); (Doc. 568 at 5-7). While the relevance of this particular request may not be patently obvious on its face, Coventry has adequately explained why the requested information is relevant to the claims and defenses in this case. Specifically this information relates to the quality, nature and extent of medical care available at Heartland's facility which, in turn, may be relevant to the question of the relevant market, and to Heartland's claims that its service was superior to that available at other health care facilities. The Court finds that the information sought by this request is relevant.[2]

Heartland's objection that the materials are confidential is unavailing. A concern for protecting confidentiality does not equate to privilege. *See e.g., **Sonnino v. Univ. of Kan. Hosp. Auth.***, 220 F.R.D. 633, 642 (D. Kan. 2004). Also, Heartland can protect the confidentiality of these documents by designating them for protection under the protective order in effect in this case. (Doc. 170.)

Finally, Heartland has not shown that the request is burdensome. Again, the rules for determining burdensomeness have been often stated and will not be repeated here. *See **Heartland Surgical Speciality Hosp., L.L.C.***, 2007 WL

---

[2] Heartland argues that Coventry's 30(b)(6) testimony makes it clear that Heartland's quality of care was not a concern to Coventry at the time of its contracting decision. (Doc. 658 at 5.) (Sealed) The Court, however, bases its finding of relevancy on more than just Coventry's basis for denying in-network status to Heartland.

4

950282, at *4-5. In its objection to this request, Heartland noted that it had already produced a list or spreadsheet of the acute medical transfers to other facilities. (Doc. 590 Ex. 1 at 3.) In response, Coventry has indicated that it "is willing to limit its request to the production of patient files for the thirty-four patients listed on the aforementioned spreadsheet, as well as any documents containing information that was used to create this spreadsheet." (Doc. 590 Ex. 2 at 2.) Because Heartland has already prepared this spreadsheet (Doc. 590 Ex. 1 at ¶ 2), it will not be burdensome to provide the documentation requested for those specific patients. Heartland shall produce the documentation requested[3] in Coventry's Second Request No. 2 for the identified thirty-four patients.

2. <u>Settlement agreements related to this litigation and the related communications with settled parties (Request No.s 3 and 4)</u>

This category really contains two separate types of requested documents: (1) settlement agreements and (2) communications with settled parties. In objecting to both of these categories, Heartland cited and relied upon three cases: ***Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.,*** 332 F.3d 976 (6th Cir. 2003), ***DirectTV v. Puccinelli***, 224 F.R.D. 677 (D. Kan. 2004), and ***Bottaro v. Hatton***

---

[3] Heartland's concern that Coventry's request is overbroad is tenuous in light of the language of the request: Coventry merely seeks those portions of the patient files reflecting the transfer of patients from Heartland's facility to another facility. (Doc. 590 Ex. 1 at 3.) In addition, as stated above, Coventry has limited its request to the thirty-four patients previously identified by Heartland.

*Assoc.*, 96 F.R.D. 158 (E.D.N.Y. 1982).  (Doc. 658 at 6-9.) (Sealed)  Because there is a significant difference between the two subcategories, they must be treated separately. However, the basic objections by Heartland apply to both and can be discussed generally.

The court in *Goodyear* concluded that a "settlement privilege should exist" and held that the lower court had not abused its discretion in refusing to allow discovery about settlement discussions.  332 F. 3d at 981.  In that case, a homeowner sued both Goodyear and a manufacturer in federal court in Colorado on a products liability claim.  In an earlier lawsuit in Ohio, Goodyear and the manufacturer had participated in settlement talks presided over by the district judge which were to remain confidential.  When the existence of those talks became known, the homeowner sought to intervene in the Ohio case in order to have the court modify or vacate its confidentiality order so he could question company employees of Goodyear and the manufacturer about the settlement discussions, *i.e,* what was said during the settlement discussions.  The discussions had not been successful, therefore there was no settlement agreement in place.  The lower court denied the homeowner's motion and found that the content of settlement talks are always confidential.  On appeal, the Sixth Circuit, in discussing the applicability of FED. R. EVID. 408, determined that the first question it must address was whether

the settlement communications were privileged. After reviewing cases from several jurisdictions, the court concluded that "a settlement privilege should exist." *Id.* However, acknowledging that FED. R. EDIV. 408 sets out exceptions to inadmissibility, the court noted the difference between seeking the substance of settlement *communications* and seeking the settlement agreement itself. *Id.* For example, the court noted that there is normally no transcript of settlement discussions and therefore allowing discovery into the discussions themselves would lead to depositions of everyone present at the discussions which would not be desirable.

In *DirectTV,* Judge Waxse distinguished *Goodyear* on this very point. He noted that in *Goodyear* the parties sought "negotiation communications" i.e., "matters discussed by parties during settlement negotiations," while in his case the parties sought "the terms of the agreement and the agreements themselves." 224 F.R.D. at 685. In *DirectTV,* the interrogatory at issue sought terms of settlements that plaintiff had reached with several non-party records custodians on the basis that these record custodians would be called to testify in the case and the requested settlement agreements might well show bias or prejudice of those records

custodians.[4]  Judge Waxse found the request to be relevant, and then examined the objections based on FED. R. EVID. 408.  The court first noted that some courts had required a heightened and particularized showing of likelihood that admissible evidence will be generated by the dissemination of the terms of the settlement agreement.  224 F.R.D. at 686.  However, the court determined that it need not decide the applicable standard since an adequate showing had been made under any of the possible standards.[5]  224 F.R.D. at 686-87.  In allowing discovery of the subject settlement terms and agreements, under an appropriate protective order, Judge Waxse concluded that he could not conceive of any way that discovery of this information would serve to discourage settlements under the circumstances of the case, nor could he conclude that any other party might be discouraged from settling because of the disclosures of these purported settlements.  224 F.R.D. at 687.

In *Bottaro*, a 1982 case from the Eastern District of New York, two co-

---

[4] Where the settlement agreement being sought through discovery is between plaintiff and persons who have no interest in the case and will not be witnesses, the discovery has been denied.  ***Moss v. Blue Cross Blue Shield of Kan., Inc.,*** No. 06-4105-JAR, 2007 WL 1018811, at *8 (D. Kan., Apr. 3, 2007) (where plaintiff had the names of any former employees who had entered into settlements for prior FMLA claims, the settlement agreements themselves were not relevant).

[5] Judge Belot has previously rejected any argument that a party seeking to discover evidence concerning settlements must meet a "higher burden."  ***City of Wichita v. Aero Holdings, Inc.,*** 192 F.R.D. 300, 302 n.1 (D. Kan. 2000).

8

defendants filed a motion to compel the production of a settlement agreement arising out of the plaintiffs' settlement and dismissal with a third co-defendant. 96 F.R.D. at 159. The court found a "strong public policy of favoring settlements" and a "congressional intent to further that policy" through the adoption of FED. R. EVID. 408. *Id.* at 160. Because of this, the court required a "particularized showing of a likelihood that admissible evidence will be generated by the dissemination of the terms of a settlement agreement." *Id.* However, the court then used the Fed. R. Civ. P. 26(b)(1) standard in stating that the terms of the settlement were not "reasonably calculated to lead to the discovery of admissible evidence." *Id.*

In making its objection in this case, Heartland correctly noted that ***DirectTV*** did not involve a settlement with a party that was, or had been, a defendant in the same "ongoing litigation," and it specifically referenced a footnote in ***DirectTV*** concerning such a situation. (Doc. 658 at 7 (Sealed), *citing* ***DirectTV v. Puccinelli***, 224 F.R.D. 677, 686 n.34 (D. Kan. 2004)). In its objections, Heartland made the very argument discussed in that footnote – that disclosure of settlement with some defendants in an ongoing litigation would allow the remaining defendants to learn Heartland's litigation strategies. *Id.*

The Court first notes that courts have reached widely divergent conclusions

about whether or not a federal settlement privilege exists. *See e.g.*, ***Matsushita Elec. Ind. Co., Ltd v. Mediatek, Inc.***, No. C-05-3148-MMC, 2007 WL 963975, at *2-3 (N.D. Cal. Mar. 30, 2007) (refusing to find a federal settlement privilege and reviewing cases on the subject). The parties have cited no Tenth Circuit authority on this issue and the Court has found none. Courts refusing to find the existence of a settlement privilege often note that FED. R. EVID. 408 governs only *admissibility* of settlement negotiations and not the *discoverability* of such evidence. ***Matsushita Elec. Ind. Co., Ltd,*** 2007 WL 963975 at *3; ***White v. Kenneth Warren & Son, Ltd.,*** 203 F.R.D. 364, 368 (N.D. Ill. 2001). *See also,* ***City of Wichita,*** 192 F.R.D. at 301-02. Absent direction from the Tenth Circuit, this court will not imply the existence of a federal settlement privilege under either FED. R. EVID. 408 or under FED. R. EVID. 501 for the reasons outlined in ***Matsushita Electric Industrial Co., Ltd.*** and ***White***.

Absent a federal settlement privilege, the Court must still decide whether the requests at issue in this case are relevant and are calculated to lead to the discovery of admissible evidence under FED. R. CIV. P. 26. It is at this point that the Court must address the distinction between the request for the terms and copies of any existing settlement agreements and the request for settlement-related communications with the settling co-defendants.

### A. Request for Settlement Agreements

Coventry argues that the settlement agreements with the settling defendants[6] related to the claims in this lawsuit are relevant on several grounds. First, Heartland's claims in this case include a conspiracy claim whereby Heartland seeks to impute the acts of each defendant against all other defendants, and to hold them jointly liable for the alleged antitrust and tortious interference claims. Second, it appears virtually certain that representatives of the settling defendants may be called to testify at trial or that an attempt may be made to use their prior depositions. Thus, the terms of any settlement agreements with dismissed defendants or their representative appear to be relevant to the possible bias or prejudice of important witnesses. *White,* 203 F.R.D. at 367 (where the settling party will likely be a witness at trial, remaining defendants are entitled to learn whether promises have been made in connection with his dismissal that might constitute potential bias). The agreements may also be relevant to Heartland's damage claims against the remaining defendants.[7]

---

[6] Heartland has settled with and dismissed Defendants United (Docs. 439, 491), Humana (Docs. 559, 563), Blue Cross (Docs. 558, 562), CIGNA (Docs. 553, 557), and North Kansas City Hospital (Docs. 582, 586).

[7] Heartland cites *Bottaro* in support of the proposition that settlement amounts would not be relevant until after a finding of liability. In *Bottaro*, however, the co-defendants sought the settlement agreement of the settled third co-defendant based solely on the argument that the agreement would lead to evidence on the issue of damages and

While the settlement agreements themselves may well reflect, directly or indirectly, to what extent Heartland considers the settling defendants to be liable by virtue of the amount of any settlement paid, either through payments of monies or through execution of agreements allowing Heartland to participate in any managed care plan or network, the Court does not believe that such information discloses Heartland's litigation or trial strategy so as to justify withholding disclosure of the terms of the agreements themselves, especially because of the relevance stemming from the allegations of conspiracy and potential bias of witnesses. As previously noted, Heartland can retain a certain degree of confidentiality over such agreements through the protective order in this case. Moreover, courts have rejected the idea that revealing the terms of settlements with one co-defendant might impede settlement with other parties. *See e.g.*, ***Bennett v. LaPere,*** 112 F.R.D. 136, 140 (D.R.I. 1986) (any drawback that might result from nondisclosure is substantially outweighed by the assistance which full divulgence of the terms of relevant settlements among all parties will likely afford in the negotiation process, and fundamental fairness requires that plaintiff and the remaining defendants

---

the settling defendant's liability for contribution to the remaining co-defendants. The ***Bottaro*** court cited a law review article on the topic of contribution in 10b-5 securities actions and stated that the pro rata shares of the defendants would not be determined until after a final judgment was rendered. For that reason, the court found that the settlement agreement was not relevant at the time. It is obvious that the facts of ***Bottaro*** make the court's holding in that regard inapplicable to the case at hand.

approach the bargaining table with the same knowledge of the earlier completed settlements); *White,* 203 F.R.D. at 367 (analogizing requests for settlement agreements to the disclosure of insurance coverage required by FED. R. CIV. P. 26(a)(1)(D), and concluding that disclosure of such information may promote settlement of the remaining claims and permits the remaining defendants to evaluate their risks and liability).

    The Court agrees with the reasoning in both ***Bennett*** and ***White*** and believes that the settlements with prior defendants should be disclosed.  Also, any settlement agreements with third parties who were not named in this case as defendants but which involve a settlement of any matters alleged in the Third Amended Complaint should be produced.  Therefore, Heartland should produce any documents described in Coventry's Second Request No. 3.[8]

### B. Request for Settlement Communications

Coventry also seeks copies of all communications with any prior defendant or with any third party about any settlements between Heartland and any entity that was named as a defendant in this case or between Heartland and any third party

---

[8] Heartland's objection that disclosure of this information would somehow violate the terms of the Court's prior scheduling order is rejected. (Doc. 658 at 6.) (Sealed)  An early scheduling order required the parties to submit confidential reports to the magistrate judge for his review. (Doc. 141 at 4.)  Those reports have been maintained as confidential and have no relationship whatsoever to the settlement agreements reached by some of the parties over a year later.

13

about matters alleged in the Third Amended Complaint in this case. Coventry's basis for this additional information is summed up in a single paragraph of its supporting memorandum:

> In the case at hand, documentation between plaintiff and any of the settled parties about the settlements may be important to understand and assess the terms of the settlements and the potential for bias of the witness who may be called to testify. Moreover, particularly since plaintiff concedes that some of the settlements resulted in HSSH obtaining executed hospital managed care agreements, the communications with settled defendants leading up to and concerning those settlements may shed light on the value of those contracts to the parties, and hence the effects of those contracts on the damages being claimed by plaintiff.

(Doc. 590 at 9.)

Coventry's above explanation is not persuasive and does not convince the Court that documents concerning the parties' settlement *discussions* are relevant. In rejecting a similar request, the court in ***White*** noted that the requesting party "has not demonstrated how the negotiations, as compared to an actual settlement agreement, may be relevant to the ongoing litigation. Once an agreement is reached, the negotiations are deemed to have merged into the agreement." 203 F.R.D. at 368. Moreover, allowing the production of documents setting out preliminary settlement discussions is more likely to have a chilling effect on settlement negotiations.

Therefore, Heartland will not be required to produce the documents outlined in Coventry's Second Request No. 4.[9]

3. <u>Personnel files, including any separation or settlement agreements, with four former employees (Request No.s 5, 6, 7 and 8)</u>

The four former Heartland employees targeted by these requests are the former CEO, the former CFO, the former Chief Nursing Officer and the former Director of Business Development. (Doc. 590 at 10.) As such, it is clear that these were important key employees of Heartland during the time frames which are the subject of this action. It is also relatively certain that they will be witnesses at trial. Coventry claims that the personnel files are relevant because they would disclose any separation or settlement agreements between the employees and Heartland which might show a potential bias or prejudice. (Doc. 590 at 10.) Coventry also argues that the performance of these key employees is relevant to Heartland's claim that it was unable to operate at capacity from the time it opened because of actions by the defendants in this case. (Doc. 590 at 11.) Heartland urges that the requested material is not relevant, seeks information which is protected by the attorney client or work product privileges, seeks confidential information and seeks

---

[9] Any documents which evidence an agreement or promise to do something that is not otherwise included in the formal settlement agreement between the parties shall be produced. Thus any "side letters" or "letters of understanding" are, in effect, a part of the settlement agreement rather than settlement communications and are to be produced in response to Coventry's Second Request No. 3.

15

information such as settlement or separation agreements which "may undermine the public policy justifications that favor the resolution of potential disputes between parties." (Doc. 590 Ex. 1 at 5-6; *see also* Doc. 658 at 10 (Sealed).)

As previously noted, a concern for protecting confidentiality does not equate to privilege. *See e.g., **Sonnino v. Univ. of Kan. Hosp. Auth.***, 220 F.R.D. 633, 642 (D. Kan. 2004). Also, Heartland can protect the confidentiality of these documents by designating them for protection under the protective order in effect in this case. Furthermore, production of *completed* settlement or separation agreements does not so impact public policy issues as to justify their nonproduction for the same reasons discussed above concerning executed settlement agreements with former co-defendants. And, as to claims of attorney-client privilege or work product protection, these issues cannot be meaningfully addressed because Heartland has not provided a requisite privilege log identifying the specific documents to which they are claiming protection. *See e.g., **Universal Serv. Fund Tel. Billing Practices**,* 232 F.R.D. 669, 673 (D. Kan. 2005) (outlining the requirements of a privilege log). Therefore, none of these general objections prevent the production of the documents requested by these specific requests.

The only remaining objection is that the requested documents are not relevant. Where Heartland has placed its own capabilities and performance at issue

in this case and where the key former employees of Heartland who are the subject of these requests will undoubtedly be witnesses at trial, the Court concludes that certain information in those former employees' personnel files would be reasonably calculated to lead to the discovery of relevant evidence and thus be within the broad scope of discoverable information allowed by FED. R. CIV. P. 26. This would include information pertaining to the performance of their duties while employed at Heartland such as job evaluations or performance critiques as well as any stated bases for promotion or demotion or changes in salary.  It would also include any settlement or separation arrangements between the former employee and Heartland upon their departure as employees.  Heartland will be required to produce any such portions of the identified personnel files identified in Coventry's Second Request No.s 5, 6, 7 and 8.  Heartland will not be required to produce other portions of the personnel files which contain only information about the particular benefits to which the employees were entitled, where their payroll checks were directly deposited, who were the beneficiaries on any pension or life insurance benefits, etc.

4. <u>Documents which evidence or reflect the granting, suspension or revocation of a named doctor's privileges to provide services at Heartland (Request No. 10)</u>

Finally, Coventry seeks documents concerning the granting, suspension or

revocation of a Dr. Christopher Wilson's privileges to provide services at Heartland. Coventry states that it has learned that the doctor's medical license was suspended for a period of time. (Doc. 590 at 12.) Coventry argues that documents reflecting the periods of time he was unable to practice at Heartland, as well as the *grounds* for any suspension/revocation, are relevant because they may lead to evidence relating to the quality of care at Heartland and the ability of Heartland to operate at capacity for reasons other than the alleged conduct of defendants. *Id.*

Heartland objected on the grounds of lack of relevancy as well as a claim of attorney-client privilege and work product protection. (Doc. 590 Ex. 1 at 7.) Heartland apparently has not provided a privilege log identifying any allegedly privileged documents (Doc. 590 at 11-12), and cannot therefore rely on the claimed privileges to withhold the requested documents. This leaves only the objection based on relevancy.

Heartland argues that the requested documents are not relevant because quality of care was not the reason that Coventry decided not to contract with Heartland. (Doc. 658 at 11.) (Sealed) Heartland also notes that this same doctor also has staff privileges at three of the other defendant hospitals who are within Coventry's network, and suggests that Coventry is seeking this information for some other reasons. *Id.*

The relevance of the requested documents is not apparent on its face, and Coventry's brief arguments as to why the requested documents are relevant are not wholly convincing. Coventry does not identify this doctor's medical specialty and does not explain how this particular doctor's ability to practice might have affected Heartland's quality of care or how it might have delayed Heartland's ability to operate to capacity at an earlier date. And, even if the doctor's suspension or revocation of privileges at Heartland could be relevant to those issues, Coventry does not adequately explain why the *reasons* for his suspension or revocation are calculated to lead to the discovery of relevant evidence.

Based on the record before the Court, the Court finds that the requested information concerning this doctor is not calculated to lead to the discovery of relevant information. Therefore, Heartland does not have to provide the documents identified in Coventry's Second Request No. 10.

## REQUEST FOR SANCTIONS

Coventry also seeks sanctions, including its expenses and attorneys fees, pursuant to FED. R. CIV. P. 37(a)(4) for filing the motion to compel. (Doc. 590 at 13.) Rule 37(a)(4)(c) provides for sanctions when a motion to compel discovery is granted in part and denied in part, as the Court has done within this Memorandum and Order. Rule 37(a)(4)(c) states that a court "may" apportion the reasonable

expenses incurred in such a motion "in a just manner." The Court finds that the just resolution of Coventry's request for attorneys' fees, given the Court's decision to grant in part and deny in part the motions, is to have each party bear their own expenses and fees in relation to these motions. Coventry has not pursued unfounded discovery requests and Heartland has not exercised bad faith in pursuing their objections. Each party will be responsible for their own expenses and fees in regard to Coventry's motion to compel.

## CONCLUSION

For the reasons set out above, Coventry's motion to compel compliance with Coventry's Second Requests for Production of Documents (Doc. 589) is GRANTED IN PART and DENIED IN PART. The documents to be produced by Heartland pursuant to this Memorandum and Order shall be produced on or before **May 7, 2007,** except that the documents to be produced by Heartland in response to Request No.'s 5, 6, 7 and 8 shall be produced in advance of the depositions of the witnesses at issue.

IT IS SO ORDERED.

Dated at Wichita, Kansas this 27th day of April, 2007.

    s/   Donald W. Bostwick
DONALD W. BOSTWICK
U.S. MAGISTRATE JUDGE