**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| HEARTLAND SURGICAL SPECIALTY HOSPITAL, LLC, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 05-CV-2164-MLB-DWB ) |
| MIDWEST DIVISION, INC. d/b/a HCA MIDWEST DIVISION, et al., | ) ) ) |
| Defendants. | ) |

**NON-PARTY PHYSICIANS' MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS**

**NATURE OF THE MATTER AND STATEMENT OF FACTS**

The essential question at issue in Defendants' Motion to Compel is exactly how much burden Defendants can place on 29 non-party physicians before Defendants violate the spirit and the letter of Rule 45(c)(1)'s duty to "take reasonable steps to avoid imposing undue burden or expense" on non-parties. Defendants' conduct herein belies any argument that they attempted to minimize burden and expense on these non-parties:

- Defendants have now subpoenaed non-party physician Dr. William Reed not once, but twice.[1]

- Defendants' subpoenas have required counsel for Dr. Reed to review more than 100,000 pages of emails from his personal email accounts. Approximately 19,548 pages of emails have been produced to Defendants, which reflect those emails that may be responsive or relevant.

---

[1] In response to Plaintiff's concerns that Defendants would subpoena these non-party doctors a second time, the Court stated in its April 11, 2007 Memorandum and Order (Dkt. 611) that *"the Court strongly admonishes all parties to be mindful of Rule 45(c)(3)(A), which the Court will enforce as necessary."* (emphasis added). Yet only 9 days after the Court issued this cautionary statement, Defendants went forward and issued a second subpoena on Dr. Reed demanding that he produce documents in response to **54 additional requests**.

- The 29 non-party physicians have already produced 1,765 pages of responsive documents and some physicians, at their own time and expense, created new documents in order to provide additional information to Defendants.  *See* Exhibit 1.

- Every non-party physician requested by Defendants has voluntarily appeared for a full-day deposition without requiring a subpoena or even a witness fee.[2]

In addition to the expensive production of documents by these non-parties, Plaintiff Heartland also searched for and produced extensive documentation regarding these 29 physicians:

- At great expense, Plaintiff Heartland restored all of its electronic backup tapes and has already produced relevant documents that any of these physicians would have created, viewed or edited using any computer at Heartland.

- At great expense, Plaintiff Heartland restored all of its electronic archival backup tapes and has already produced relevant emails that any of these non-party physicians, or any other @hssh.org user, would have sent from or received to their Heartland email account.

- Plaintiff Heartland has additionally searched its paper documents for responsive documents, including any paper documents that were authored by or referencing these non-party physicians.

- Plaintiff voluntarily produced an exact copy of Heartland's entire Great Plains and AdvantX databases.  Heartland's AdvantX database, for example, contains the following for each and every patient treated at Heartland, including every patient treated by these non-party physicians: geographic information; demographic information; dates of treatment; types of treatment; treating physician; the treating physician's preference card; the patient's managed care insurer, if applicable, charges to the patient; and payments made by each patient.

Defendants, therefore, already have in their possession the following:

- Relevant documents created or otherwise captured on a Heartland computer by any of these non-party physicians;

- Relevant emails  ever authored or received by any of these physicians on their Heartland email accounts (or on which any hssh.org user was a recipient);

---

[2] Defendants have already deposed the following 14 non-party physicians: Amundson, Ananth, Bailey, Charapata, Edwards, Gillen, Gonzales, Gupta, Hoehn, Hopkins, Laughlin, Moore, Petelin, and Roh.  Defendants have scheduled the following five physicians for depositions: Blatt, Ciccarelli, Eubanks, Reed, and Storm.  In addition, Defendants have scheduled and then cancelled the deposition of Dr. Rosenburg.  Dr. Israel is still recovering from surgery and was unable to participate in a deposition.  This leaves eight physicians Defendants never sought to depose.

- Relevant emails authored by or sent to, CCed or BCCed to non-hssh.org accounts utilized by Dr. Reed; and

- Information on every patient ever treated at Heartland by any of these non-party physicians.

Despite these voluminous productions, Defendants seek to compel even more information from these non-parties. These subpoenas are unduly burdensome in light of the discovery already produced by these non-parties and on behalf of these non-parties. Furthermore, any slight possibility that additional, responsive information may exist is substantially outweighed by the burden of requiring non-parties to undertake additional searches for documents, particularly in light of the overly broad, irrelevant and cumulative nature of Defendants' requests. For the reasons discussed in greater detail below, Defendants' Motion to Compel should be denied.

## QUESTION PRESENTED

In light of the extensive production of documents by 29 non-party physicians and Plaintiff Heartland's production of relevant paper and electronic documents regarding these same physicians, should 29 non-party physicians be compelled to search for and produce additional documents (assuming any exist) in response to Defendants' overly broad subpoenas?

## ARGUMENT AND AUTHORITIES

## I. THE 29 PHYSICIANS ARE NON-PARTIES TO THIS LITIGATION AND MUST BE AFFORDED THE PROTECTIONS IN RULE 45 AGAINST UNDULY BURDENSOME SUBPOENAS.

Defendants argue that the 29 non-party physicians should be treated as actual parties to this litigation because they have an ownership interest in Heartland. Defendants' argument seeks to transform a mere shareholder or stockholder into a quasi-party for the purposes of discovery and to impose upon these non-parties enormous discovery obligations. This argument is wholly unsupported by any authority from this District or Circuit.

Despite the fact that the non-party physicians are not parties – and could never be parties – Defendants take the position that they are *de facto* parties.  Instead, what this Circuit recognizes is that an individual with an ownership interest in a corporation cannot be a party to an antitrust lawsuit because a mere ownership interest fails to provide the type of injury recognized by antitrust law.[3]  A rule treating shareholders as subject to invasive discovery is not in the public interest where it is the Hospital, not the owners who were injured.  The Court should not simultaneously burden non-parties with extensive discovery and yet deprive these same non-parties from access to the courts on the very same issue.

Defendants next argue that these 29 non-parties should be burdened because they are listed on Plaintiff's Rule 26 Disclosures as individuals who may have knowledge relevant to this litigation.  *See* Defendants' Mem. at 9.  Defendants fail to provide any authority from any Court in the country that individuals who happen to have knowledge relevant to litigation should fully expect to be treated as actual parties to litigation.  Such a standard would prohibitively deter individuals from providing relevant and truthful testimony.  This argument should be rejected and these 29 non-party physicians should be afforded the full protection of Rule 45.

## II.   DEFENDANTS FAILED TO TAKE ANY STEPS TO MINIMIZE BURDEN ON THESE NON-PARTIES.

Attorneys issuing subpoenas have an affirmative duty to take reasonable steps to avoid causing undue burden or expense on the recipient of a third party subpoena.  *See* FED. R. CIV. P. 45(c)(1); *see also Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc.,* 211 F.R.D. 658, 662 (D. Kan. 2003).  Subpoenas that subject a third party to undue burden

---

[3] *See Jones v. Ford Motor Company,* 599 F.2d 394, 397 (10th Cir. 1979) (noting that those with an ownership stake in a company are not directly injured in the antitrust context and do not have standing to sue); *see also Lovett v. General Motors Corp.,* 975 F.2d 518, 520-22 (8th Cir. 1992) (recognizing that the sole owner of a plaintiff car dealership could not be a party in antitrust litigation because his injury was indirect).

are improper.  *See* F.R.C.P. 45(c)(3)(A)(iv).  Furthermore, subpoenas that require "***a non-party***
***to sift through virtually every document in its files is prima facie improper.***"  *In re Circle K*
*Corp.*, 199 B.R. 92, 102 (S.D.N.Y. Bankr. 1996) (emphasis added).    *See also In re Electric*
*Weld Steel Tubing Antitrust Litigation,* 512 F. Supp. 81, 84 (N.D. Ill. 1981) (ruling in antitrust
case that a sweeping request for a non-party's files was unduly burdensome and the request did
not merit the invasion into the non-party's privacy).[4]

Here, Defendants seek overbroad and sweeping requests from the non-party physicians
that would require them to search through virtually every document in their possession, or in the
possession of multiple other third parties.    Defendants' subpoenas additionally ask for
confidential patient records and confidential financial information.    The value of such an
intrusive third party production is significantly outweighed by the privacy and confidentiality
concerns at stake for patients who have been treated by these non-party physicians.

Rather than ensure that reasonable steps were taken to minimize burden, Defendants
instead used the Court's subpoena power in an oppressive and unreasonable manner and the
requests for production fall squarely within the category of "undue burden."[5]    By way of
example only, Requests 3 and 4 require these physicians to produce complete records, back to
2003, of each and every patient they have treated for any reason at any facility.    Defendants

---

[4] In *Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225 (9th Cir. 1975), a
party to an antitrust lawsuit subpoenaed a non-party for information regarding the relationship
between this non-party and a party to the lawsuit.  The Court quashed the "unreasonable and
oppressive" subpoena because the "requests for documents were sweeping in nature, covering
every paper touching on any relationship between [Defendants and the non-party].  Compliance
would have required extensive sifting and analysis by [non-party] employees." *Id.* at 229.  The
Ninth Circuit court noted that the party's alleged "need for these documents was not sufficient to
outweigh the burden and invasion of corporate privacy which would have resulted to Scott and
Walker-Scott, especially since they were not parties to the suit." *Id.*

[5] Further, the subpoenas seek confidential information, including private medical and
confidential financial information, which places the burden of proving need of such information
squarely upon Defendants.  F.R.C.P. 45(c)(3)(B).

failed to carve out the extensive information Plaintiff Heartland has already provided regarding each and every patient treated by any of these physicians at Heartland.

What is even more egregious, however, is that Defendants failed to carve out the documents that are within their own possession, custody or control. These physicians are all credentialed to provide services at the Hospital Defendants. These physicians additionally treat patients who are insured by the Managed Care Defendants. If these documents were relevant to this lawsuit—which they are not—Defendants should already have produced these documents. What is striking is that, with two weeks left in the discovery period, the Hospital Defendants and the Managed Care Defendants *have not done so*.[6] Defendants cannot now seek this Court to compel documents from non-parties that Defendants themselves have objected to producing.

III.   **IN LIGHT OF THE EXTENSIVE ELECTRONIC DISCOVERY ALREADY PRODUCED, NON-PARTY PHYSICIANS SHOULD NOT BE COMPELLED TO SEARCH FOR ANY ADDITIONAL ELECTRONIC DOCUMENTS.**

Defendants allege that these 29 non-party physicians refused to search for electronic documents. This argument is factually incorrect. Defendants then argue that these non-parties should now be compelled to shoulder the incredible burden of conducting additional electronic searches on every home and work computer and every personal email address to which they have access. In light of the extensive electronic documents already produced in this lawsuit, the burden and expense of searching for additional potentially responsive documents outweighs the likelihood that any additional responsive documents exist.

To put Defendants' argument in context, it is important to detail the extensive electronic production of documents in this lawsuit. To the extent any physician ever sent or received a

---

[6] It is important to note that while Plaintiff has asked for Defendants to produce records regarding their patients and insureds in the Kansas City area, Defendants have refused citing the burden, expense and confidentiality concerns of producing such documents. Plaintiff anticipates that these issues will soon be in front of the Court in Motion to Compel briefing.

responsive email or document on his or her @hssh.org email account, these documents have already been produced in this lawsuit.  To the extent *anyone* with an @hssh.org email account ever sent or received an email involving these non-parties (regardless of the domain name of the physician's email account), these emails would also have been produced in this lawsuit.  To the extent there are responsive documents related to the Heartland litigation, such communications are likely to have involved at least a single person with an @hssh.org email account.  For example, during the deposition of Dr. Hopkins, Defendants discussed an email already produced by Plaintiff that was sent to Dr. Hopkins' personal email account from an @hssh.org email address.  *See* Deposition of Dr. Hopkins at 119:25-120:15.  Furthermore, to the extent these physicians emailed to or received relevant emails from Dr. Reed's non-hssh.org email accounts, these emails also have been produced.  The production of these different sources of emails reasonably captures any arguably responsive emails that exist.

The reasonableness of these searches for electronic documents was confirmed by the physicians who have been deposed in this lawsuit and Defendants have no reasonable basis for believing that additional responsive emails or electronic documents exist on home computers or on non-@hssh.org email addresses.  Indeed, when Defendants asked these physicians in their depositions whether they anticipated that responsive documents would be located on their home computers, the answer was no.  *See, e.g.,* Deposition of Dr. Bailey at 127:15-18 (Q.  Would you expect to find any documents that were asked for in that subpoena on any of those computers? A: I don't believe so."); Deposition of Dr. Edwards at 151:19-12 (stating that he searched his personal email accounts and his personal computer and he "found nothing" responsive to the subpoena); Deposition of Dr. Gonzales at 263:20-21 ("I knew that I had no documents on my home computer that would apply to this" subpoena).

Furthermore, these physicians confirmed that they have searched for responsive electronic documents and no such documents were found.[7]  For example, Dr. Gonzales testified that his staff was tasked with collecting and producing responsive information on behalf of Drs. Gonzales, Storm and Moore, including a search for electronic documents.  *See* Deposition of Dr. Gonzales 262:1-263:7.  This Court has previously stated that the law in this District will limit discovery on a non-party when the "expected benefit of the requested discovery was 'speculative at best' and because the requested discovery would impose 'serious burden and expense' on non-parties."  Dkt. 568 (March 26, 2007 Order on Plaintiff's 10 Motions to Compel) at 5-6 (quoting *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1238 (10th Cir. 2000)).  In light of these facts, Defendants have provided no basis for compelling these 29 non-parties to search again for any additional electronic documents that extensive testimony has indicated are unlikely to exist.

## IV.    DEFENDANTS' SPECIFIC REQUESTS ARE IMPROPERLY BURDENSOME OR IRRELEVANT.

From Defendants' Motion, it is exceedingly unclear which specific requests are the subject of the Motion to Compel.  While Defendants claim that all requests are "at issue," Defendants instead, because of "page limitation restraints," merely provide "examples" of allegedly outstanding disputes with these non-parties.  Defendants' Mem. at 5.  While Defendants mention requests 1, 3, 9, 11, 12, 13, 14, 15 and 21, Defendants' failure to address any other requests has waived any motion to compel on these unaddressed requests.  *See*

---

[7] Defendants allege that deposition testimony from a few doctors indicates that these physicians conducted no searches for responsive paper or electronic documents.  Plaintiff is not surprised by these non-party physicians' confusion over the subpoenas issued in this lawsuit. The United Defendants in fact issued at least two other separate subpoenas on these physicians before the May 26, 2006 subpoenas at issue in this Motion.  What is certain is that Plaintiff's CEO coordinated with each physician or each physician's office to ensure that a search was conducted for responsive documents on behalf of each of these physicians.  *See* Exhibit 2.

*generally Sonnino v. Univ. of Kansas Hosp.,* 221 F.R.D. 661, 671 (D. Kan. 2004) (finding waiver when issues were not specifically addressed in motion to compel briefing).

With regard to these nine requests at issue, these 29 non-parties have either properly objected to the scope, burden and relevance of these requests or provided responsive documents within their possession, custody or control.  *See* Exhibit 2 (Declaration of Mary Nan Holley). Therefore, at the end of the day, Defendants have no basis on which to move to compel and Defendants' Motion should therefore be denied.

A. **DEFENDANTS' REQUESTS SEEK DOCUMENTS DUPLICATIVE OF THOSE ALREADY PRODUCED IN THIS LAWSUIT OR DOCUMENTS WITHIN DEFENDANTS' POSSESSION, CUSTODY OR CONTROL.**

In addition to Requests 3 and 4, which were discussed above, the clearest example of Defendants failing to minimize burden on these 29 non-parties is Request 9.  Request 9 requires each of these non-parties to produce: "All documents concerning negotiations and/or contracts between Heartland or any Heartland Physician and any Managed Care Defendant."  During the meet and confer, Defendants were told that they have all documents regarding Heartland's negotiations and/or contracts with any Managed Care Defendant.  Therefore, there are no additional documents to be compelled on this issue.

What is more troubling about this Request, and indicative of Defendants' failure to conscientiously perform their Rule 45 duties, is that Defendants seek to require non-parties to produce their contracts and negotiations with the Managed Care Defendants in this lawsuit.  To the extent these documents are relevant—which they are not—Defendants have no credible argument for why the Managed Care Defendants in this lawsuit have not already produced such documents, which even Defendants acknowledged is not the case.  At the time these subpoenas were served in May 2006, no party had settled out of this lawsuit.  And yet, in the year since the issuance of these subpoenas, the Managed Care Defendants failed to provide these documents.

Defendants cannot seek to compel third parties to produce the very same documents they are unwilling to produce in this lawsuit.

With regard to the few requests that actually seek information about Heartland and issues potentially relevant to this litigation, Requests 11, 12 and 15, Plaintiff has already produced documents responsive to these requests, as Plaintiff explained during the meet and confer conference with Defendants. To the extent any individual physician had information outside of Heartland's production, the information was produced.

### B.   DEFENDANTS' REQUESTS ARE UNDULY BURDENSOME.

Requests 3, 4 and 21 are good examples of how Defendants' Requests are facially overbroad. Defendants' expansive interpretation of their own requests additionally broadens these Requests. For example, Request 3 asks for: "Documents sufficient to identify each patient whom you believe would have received medical care at Heartland but for the conduct of the defendants alleged in Heartland's Complaint." Request 4 is even broader in scope, which is likely why Defendants fail to specifically address this request in their Memorandum.[8] Defendants have interpreted Request 21 to seek similar information. *See* Defendants' Mem. at 6.

During the meet and confer conference, Plaintiff again explained why these non-party physicians do not have documents responsive to these Requests. Plaintiff has repeatedly informed Defendants that because Heartland was not in-network with any of the managed care companies in Kansas City, their patients would be monetarily impacted by coming to Heartland. In looking after their clients' best interests, these physicians typically referred their patients to other facilities and never even discussed the possibility of Heartland with the majority of their

---

[8] Request 4 requires: "Documents sufficient to show the geographic areas from which You draw patients for each service You offer, including but not limited to the home address (including zip code) of each patient to whom You have provided medical care, and for each such patient, a description of all services provided to that patient (including dates, DRGs and CPT codes for each admission, and the name of the facility at which the services were provided)."

10

patients.[9]  What the physicians have said is that if Heartland had been in-network, they would have discussed Heartland as an option with their patients and they believe that a significant but unquantifiable number of these patients would have chosen to come to Heartland if Heartland had been in-network.[10]  Because these conversations never even occurred with the patients, it is not possible for these physicians to conclude, on a specific patient by patient level, which patients would have chosen to come to Heartland.  These physicians, therefore, do not have documents responsive to this request and there is nothing to compel on this issue.

Defendants counter this argument by claiming that if these physicians cannot specify this information at a micro level, these physicians must therefore produce all information on each patient they have treated since 2003.  This is an unreasonable request that requires each of these non-party physicians to sift through each and every single patient chart for more than four years. What again informs this demand as wholly unreasonable is that these non-party physicians were, by and large, treating these patients at Defendants' Hospitals and using Defendants' insurance networks.   Once again, Defendants have not produced this information and should not be allowed to compel production of such extensive and irrelevant documents from non-parties.

### C. DEFENDANTS CANNOT COMPEL NON-PARTIES TO CREATE NEW DOCUMENTS IN ORDER TO RESPOND TO THE SUBPOENAS.

With regard to Request 1, Defendants seek to compel non-party physicians to provide "a signed statement" listing all of the facilities at which they have privileges.  Defendants notably fail to provide any authority that a Rule 45 subpoena can require a party to create documents

---

[9] *See, e.g.,* Deposition of Dr. Amundson at 35:22-36:4 (Q. In other words, if you refer a patient to an in network facility, their benefits will be better than if you were to refer them to an out of network facility, fair enough? A. That's my understanding.  Q. And so it's your instruction to your schedulers to make sure patients go to in network facilities?  A. Yes, sir.  That's why I take so much --my understanding is why I take so much to Shawnee Mission.").

[10] *See, e.g.,* Deposition of Dr. Charapata at 104:5-107:6 (stating that he asked his schedulers to refer his cases to Heartland, but was unable to send more patients because Heartland was out-of-network).

when no such documents already exist.  Rule 45 only commands the production of documents, not the creation of documents.  Defendants' demand that the physicians create documents where no such documents exist must be denied.

To the extent these physicians have responsive documents, they have been produced.  For the 14 non-party physicians who have already been deposed, as well as the five physicians scheduled for depositions, Defendants have or will obtain this information from their testimony. Defendants had the opportunity and did ask each of these physicians where they have privileges or treat patients.   Therefore, with regard to these physicians, Request 1 has been satisfied. Finally, as these physicians are privileged at the Hospital Defendants and work with patients insured by the Managed Care Defendants, Defendants should again already have this information.

## D.     DEFENDANTS HAVE FAILED TO ALLEGE THE RELEVANCY OF THEIR REQUESTS.

Defendants fail to allege why the information sought by Defendants not concerning Heartland directly is relevant to this antitrust lawsuit.  Defendants stated that these non-party physicians were "the exclusive source of alleged damages in this case," thereby allegedly providing the basis for why these non-parties must produce extensive information on every patient they have treated.  Defendants' Mem. at 9.  While rhetorically interesting, such an argument is directly contradicted by the damages analysis detailed by Plaintiff in this lawsuit.  In Plaintiff's Rule 26 Disclosures and Supplemental Rule 26 Disclosures, Plaintiff stated that because patients rely on their managed care insurance, patients in the Kansas City area have been "locked out of Heartland's facilities because treatment is not covered by insurance."  Plaintiff also stated that the lack of in-network contracts "have also prevented Heartland from planned expansion across its physical plant and service areas.  Heartland has talked to several physician groups in different areas of expertise about expanding Heartland's areas of treatment."  The

measure of Plaintiff's damages, therefore, is the income generated by Heartland operating at full capacity versus Heartland's actual operating income.  Plaintiff's damages analysis is not limited to the number of patients these few physicians would have brought to Heartland.  Plaintiff has already produced documents indicating that physicians well beyond merely these 29 non-parties desired to perform procedures at Heartland.  *See* Plaintiff's Third Amended Complaint (Dkt. 249) at ¶ 50.  These non-parties are but a few of the physicians with privileges at Heartland and their patients are not determinative of Heartland's ability to operate at full capacity.

Defendants also claim that the extent of these patients' illnesses is relevant because Heartland is a medial facility "without full-service care."  Defendants' Mem. at 9.  Again, Heartland's intent was to provide the services traditionally offered by acute care hospitals and, but for Defendants' conduct, Heartland would have been capable of treating the same types of patients as the Hospital Defendants and all individuals insured by the Managed Care Defendants. *See* Plaintiff's Third Amended Complaint (Dkt. 249) at ¶ 29.

## V.  DEFENDANTS FAIL TO SUSTAIN THEIR BURDEN OF PROVING RESPONSIVE DOCUMENTS ARE WITHIN THE POSSESSION, CUSTODY OR CONTROL OF THESE NON-PARTIES.

Defendants argue that documents outside of the non-party physicians' possession, custody or control are nevertheless subject to the reach of the subpoenas because additional information should nevertheless be produced by the non-party physicians.[11]  Specifically, Defendants seek to compel these non-party physicians to produce documents on each and every patient they have treated since 2003.  The burden rests on Defendants to prove that these physicians have the possession, custody or control of these documents.  *See Cotracom*

---

[11] Defendants cite no authority that the possession, custody and control standards under Rule 34 for *parties* are identical to those for non-parties. Indeed, each case cited by Defendants was expressly decided under Rule 34 with regard to *parties* to a lawsuit.  *See* Defendants' Mem. at 10.  Rule 45 is clear that a third party subpoena is not as broad or burdensome as a Rule 34 document request to a party.  *See* F.R.C.P. 45(c)(1).

*Commodity Trading Co. v. Seaboard Corp.,* 189 F.R.D. 655, 663 (D. Kan. 1999).  Defendants have failed to meet this burden.

As explained to Defendants during the meet and confer on this issue, patient-specific documents and documents located exclusively within a physician's practice group are not within the possession, custody or control of these individual physicians.  After transmitting these subpoenas to the individual physicians, counsel for these non-parties was contacted by counsel for one specific physician group to which many of the subpoenaed doctors are members.  Counsel for the non-parties was informed that patient and practice group information sought by the subpoenas are not within the possession, custody or control of these subpoenaed physicians.  *See* Exhibit 3 (Affidavit of Todd M. McGuire).[12]  These physicians cannot be compelled to produce documents that are not within their possession, custody or control.

To the extent Defendants now claim that documents held by the physician practice groups are within the possession, custody or control, Defendants' own conduct in this lawsuit undermines this assertion.  Along with subpoenaing Dr. Reed for a second time, Defendants have additionally subpoenaed his physician practice group, Heartland Hand and Spine.  This subpoena on Heartland Hand and Spine was either needlessly burdensome on a non-party or, alternatively, Defendants are arguing contradicting positions within this litigation.

Further, Defendants themselves have recognized that corporate entity structures are important to the question of possession, custody or control.  When Heartland sought documents from several of the Defendants' corporate partners and parent companies, Defendants argued that

---

[12] Defendants state that a claim that these requested documents are not within the possession, custody or control of these physicians is "akin to a person saying that he cannot obtain his tax returns because they are held by his accountants or lawyers." Defendants' Mem. at 11.  Plaintiff again notes that Defendants have subpoenaed Plaintiff's accountants, BKD, not once but twice in this lawsuit.

documents in the control of corporate family members were not in the "control" of the Defendants themselves. Defendants argued that Heartland had a burden of proving such "control" existed. The Court agreed and ruled that Heartland had not met its affirmative threshold burden of proving the party's "control," over the non-party, and therefore the Court refused to compel production of documents from these non-parties. *See* Dkt. 568 at 52. The same logic applies here. Defendants cite absolutely no evidence or authority to meet their burden of showing that the specific physicians at issue in this Motion have the possession, custody or control of the documents held by their practice groups. As a result, applying the identical rationale of the March 26, 2007 Order, Defendants' subpoena requests—to the extent they purport to require production of documents outside of the possession, custody or control of the non-party physician—should be denied.

## <u>CONCLUSION</u>

Defendants failed to take any steps to minimize the burden on the 29 non-party physicians they subpoenaed. Instead, Defendants issued sweeping requests that sought irrelevant documents, documents that have already been produced in this litigation or documents within Defendants' possession, custody or control. These 29 non-party physicians therefore request that the Court deny Defendants' Motion to Compel. Because of the nature of these requests, and Defendants' failure to take any reasonable steps to minimize burden in the almost full year in which these requests have been pending, the non-parties request that the Court impose upon Defendants an appropriate sanction, including but not limited to lost earnings and a reasonable attorneys' fee, as provided by Rule 45(c)(1) of the Federal Rules of Civil Procedure.

**Dated:  May 04, 2007**

Respectfully submitted,

**STUEVE SIEGEL HANSON WOODY LLP**

_____/s/ Rachel E. Schwartz_____
Patrick J. Stueve, Kan # 13847
stueve@sshwlaw.com
Norman E. Siegel, D. Kan. # 70354
siegel@sshwlaw.com
Todd M. McGuire, Kan. # 19618
mcguire@sshwlaw.com
Rachel E. Schwartz, Kan. # 21782
schwartz@sshwlaw.com
330 West 47th Street, Suite 250
Kansas City, MO 64112
Telephone:  (816) 714-7100
Facsimile:  (816) 714-7101

**ATTORNEYS FOR PLAINTIFF
HEARTLAND SURGICAL SPECIALTY
HOSPITAL, LLC AND 29 NON-PARTY
PHYSICIANS**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 4th day of May, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all counsel of record.

_____/s/ Rachel E. Schwartz_____
**COUNSEL FOR PLAINTIFF**