## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| HEARTLAND SURGICAL<br>SPECIALTY HOSPITAL, LLC, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )     Case No. 05-2164-MLB-DWB<br>) |
| MIDWEST DIVISION, INC. d/b/a<br>HCA MIDWEST DIVISION, *et al.*, | )<br>)<br>) |
| Defendants. | ) |
| _____ | ) |

## MEMORANDUM AND ORDER

Before the Court is Defendants' joint motion to compel production of BKD, LLP ("BKD") documents being withheld by Plaintiff Heartland Surgical Specialty Hospital, LLC ("Heartland") on claims of attorney-client and work-product privilege and to order Heartland to not assert these privileges during depositions. (Docs. 818, 819 Sealed.)[1]  Heartland has filed its response (Doc. 810) and has also provided the claimed privileged documents to the Court for *in camera* review,

---

[1]  Defendants initially filed a motion for leave to file under seal their motion, memorandum in support, and exhibits regarding the motion to compel. (Doc. 781.) Heartland replied that it did not object to certain of these documents being filed in the public record. (Doc. 799.)  Pursuant to an Order of this Court (Doc. 800), Defendants filed their motion in the public record (Doc. 818) and filed the memorandum and exhibits under seal (Doc. 819 Sealed).

pursuant to this Court's Order (Doc. 787).  The nature of the underlying anti-trust

litigation is well-known to the Court and all parties and need not be detailed here.


FACTUAL BACKGROUND

Defendants served a document subpoena on BKD, an accounting, audit, and

tax firm, on April 11, 2007 seeking, among other things, any documents

concerning remuneration of Heartland board members.  (Doc. 819 Ex. 1 Sealed.)[2]

On May 17, 2007, Heartland produced documents responsive to the subpoena from

BKD and also produced a privilege log listing sixty-two pages of documents

withheld on the basis of attorney-client and work-product privilege.  The privilege

log did not separately identify any of the sixty-two pages or give individualized

dates of creation, subject matter descriptions, or document authors and recipients.

(Doc. 819 Ex. 18 Sealed.)  On June 4, 2007, Heartland provided a revised privilege

log concerning these sixty-two pages that supplemented the original privilege log.

(Doc. 819 Ex. 20 Sealed.)  Defendants contend Heartland's claims of privilege

with respect to these sixty-two pages are unsupported and move to compel the

production of these documents.  (Doc. 818.)

---

[2] BKD objected to the document subpoena stating, *inter alia*, that it was
unreasonable, vague, ambiguous and would impose undue burden and expense on BKD.
(Doc. 819 Ex. 6 Sealed.)

On May 3, 2007, Defendants also issued subpoenas and deposition notices for a Rule 30(b)(6) deposition of BKD and a deposition of an audit partner of BKD, Kevin Morey.  (Doc. 819 Ex.'s 2-5 Sealed.)  BKD objected to the deposition subpoenas and, in a separate proceeding in the United States District Court for the Western District of Missouri, moved to quash the subpoenas seeking deposition testimony.  (Doc. 819 at 4 Sealed.)  On May 18, Judge Whipple heard the motion to quash and ruled that he would defer final order until this Court had resolved Heartland's claims pursuant to the attorney-client and work-product privileges.  (Doc. 819 at 5 Sealed.)

This Court has previously ordered that the depositions of BKD and Morey are not to be scheduled until after this Court has ruled on the motion *sub judice* and Judge Whipple has ruled on the motion to quash filed in the Western District of Missouri.  (Doc. 782)  Defendants also move this Court for an Order directing that Heartland shall not assert the attorney-client or work-product privileges in connection with testimony sought regarding the compensation of Heartland board members.  (Doc. 818.)

The information Defendants seek relates to a salary and compensation study performed by BKD.  (Doc. 819 at 2 Sealed.)  A factual dispute exists as to who enlisted the services of BKD.  Heartland asserts that the study was performed by

BKD at the request of Heartland's outside legal counsel who was retained by

Heartland to provide legal advice concerning compensation of its physician board

members.  (Doc. 810 Ex. 2 Sealed.)  The privilege log submitted by Heartland

shows that outside counsel Vincent & Fontg, L.L.C. engaged BKD beginning in

2005.  (Doc. 819 Ex. 20 Sealed.)  The privilege log then shows that outside counsel

Holbrook & Osborn, P.A. engaged BKD in December 2006.  *Id.*  Defendants,

however, cite the deposition testimony of one of Heartland's board members, Dr.

Reed, who stated that "[t]he [Heartland] board has engaged BKD to do a salary and

compensation study which I do not believe has, as yet, been presented to the board

formally."  (Doc. 819 Ex. 23 Sealed.)  Based on the Court's findings below, the

resolution of this factual dispute is not necessary for the Court's ruling.


DISCUSSION

1.   Attorney-Client Privilege and the Work Product Doctrine

The attorney-client privilege protects confidential communications between

attorney and client made so that the client may "obtain legal assistance from the

attorney in his capacity as a legal advisor."  ***In re Grand Jury Subpoena Duces***

***Tecum Issued June 9, 1982***, 697 F.2d 277, 278 (10th Cir. 1983).  The work-

product doctrine protects documents "prepared in anticipation of litigation."  FED.

4

R. Civ. P. 26(b)(3).  The Court has previously discussed the contours of these
privileges.  (*See* Docs. 455 at 3-5; 492 at 3-4 and 13-14; 540 at 13-14, 21-22 and
29.)  The party asserting the privilege bears the burden of establishing with a "clear
showing" that the privilege applies.  ***Ali v. Douglas Cable Comms., Ltd. P'ship***,
890 F. Supp. 993, 994 (D. Kan. 1995).

Heartland argues for application of the "*Kovel* Doctrine," named for the case
of ***United States v. Kovel***, 296 F.2d 918 (2d Cir. 1961).  Kovel was an employee-
accountant in a tax law firm who had been subpoenaed to testify before a grand
jury concerning a client of that law firm.  *Id.* at 919.  Kovel refused to answer
questions on the basis of privilege and was held in contempt of court.  *Id.* at 920.
The government, the party objecting to the assertion of the privilege, argued that
the attorney-client privilege protects only communications to "menial or
ministerial" non-lawyer employees of the lawyer.  *Id.* at 921.

Analogizing an accountant to a foreign language interpreter, the Second
Circuit stated that "the presence of an accountant, whether hired by the lawyer or
by the client, while the client is relating a complicated tax story to the lawyer,
ought not destroy the privilege" and also that "if the lawyer has directed the client,
either in the specific case or generally, to tell his story in the first instance to an
accountant engaged by the lawyer, who is then to interpret so that the lawyer may

5

better give legal advice, communications by the client reasonably related to that

purpose ought fall within the privilege." *Id.* at 922.  The Second Circuit held:

> What is vital to the privilege is that the communication be
> made in confidence for the purpose of obtaining legal
> advice from the lawyer.  If what is sought is not legal
> advice but only accounting service, . . . or if the advice
> sought is the accountant's rather than the lawyer's, no
> privilege exists.

*Id.*  The court recognized that its holding drew a distinction between the case

where: (1) a client communicates first to its accountant and later consults its

attorney on the same matter, which would not be covered by the attorney-client

privilege; and (2) the case where a client consults its attorney who retains an

accountant, or the case where a client consults an attorney with its accountant

present, which would be covered by the attorney-client privilege.  *Id.* at 923.

The Tenth Circuit has not expressly ruled on the applicability of ***Kovel***'s

holding in this district, but has recognized the case.  *See, e.g.*, ***United States v.***

***Clark***, 847 F.2d 1467, 1468 n.1 (10th Cir. 1988) (citing ***Kovel*** in a footnote, after

noting the government's concession that an accountant retained by an attorney

"stands in the same position" as the attorney for the purpose of the attorney's

assertion of the attorney-client privilege); ***Young v. Taylor***, 466 F.2d 1329, 1332

(10th Cir. 1972) (citing ***Kovel*** in support of the proposition that the attorney-client

privilege "does include the communications heard by a secretary or clerk of the

6

attorney"); *SEC v. First Sec. Bank of Utah, N.A.*, 447 F.2d 166, 167 (10th Cir.

1971) (distinguishing *Kovel* in holding that bank deposits in attorney trust accounts

are not covered by the attorney-client privilege because the facts were not like the

facts of *Kovel* where the communications were made in confidence to an

accountant-employee of the attorney, for the purpose of obtaining legal advice

from the attorney).

 Other Tenth Circuit cases, cited by Defendants, have ruled on tangentially

similar issues, however.  *See, e.g.*, *In re Grand Jury Subpoena Duces Tecum

Issued June 9, 1982 v. United States*, 697 F.2d 277, 278-80 (10th Cir. 1983)

(noting that the attorney-client privilege would not apply to documents given by a

client to an attorney for inclusion in a tax return, retained copies of tax returns, and

tax work sheets or schedules prepared by an attorney to aid in preparation of a tax

return, but could apply when a client provides information to an attorney and

leaves the decision whether to include the information in the tax return to the

attorney's discretion; using guiding rule that it is the asserting party's burden to

show confidential communications made for the purpose of obtaining legal

assistance); *In re Grand Jury Proceedings v. United States*, 658 F.2d 782, 784-85

(10th Cir. 1981) (holding that the attorney-client privilege and work product

doctrine do not apply to accounting worksheets prepared in anticipation of

litigation on request of attorney to accountant because those worksheets had no attorney communications or attorney mental impressions and were based solely on the accountant's compilation of business records); *United States v. Omohundro*, 619 F.2d 51, 53 (10th Cir. 1980) (finding that the attorney-client privilege did not apply to corporate minutes, financial statements, and information regarding corporate assets where the attorney did not prepare the documents and the documents would not have been privileged in the hands of the client).  In addition, the United States Supreme Court has held that the attorney-client privilege applies to documents held by an attorney when the documents would have been protected by the Fifth Amendment privilege against self incrimination if held by the client, if transferred to the attorney "for the purpose of obtaining legal advice."  *Fisher v. United States*, 425 U.S. 391, 402-405, 405 (1976).

District courts in this circuit have applied the *Kovel* principles in varying factual circumstances.  *See, e.g.*, *Williams v. Sprint/United Mgmt. Co.*, 238 F.R.D. 633, 628-40 (D. Kan. 2006) (affirming the magistrate judge's citation of *Kovel* for support of the proposition that communications between non-attorneys could be protected by the attorney-client privilege as long as the communications were made in confidence for the purpose of obtaining legal advice from legal counsel concerning an adverse impact analysis); *Austin v. City & County of Denver*, No.

8

CIVA05CV01313PSFCBS, 2006 WL 1409543, at *4-5 (D. Colo. May 19, 2006) (stating that the attorney-client privilege could extend to communications between a client and a third party if the communications were made in confidence for the "primary purpose of obtaining legal advice" and the purpose of the communication was to put in usable form information obtained from the client); *Sanchez v. Matta*, 229 F.R.D. 649, 660 (D.N.M. 2004) (holding that the attorney-client privilege applies to communications between a client and a third party hired by the attorney because the communications were made for the purpose of obtaining legal advice); *Aull v. Cavalcade Pension Plan*, 185 F.R.D. 618, 628-29 (D. Colo. 1998) (holding that documents exchanged between the client, attorney, and an accounting firm are privileged because they were exchanged in confidence and in order to facilitate the attorney's provision of legal advice, regardless of whether the attorney or the client hired the accountant); *McEwen v. Digitran Sys., Inc.*, 155 F.R.D. 678, 684 (D. Utah 1994) (holding that accounting procedures reports were not protected by the work-product privilege because the "primary motivating purpose" of the accountants' work was re-issuance of financial statements and not to serve as a litigation aid).

The Court need not resolve the issue of whether the Tenth Circuit has settled the question concerning application of the *"Kovel* Doctrine" in this circuit.

Regardless of whether the Tenth Circuit has or would adopt some version of an attorney-client privilege, or application of the work product doctrine, stemming from accountant work product, when this Court applies the authority cited above, one overriding principle is clear: the claimed privileged documents are protected from disclosure only if they are prepared by the accounting firm for the purpose of providing legal advice.

Heartland argues that the documents are privileged because BKD gathered information for legal counsel to use in connection with a claim by Dr. Reed for certain compensation and that this legal advice related to the application of certain federal and state laws such as the Stark Amendment and federal anti-kickback statutes.  (Doc. 810 at 2; Ex. 2 at ¶ 2.)  However, for the reasons stated below, the Court has concluded that Heartland has not met its burden to show that these documents are protected by the attorney-client privilege.[3]  *Ali*, 890 F. Supp. at 994

_____

[3]  While the Revised Privilege Log asserts both "Attorney-Client Privilege" and "Work Product Privilege," *see* Doc. 819 Ex. 20 (Sealed), the parties have not addressed the work product issue.  Although counsel was allegedly addressing "a claim" by Dr. Reed, there has been no showing that the work by BKD was "in anticipation of litigation."  Dr. Reed does not describe BKD's work as related to any possible litigation, but describes it as a salary and compensation study for the Heartland board concerning his recommendation as to compensation.  (Doc. 819 Ex. 23 Sealed.)  Materials assembled in the ordinary course of business or for other non-litigation purposes are not protected by the work product doctrine. *Ledgin v. Blue Cross and Blue Shield of Kansas City*, 166 F.R.D. 496, 498 (D. Kan. 1996) (citations omitted). The Court finds that Heartland has failed to establish that BKD's work in this case was done "in anticipation of litigation" and therefore the work product doctrine is not applicable.

(requiring the party asserting a privilege to make a "clear showing" that the privilege applies).

Of the sixty-two pages in dispute, twenty-one pages relate to the engagement of BKD for BKD's services from either the Vincent & Fontg law firm or the Holbrook & Osborn law firm. These pages contain no attorney-client communications that were made for the purpose of obtaining legal advice. *See In re Indep. Serv. Orgs.*, No. Civ.A. MDL-1021, 1999 WL 450906, at *2 (D. Kan. May 24, 1999) (citing *In re Grand Jury Subpoenas*, 906 F.2d 1485, 1492 (10th Cir. 1990) (holding that fee arrangements are generally not privileged and remanding for the lower court to determine if the fee contracts at issue contained confidential information along with unprotected fee information)). Here, the documents concerning the engagement letters contain no confidential information and these twenty-one pages are not privileged.

The remainder of the pages from Heartland's privilege log consist of the drafts of the compensation study performed, the compensation research files relied upon by BKD in drafting its report, and the questionnaire utilized by BKD in gathering information from Heartland. None of these documents lend support to Heartland's contention that the services being performed by BKD were done for the purpose of aiding legal advice. BKD acted simply as a fact gatherer concerning

11

job descriptions.  BKD then compared those facts to established compensation data

sets collected from other companies before turning this information over to the

attorneys.[4]  BKD did not interpret any complicated accounting data.  *See Kovel*,

296 F.2d at 922.  In addition, the engagement letters show that BKD intended to

provide no analysis of the fair value of past, current, or future compensation or

compliance with laws and regulations relating to compensation.   As a result,

BKD's services were not completed for the purpose of rendering legal advice but

were merely compilations of factual materials.[5]  *See, e.g.*, ***In re Grand Jury***

***Proceedings v. United States***, 658 F.2d at 784-85 (accountant's compilation of

business records is not protected); ***United States v. Omohundro***, 619 F.2d 51, 53

---

[4]  A party cannot immunize documents from discovery simply by sending copies to counsel.  *See **Audiotext Communications Network, Inc. v. US Telecom, Inc.,*** 1995 WL 625962 at *7, *9 (the privilege does not extend to every communication to which an attorney is a party or privy, nor does the delivery of documentation to any attorney which contains facts and figures make that document into a privileged attorney-client communication); ***Burton v. R.J. Reynolds Tobacco Co., Inc.,*** 170 F.R.D. 481, 485 (D.Kan. 1997) (the fact that one is an attorney does not render everything done for or with the client privileged, and pre-existing documents given by the client to the attorney are normally privileged only when that material would have been privileged in the hands of the client).

[5]  The Court realizes that to avoid violations of Stark and anti-kickback laws physician compensation must be based on the fair market value of the services performed. *See, e.g.*, Julie E. Chicoine & Becky Sutherland Cornett, *Open Letter*, J. Healthcare Compliance, Sept.-Oct. 2006, at 39 (outlining Stark and anti-kickback laws).  BKD, however, did no more than gather data that could have come from Heartland's policies, procedures, and job descriptions and compare that data to data of other companies in a database.  This was not a complex accounting procedure or an in-depth fair market analysis and did not involve any analysis of either Stark or the anti-kickback laws.

(10th Cir. 1980) (finding that the attorney-client privilege did not apply to corporate minutes, financial statements, and information regarding corporate assets where the attorney did not prepare the documents and the documents would not have been privileged in the hands of the client). Therefore, these documents are not protected by the attorney-client privilege.[6]

2.    Revelancy

Aside from the privilege issue, the parties also dispute the relevance of the engagement letters. Heartland claims the engagement letters between its counsel and BKD are "irrelevant to the issues in this case." (Doc. 810 at 8 n.7.) The parties cite cases wherein the relevancy of a discovery request for the production of an engagement letter was discussed. In **Williams v. KOPCO, Inc.**, 162 F.R.D. 670 (D. Kan. 1995), the court ruled, *inter alia*, on a motion for a protective order regarding the production of business records from a law firm in connection with a motion to disqualify the law firm. *Id.* at 673. The court ruled that a contingent fee agreement was not relevant to the motion and the requesting party had not shown relevance. *Id.* at 674. In **Lebow v. Meredith Corp.**, No. 05-2545-JWL, 2007 WL

---

[6] Because the Court has found that the documents identified in Heartland's privilege log are not privileged, the Court need not analyze Defendants' waiver argument and Heartland's response contesting waiver. (Docs. 819 at 3 n.2, 15 n.4 (Sealed); 810 at 8.)

1343744, at *3 (D. Kan. May 4, 2007), the district court ruled on a motion for reconsideration of a magistrate judge's order that the plaintiff produce the engagement letter because it was not privileged.  The court ruled that the engagement letter was relevant because one issue in the litigation was the preparation and timing of the filing of the plaintiff's charge with the Kansas Human Rights Commission.  *Id.*  Finally, in ***In re Independent Service Organizations Antitrust Litigation***, No. Civ.A. MDL-1021, 1999 WL 450906, at *3 (D. Kan. May 24, 1999), the court stated that correspondence and fee agreements between the attorney and client were protected by the attorney-client privilege because the documents disclosed the attorney's specific legal advice.

These cases show only that the courts performed a relevancy analysis based on the individual facts of the case.  Based on the facts of this case, the Court finds that the engagement letters are not facially relevant to any claim or defense in the case and do not appear likely to lead to discovery of admissible evidence.  *See* FED. R. CIV. P. 26(b)(1) (giving standard for the scope of discovery).  Because the engagements letters do not appear relevant on their face, Defendants have the burden of showing the relevancy of the request.  ***Johnson v. Kraft Foods North America***, 238 F.R.D. 648, 653 (D. Kan. 2006).

Defendants allege only that the compensation information from the privilege

log is relevant and do not discuss the basis for their allegations as to the

engagement letters.  The Court agrees with Heartland that the engagement letters

are not relevant and they need not be produced.[7]

3.    Deposition Testimony

Defendants' motion also seeks an anticipatory ruling regarding the

deposition of BKD and Morey, and Heartland's assertions of objections at that

deposition.  (Doc. 818.)  Defendants do not brief this matter in their supporting

memorandum.  The Court cannot, of course, anticipate the questions of BKD by

Defendants that Heartland may find objectionable.  Based on the Court's ruling

above, the Court finds an additional ruling on this point to be premature.


CONCLUSION

Defendants' motion to compel is GRANTED in part and DENIED in part for

the reasons stated more fully herein.  Defendants motion is GRANTED with

respect to production of items 6, 7, 9, 10, 11, 12, and 13 and DENIED with respect

---

[7]  In fact, having now reviewed the disputed documents *in camera*, the Court believes that the relevancy of the compensation study itself is tenuous at best.  While the Court agrees with Judge Whipple that Heartland has put its financial condition at issue, and while many of the other BKD records covered by the document subpoena are undoubtedly relevant to Heartland's financial condition, the specific documents in dispute here are more problematic.  However, because relevancy at the discovery stage is broadly construed, the Court will not allow the documents to be withheld based on a claim that they are not relevant.

to items 1, 2, 3, 4, 5, and 8 of the Revised Privilege Log of Non-Party BKD dated

06/04/07 (Doc. 819 Ex. 20 Sealed.)  Defendants' motion with respect to a ruling

concerning the depositions of BKD and Morey is DENIED.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas on this 20th day of July, 2007.

    s/ DONALD W. BOSTWICK
DONALD W. BOSTWICK
U.S. MAGISTRATE JUDGE