## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| HEARTLAND SURGICAL | ) | |
| SPECIALTY HOSPITAL, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 05-2164-MLB-DWB |
| | ) | |
| MIDWEST DIVISION, INC. d/b/a | ) | |
| HCA MIDWEST DIVISION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

### MEMORANDUM AND ORDER

Before the Court is Defendants' joint motion for clarification (Doc. 872 Sealed) and Heartland Surgical Specialty Hospital LLC's ("Heartland's") brief in opposition (Doc. 788)[1] concerning *ex parte* communications with two of Heartland's former employees.  Pursuant to a previous order of this Court (Doc. 783 at 7), the parties submitted simultaneous briefs on this issue and the matter is now ripe for decision.  The nature of the underlying antitrust and tortious interference litigation is well-known to the Court and all parties and need not be detailed here.

### PROCEDURAL BACKGROUND

---

[1] Exhibit 2 to Plaintiff's opposition brief was filed under seal.  (Doc. 863 Sealed.)

1

On February 6, 2007, this Court ruled on Defendants' joint motion to amend the parties' protective order to permit counsel's *ex parte* communications with former employees of a party.  (Doc. 454.)  Defendants sought *ex parte* interviews with Jim Morse, Heartland's former chief financial officer, and Kim Krause, the former chief executive officer of Heartland.  (Docs. 360, 361.)  Heartland opposed Defendants' *ex parte* communications with these two former employees because of Krause and Morse's participation in attorney-client communications while they were employees of Heartland which could potentially be revealed through *ex parte* communications.  (Doc. 363.)

In its ruling, the Court discussed the case of ***Aiken v. Business & Industry Health Group, Inc.***, 885 F. Supp. 1474 (D. Kan. 1995).  ***Aiken*** held that attorneys were not prohibited from making *ex parte* contact with former employees of an organizational party to litigation, including former managerial employees.  The Court advised, however, that when unique circumstances were present, such as was the case with Morse and Krause, it would follow the approach utilized by the courts in ***FleetBoston Robertson Stephans v. Innovex, Inc.***, 172 F. Supp. 2d 1190 (D. Minn. 2001)***, Olson v. Snap Prods., Inc.,*** 183 F.R.D. 539 (D. Minn. 1998), and ***Spencer v. Steinman,*** 179 F.R.D. 484, 491 (E.D. Pa. 1998).  Regarding this approach, the Court stated:

2

Finally, other courts have "staked a middle ground" calling for an assessment of the likelihood that the contact in question has impaired the policy underlying Rule 4.2 of protecting privileged information from being disclosed to an opponent in litigation. *See e.g., **FleetBoston Robertson Stephans v. Innovex, Inc.**,* 172 F. Supp. 2d 1190 (D. Minn. 2001)**; *Olson v. Snap Prods., Inc.,*** 183 F.R.D. 539 (D. Minn. 1998); ***Spencer v. Steinman,*** 179 F.R.D. 484, 491 (E.D. Pa. 1998)**.** Under such a flexible approach, the pivotal question is whether, in the informal contacts, it is likely that any information gathered has intruded on legally privileged matters. ***Olson***, 183 F.R.D. at 545.

(Doc. 454 at 11.)  The Court also stated:

The court believes that the flexible approach outlined in ***FleetBoston***, ***Olson*** and ***Spencer*** is reasonable and allows for a proper balancing of the rights of Defendants to investigate the nature of Plaintiff's claims against the right of Plaintiff to prevent disclosure of information protected by the attorney-client privilege.  Thus, where an employee is shown to have had extensive exposure to attorney-client privileged materials and where there is a realistic likelihood that privileged information might be disclosed during an *ex parte* interview, this must be taken into account in deciding whether, or to what extent, to allow *ex parte* interview of that specific former employee.

(Doc. 454 at 15.)

Ultimately, the Court ruled, *inter alia*, that *ex parte* interviews with Krause and Morse were prohibited but permitted extended depositions of the two individuals.  The Court based its ruling on the burden to the non-parties of having multiple *ex parte* communications with the multiple Defendants, the recognition

that the two individuals, because of their importance to the facts underlying the litigation, would likely be deposed regardless of any *ex parte* communications, and the concern of privileged material being inadvertently disclosed. (Doc. 454 at 16-18.)

After the Court filed its Order, Defendants deposed Morse on April 25 and 26, 2007 and deposed Krause on April 27 and 28, 2007. On April 26, 2007, Heartland produced (pursuant to an unrelated discovery request) a searchable copy of Heartland's Advantx database. The Advantx database contains Heartland's patient billing and accounting data. During Morse's deposition, Morse was asked about the Advantx software and its capabilities; Krause, however, was not asked about the Advantx software in any manner during his deposition.

At a status conference on May 30, 2007 (a month after the depositions of Morse and Krause and receipt by Defendants of the Advantx database), Defendants made an oral motion to permit *ex parte* interviews with Krause and Morse. The round of briefing that is the subject of this Order then followed.

DISCUSSION

In pertinent part to the parties current dispute, the Court stated in its previous Order:

> Where a former employer seeks to limit *ex parte* interviews
> of a former employee, and where the employer meets the

4

> burden of establishing that the former employee has been
> extensively involved in attorney-client communications
> related to the pending case such that there is a realistic risk
> that the substance of attorney-client privileged
> communications might be disclosed in the interview, the
> court has the inherent supervisory power to either limit or
> prohibit such *ex parte* interviews based on the specific facts
> of each case.

(Doc. 454 at 16.)

The facts here are unchanged from their previous position other than the following assertions of Defendants. Defendants state that the *ex parte* interviews are necessary because: (1) Defendants need to gather additional non-privileged information from Krause and Morse and prepare them to testify at trial; and (2) Defendants need assistance from Morse to access information from Heartland's Advantx database.

The parties have identified no new case law on the issue currently before the Court and the Court has found none through its own research. As the Court anticipated in its prior Order, however, the Kansas Rules of Professional Conduct, which this court has adopted, *see* D. Kan. Rule 83.6.1(a), have recently been modified. Rule 4.2, which now prohibits communications with persons represented by counsel, has been broadened. The recently adopted Rule 4.2, which goes into effect July 1, 2007, prohibits communication about the subject of the lawyer's representation with a <u>person</u> the lawyer knows to be represented. (The

5

former rule prohibited communications with a <u>party</u> the lawyer knows to be represented.)  The comments to Rule 4.2 have also been expanded.  In a comment on the case of represented organizations, the comments state: "Consent of the organization's lawyer is <u>not</u> required for communications with a former constituent."  *See* Rules Adopted by the Kansas Supreme Court, *at* http://www.kscourts.org/ctruls (emphasis added).

This rule change in Kansas, although pertinent, does not affect the Court's previous Order.  In its prior ruling, the Court recognized this general rule, as established in ***Aiken v. Business & Industry Health Group, Inc.***, 885 F. Supp. 1474 (D. Kan. 1995), and its progeny, but based its analysis on the unique circumstances present with respect to Morse and Krause.  Both Morse and Krause were involved in attorney-client communications with regard to this litigation[2] and are now presently employed by an entity in competition with Heartland.[3]  Morse

---

[2] Defendants now question, in passing, the extent of Morse and Krause's exposure to attorney-client communications.  (*See* Doc. 872 at 6 Sealed (questioning the accuracy of Heartland's counsel's understanding of Krause and Morse's extensive attorney-client communications)).  The Court notes, however, that at the depositions of Morse and Krause, objections were lodged based on the attorney-client privilege.  (Doc. 788 at 3.)  Therefore, the Court accepts that Heartland has established that Morse and Krause were involved in attorney-client privileged communications with counsel for Heartland.  (Doc. 788 Ex. 1 at ¶ 12.)

[3] Heartland reports that after Krause left his employment with Heartland, he became employed with a surgery center owned by HCA Midwest, a Defendant in this litigation.  Currently, both Morse and Krause are employed by a health care management

and Krause's incentives for protecting Heartland's attorney-client communications privilege are low.  In addition, Morse is an unrepresented individual (Doc. 788 at 3) and he cannot be expected to know the bounds of the attorney-client communication, while Krause is represented by an attorney whose legal fees are being paid by one of the Defendants in this litigation (Doc. 788 at 8 n.4).  The Court previously noted the difficulty in applying the attorney-client privilege and the need to have such disputed determinations "on the record" for future court determination.  (Doc. 454 at 8-9.)  The circumstances in this litigation are unique from the standard litigation situation where informally interviewing an organization's former employees saves money and time because of the limited nature of the information needed from the former employee.

At this time, the Court sees no justification for modifying its previous prohibition of *ex parte* contacts with Krause.  The only justification proffered by Defendants is limited to a few sentences: "The interviews of Krause and Morse are necessary to allow defendants to gather additional non-privileged information from witnesses and to prepare them to testify at trial."  Later in their brief, Defendants state: "Defendants' counsel and these witnesses should be permitted to discuss

_____

company that manages two surgery centers owned by another Defendant in this litigation, Saint Luke's.  (Doc. 788 at 2 n.1.)

non-privileged matters relevant to the lawsuit.  For example, there are potential exhibits to discuss with the witnesses that were not addressed in their depositions." (Doc. 872 at 4 Sealed.)

Defendants' supposition is not sufficient to override the Court's previous concerns and justifications for prohibiting *ex parte* contact with Krause. Defendants state they need to gather non-privileged information, but this was the purpose of the deposition that was taken.  The Court permitted five additional hours for the deposition (beyond the standard seven hours) so the parties could fully explore all pertinent issues.  Fact discovery in this litigation has ended and Defendants have proffered no reason for needing this additional information at this late stage in the litigation.  The Court's previous concerns and justifications for entering its previous order have not changed and Defendants have offered no justification for overriding those concerns and justifications.[4]

With respect to Morse, however, Defendants are justified in seeking *ex parte* communications concerning Heartland's Advantx database.  In a previous

---

[4] Defendants do not allege that Krause has information pertinent to the operation of Heartland's Advantx database and Defendants did not question Krause about the Advantx software during Krause's deposition.  Defendants focus their brief on Morse's knowledge of the Advantx database's function.  Accordingly, there is no justification for permitting *ex parte* interviews with Krause concerning Heartland's Advantx database.

deposition of Heartland's director of information systems, Michael Coffman,

Coffman testified that Morse was the individual with knowledge of the custom

reporting capabilities of the Advantx database.  Coffman was himself unable to

provide a detailed understanding of this aspect of the Advantx database.  Further,

Defendants did not receive the database until April 26, 2007, six days after

Coffman's deposition and the second day of Morse's two-day deposition.

Defendants could not have formulated specific questions regarding Advantx of

Coffman and also could not have had time to review the database and formulate

questions for Morse. Defendants did, however, lay a foundation for Morse's

knowledge by asking him questions concerning the database during his deposition.

Defendants have satisfied the Court that Morse may prove helpful in reducing the

cost associated with obtaining useful information from Advantx, and the fact that

Heartland may have provided Defendants with a copy of the Advantx operating

manual does not diminish Defendants' need for such assistance.[5]

Because, as laid out above, the Court's prior concerns and justifications for

its ruling remain, however, the *ex parte* communications with Morse will be

limited.  Defendants will be allowed *ex parte* contacts only concerning the subject

---

[5]  It also appears to the Court that Heartland's recent change in its method of calculating damages in this case, *see* Doc. 829 at 15-17, may make the use of its Advantx database even more important than was originally contemplated.

matter of the Advantx system and only with Morse, not Krause. Defendants must identify the limited nature of the interview with Morse prior to beginning the conversation and provide him with a copy of this Memorandum and Order. Defendants are free to discuss with Morse the underlying functioning of the Advantx database and how Heartland, in particular, used that database, including any custom-designed reports which Heartland may have developed for use with the Advantx program. Defendants are also free to ask Morse to operate the version of Heartland's Advantx program and the Advantx database that Heartland produced to Defendants in this case and are free to ask him to run searches using the program and to prepare any customized reports Defendants may request from the database. Finally, Defendants are to coordinate any *ex parte* contact with Morse so that he is not unduly inconvenienced with multiple requests from multiple Defendants.

The Court's ruling is founded upon its prior concern of the burden to non-parties of having multiple *ex parte* communications with the multiple Defendants and the concern of privileged material being inadvertently disclosed in an *ex parte* setting. Defendants have had ample opportunity, through the twelve hours of deposition testimony the Court permitted for each individual, to investigate Heartland's claims through Morse and Krause. The Court also seeks to balance Heartland's right to protect its attorney-client privileged communications with the

realization that an *ex parte* interview with Morse concerning only the Advantx

database is not likely to inadvertently disclose privileged information.  A limited

modification of this Court's prior Order, as set forth more fully herein, is therefore

justified.

CONCLUSION

Defendants' joint motion for clarification is GRANTED in part and

DENIED in part as more fully stated herein.  Defendants may conduct *ex parte*

interviews with Morse related to the Advantx database as set out in this

Memorandum and Order.  All other *ex parte* contacts with Morse and Krause, by

either Heartland or Defendants, are prohibited.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas on this 20th day of July, 2007.

        s/ DONALD W. BOSTWICK
DONALD W. BOSTWICK
U.S. MAGISTRATE JUDGE