## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

HEARTLAND SURGICAL                )
SPECIALTY HOSPITAL, LLC,          )
                                  )
                    Plaintiff,    )
                                  )
v.                                )          Case No. 05-2164-MLB-DWB
                                  )
MIDWEST DIVISION, INC. d/b/a      )
HCA MIDWEST DIVISION, *et al.*,   )
                                  )
                   Defendants.    )
_____   )

## MEMORANDUM AND ORDER

Before the Court are two motions directed to subpoenas served on non-

parties Dr. William O. Reed ("Reed") and his medical practice group, Heartland

Hand & Spine Orthopedic Center, P.A. ("HHSOC")[1]:

> Reed and HHSOC's Motion to Quash Two Subpoenas and Memorandum in
> Support (Doc. 733); and

> Defendant Aetna Health, Inc. and Aetna Life Insurance Company's
> (collectively "Aetna") Motion to Compel Compliance with Subpoenas and
> Memorandum in Opposition to Motion to Quash.  (Doc. 763.)

Aetna's supporting memorandum, with attached exhibits, was filed under seal.

---

[1] Due to the similarity of names, Plaintiff Heartland Surgical Specialty Hospital,
LLC will be referred to as "Heartland" and non-party Heartland Hand & Spine
Orthopedic Center, P.A. will be referred to as "HHSOC."

(Doc. 820)(Sealed).  Reed and HHSOC filed an opposition to Aetna's motion to compel.  (Doc. 791.)

Subsequently, the Court set oral argument on the motions and provided counsel with a list of specific questions to be addressed at the hearing.  (Doc. 798.) The hearing was held on June 26, 2007 and the matter is now ripe for decision. The nature of the underlying anti-trust and tortious interference litigation is well-known to the Court and all parties and need not be detailed here.

FACTUAL BACKGROUND

The two subpoenas at issue are directly related to earlier subpoenas served on 29 non-party physician founders of Heartland ("Founders") in May 2006.  Dr. Reed was one of the Founders served with a prior subpoena.  The Court has been required to issue two prior Orders relating to the enforcement of those earlier Founders' subpoenas, and assumes that all parties are familiar with those Orders. See *Heartland Surgical Specialty Hosp., LLC v. Midwest Division, Inc.*, No. 05-2164-MLB-DWB, 2007 WL 1112525, at *1-2 (D. Kan. Apr. 11, 2007) and Doc. 895.  In the April 11, 2007 Memorandum and Order, the Court refused to hold that Defendants could not issue additional subpoenas to the Founders.  2007 WL 1112525, at * 4.  However, the Court did admonish all parties to be mindful of the requirements of Fed. R. Civ. P. 45(c)(3)(A) which the Court stated it would

enforce as necessary. *Id.*

On April 19, 2007, Aetna filed its Notice of Commanded Production of Documents by Subpoena as to both Reed and HHSOC. (Doc. 637, 638.) The subpoenas were served on April 20, 2007, and required Reed and HHSOC to produce the subpoenaed documents on May 4, 2007. (Doc. 733 Ex.'s 1 & 2.) Copies of the two subpoenas are attached as Exhibits 1 and 2 to the motion to quash. (Doc. 733 Ex.'s 1 & 2.) The subpoena to Reed contained 54 categories of requested documents, and the subpoena to HHSOC contained 23 categories of requested documents. Both subpoenas also contained 20 paragraphs of "Definitions and Instructions."

Reed and HHSOC objected to the two subpoenas on May 2, 2007 (Doc. 733 Ex. 4) and filed their motion to quash the subpoenas on May 14, 2007. (Doc. 733.) Aetna's objection to the motion to quash also included a motion to compel compliance with the subpoenas which Aetna contended sought information not previously requested in the Founders Subpoenas. (Doc. 820 at 3)(Sealed.) Aetna also requested that the Court overrule Reed and HHSOC's motion to quash the subpoenas, order Reed and HHSOC to provide a certification of when they received the subpoenas and when and what efforts they undertook to comply with the subpoenas, order Reed to be made available for deposition regarding these

3

additional documents to be produced, and award Aetna its costs and attorneys fees concerning the motion to compel.  (Doc. 763.)  In addressing the Reed and HHSOC's objection that these subpoenas were overbroad and sought cumulative documents, Aetna stated that it did not seek the production of any document already produced.  (Doc. 820 at 15)(Sealed.)

## DISCUSSION

Aetna sorts the 77 requests in the two subpoenas into 7 general categories:

1.    Heartland's alleged damages;

2.    The dispute with Dr. Nicholas Ahn, a Heartland Founder and former employee of HHSOC;

3.    The formation and development of Heartland;

4.    Competitive issues Heartland faced in becoming profitable;

5.    Reed's abilities in managing Heartland;

6.    Reed's efforts to obtain managed care in-network contracts for Heartland; and

7.    Reed's and Heartland's negotiations and execution of exclusive contracts.

(Doc. 820 at 3)(Sealed.)  The subpoenas generally request documents from January 1, 2002 to present.  (Doc. 773 Ex. 1 at "Definition and Instruction" ¶ 21; Ex. 2 at

4

"Definition and Instruction" ¶ 21.)[2]

Reed and HHSOC object to the subpoenas based on relevancy, overbreadth, undue burden, vagueness and cumulativeness. (Doc. 733 Ex. 4 at 3-7.) They also object to production of documents back to January 1, 2002, and argue that the subpoena did not allow a reasonable time for compliance. *Id.* at 7. Finally, they object to any requests that would require restoration of back-up tapes or production of any documents covered by the attorney-client privilege or work product doctrine. *Id.* at 8. In the introduction to their objections, Reed and HHSOC outline the extensive discovery which has already occurred in this lawsuit including Heartland's document production, Dr. Reed's and HHSOC's prior production of documents in response to the Founders' Subpoena including approximately 19,000 pages of Reed's e-mails, and the fact that Defendants have taken a lengthy deposition of Reed. *Id.* at 2-3. Reed was deposed by Defendants in May 2007 for twelve hours over a two day period, and each physician member of HHSOC[3] has

---

[2] In the Founders' Subpoenas, Defendants initially requested document from January 1, 2000 to present, but ultimately limited their requests to documents from October 2003 to present. (Doc. 692 at 13.)

[3] The other physician members of HHSOC are Dr.'s Amundson, Bailey and Hopkins. (Doc. 733 at 3.) These three doctors are also Founders of Heartland. At the June 26, 2007 hearing, counsel for Heartland and the Founders produced a list which showed that Dr. Amundson was deposed in January 2007, Dr. Bailey in February 2007, and Dr. Hopkins in April 2007.

also been deposed along with HHSOC's executive administrator, Cindy Barrack.
(Doc. 733 at 3.)

In connection with the earlier Founders subpoenas, the Court reviewed the
issue of whether the Founders (such as Reed) are to be treated as parties and the
standards to be applied in determining relevancy and undue burden in connection
with subpoenas to non-parties.  (Doc. 895 at 9-13).  The Court incorporates those
findings and conclusions in connection with consideration of the present motions.

At the June 26, 2007 hearing, the Court initially observed that several of the
categories of documents requested in the subpoenas seemed to be irrelevant, citing
specifically the Reed subpoena request 22 seeking documents concerning Reed's
wife's compensation from Heartland as an interior decorator.  Aetna responded that
it was not seeking to compel that information.  (Doc. 829 at 113.)[4]  The Court then
asked what was really in dispute concerning these two subpoenas and counsel for
Aetna and Reed/HHSOC engaged in a back-and-forth discussion of what is being
requested and what has already been produced, either by Heartland during its
document review and production, or by virtue of other subpoenas issued by

_____

[4]  This transcript was filed electronically on June 27, 2007, and remote public
access to the transcript is restricted for a period of 90 days.  *See* "Notice for Members of
the Bar on Electronic Availability of Transcripts,"
www.ksd.uscourt.gov/attorneys/transcripts/index.php.

Defendants to other non-parties.  (Doc. 829 at 114-45.)[5]

For purposes of discussing Aetna's motion to compel, the Court will refer to the seven general categories of documents outlined by Aetna.

Category 1:  Heartland's Alleged Damages

As with the prior dispute concerning the Founders' subpoenas, the major area of concern to Aetna was patient information concerning patients treated by Reed or by HHSOC, and patients who would have received medical care at Heartland but for the conduct of Aetna as alleged in Heartland's Complaint.  *See* Reed requests 34, 38-40.  Again, as with the Founders' subpoenas, Aetna urges that this information is critical to its ability to dispute Heartland's damage claims in this case.[6]

Shortly before the June 26, 2007 hearing, the Founders (who include Dr. Reed and the other three physicians employed by HHSOC – Dr.'s Amundson,

_____

[5]  Contrary to Aetna's statements at the hearing that it was not seeking to enforce all of the requests in the two subpoenas, Aetna's motion to compel specifically identified every request in both subpoenas.  (Doc. 820 at 3.)

[6]  Reed Requests 39 & 40 reference documents about damages "you or [Heartland] has allegedly suffered. . . ."  "You" is defined as the person to whom the subpoena is directed, including any employee, agent or representative of that person.  To the extent that the subpoena requests documents concerning damages allegedly sustained by either Reed or HHSOC the request is immaterial to the subject matter of this case and is not calculated to lead to the discovery of admissible evidence.  Neither Reed nor HHSOC are parties in this case and therefore have no damages that they can claim in this case.  (Doc. 829 at 118-19.)

Bailey and Hopkins) filed a Supplemental Memorandum wherein they withdrew a

portion of their prior objections to production of certain patient information.  (Doc.

827.)  The Founders have indicated that they have provided to Heartland, for use

by Heartland's damage expert, an identification of all patients treated by the

Founders from September 2003 to date.  This patient information is being provided

by the Founders, but it comes from the medical practices for whom the various

Founders are employed.  (Doc. 827 at 1; Doc. 820 at 20.)  It appears that this

information is gathered from computer billing and/or claims records of the various

medical practices, including HHSOC, which contain: (1) the name or identification

number of the patient; (2) a description of the procedure or treatment for the

patient, perhaps by specific code;  (3) where the procedure was performed; and (4)

the payor for the treatment.  The Court, in its Memorandum and Order concerning

the Founders' subpoenas, and at the June 26, 2007 hearing, ordered all Founders to

provide this patient information to Defendants within ten days of the hearing.

(Doc. 829 at 145; Doc. 895 at 16.)  Counsel for Reed/HHSOC stated that it was his

belief that the information being produced would satisfy most of the items

identified in Reed request 34(A-F).  (Doc. 829 at 125-26.)[7]  It would appear to the

---

[7]  Aetna will also be allowed to inspect and copy additional patient information in
the form of patient records for a designated three-month period for Dr. Reed and the three
HHSOC physicians pursuant to the Court's prior Memorandum and Order concerning the

Court that production of this information would also satisfy Reed requests 38-40
and HHSOC requests 6-8.

Closely related to this patient information is Aetna's request for surgery
scheduling sheets which show where surgeries were initially scheduled to be
conducted and if there was a later change in location.  (Doc. 829 at 115.)  After
further inquiry, counsel for Reed/HHSOC indicated that they believe they have
now identified what Aetna is requesting and it will be produced.  (Doc. 829 at 130-
33.)

Somewhat related to the topic of damages was Aetna's request for payor
reports.  Aetna attached a sample of such a payor report to its motion to compel.
(Doc. 820 Ex. 4)(Sealed).  The sheet referred to by Aetna shows for Dr. Ahn (a
former physician with HHSOC) the charges that were submitted for Dr. Ahn's
services to numerous specific payors, including Aetna.  (Doc. 820 Ex. 4 at 7.)
Counsel for Reed/HHSOC agreed to see if this information was available for each
HHSOC physician through HHSOC's computerized billing and claims system.
(Doc. 829 at 133-36)(sealed).  There was some disagreement about whether these
reports showed the physician's charges or the actual reimbursement paid by the
payor entity.  The Court views this is interchangeable information and

Founders' subpoenas.  (Doc. 895 at 25-29.)

Reed/HHSOC is directed to search their records for payor reports like the one

identified by Aetna, whether those reports refer to physician charges or to actual

payor reimbursements.

    <u>Categories 3-7:</u>    <u>Miscellaneous Documents Conerning Heartland</u>

    Aetna seeks documents concerning Reed's formation of Heartland, his

recruitment of Founders of Heartland, his efforts to obtain managed care contracts,

his pre-opening meetings with managed care organizations and other payors, his

role in negotiating exclusive contracts with anesthesiology and other groups, any

Manager's Corners e-mails which he authored, and documents pertaining to Reed's

request for additional compensation from Heartland as set out in what is referred to

as the Farrell-Evans letter.[8]  (Doc. 829 at 122-23.)  These categories of documents

all are directly related to Heartland, and counsel for Reed/HHSOC stated that all

information retained by Reed concerning Heartland was kept on Reed's laptop.  In

making prior productions both for Heartland and for Reed (in connection with the

Founders' subpoenas), counsel reviewed all information Reed had concerning

Heartland, including matters addressed in the Farrell-Evans (BKD) letter, and all of

---

    [8]  A copy of this letter is attached to Aetna's motion to compel.  (Doc. 820 Ex.1
Sealed).  The letter is dated January 15, 2006, and the recipient – Sarah Farrell-Evans– is
with BKD accounting firm.  Defendants have also subpoenaed BKD for their records
concerning this matter and that subpoena is the subject of yet another motion to compel.
(Doc. 818.)

that information has already been produced.  (Doc. 829 at 127-30, 137-43.)  There

is no indication in the record that HHSOC, as apart from Reed, would have any of

these designated documents.  Therefore, the Court accepts the statements of

counsel for Reed/HHSOC that any existing documents pertaining to Heartland,

including matters discussed in the Farrell-Evans letter, have already been

produced.  No further action is required of either Reed or HHSOC concerning

these requests.

Category 2:  Dispute With Dr. Ahn

Dr. Ahn was also a Founder of Heartland and was formerly a physician

member of HHSOC.  Disputes arose between Ahn and Reed/HHSOC, Ahn left that

practice group, and a lawsuit ensued.  Ahn also made complaints about how the

purchase of his interest in Heartland was handled by Reed and others for tax

purposes.

In connection with the Ahn disputes, Aetna first seeks Reed's tax returns

from 2002 through the present date.  Reed Request 54.  Aetna recites that Dr. Ahn

has testified that he believes Reed committed tax fraud by misrepresenting on

Heartland's K-1 return when Reed acquired a portion of Ahn's interest in

Heartland.  (Doc. 829 at 118)(Sealed).  As a result, it is alleged that Reed took tax

losses on his individual tax returns as a result of losses reported by Heartland on its

K-1 returns for the year 2004 which were improper.  *Id.*  Aetna also believes that

Reed's tax returns should be produced because he is required to provide them to

Heartland's lending banks in connection with his guaranty of Heartland's debt.  *Id.*

Aetna believes that Reed's tax returns are relevant for purposes of impeachment of

Reed since he signed his returns under penalty of perjury.[9]  *Id.* at 120).  *See also*

Doc. 820 at 10 (Sealed) (arguing that tax returns can be used to impeach a

witnesses' credibility under Fed. R. Evid. 608(b).

Aetna gives a similar rationale for seeking documents concerning Dr. Ahn's

lawsuit with Reed/HSSOC.  First, Aetna again recites that the lawsuit might

provide information as to when Ahn's interest in Heartland was actually

transferred to Reed, and thus might be evidence that Reed committed tax fraud.

(Doc. 829 at 120)(Sealed).  Furthermore, Aetna argues that Ahn has alleged that

Heartland was engaged in unethical billing practices and that its corporate counsel

was encouraging the Founders to refer cases to Heartland that were inappropriate.

*Id*. at 121-22.  Ahn testified that he kept a record of alleged unethical practices and

when he left Heartland these records were left in his office at Heartland.  *Id.* at

120-22.

---

[9]  Aetna presents no arguments as to how Reed's tax returns for years other than
2004 and 2005 could be used for impeachment purposes.

Reed/HHSOC respond that as to Reed's tax returns, Defendants have subpoenaed Heartland's lending banks and that those lenders have already provided all of Reed's tax returns.  (Doc. 829 at 126)(Sealed).  Likewise, as to the Ahn lawsuit, Heartland has already produced all records it has concerning the suit and Defendants have also subpoenaed Dr. Ahn who has also provided documents concerning the lawsuit.  *Id.* at 127.  Furthermore, Reed/HSSOC argues that the disputes between Ahn and Reed/HSSOC related not to Heartland, but rather to Ahn's position with HSSOC, therefore that information is not relevant to the claims in this case.  *Id.* at 127.

As to the tax returns, the Court has reviewed the single unpublished case cited by Aetna in support of the general proposition that tax returns can be used to impeach a witnesses' credibility.  ***Hunter v. Gen. Motors Corp***. 149 Fed. Appx. 368 (6th Cir. 2005).  In that case, a plaintiff was cross-examined about whether he had reported any income on his tax returns and a copy of his tax return was admitted into evidence.  On appeal, the Sixth Circuit held that the trial court's admission of the tax return was not an abuse of discretion and stated:

> Pursuant to the provisions of Federal Rule of Evidence 608(b), cross-examination may delve into specific instances of conduct of the witness if probative and if that conduct concerns "the witness' [sic] character for truthfulness or untruthfulness." Because Hunter knew that he had received a substantial salary during the relevant tax year, yet failed

> to claim such a taxable source of income, the return did indeed reflect upon the plaintiff's truthfulness and was, therefore, admissible at trial.

149 Fed. Appx. at 372-73.  The Court, however, is not convinced that a trial court in the Tenth Circuit would allow the tax returns to be admitted into evidence.

Specific instances of untruthful conduct by a witness that are introduced only for the purpose of attacking his character for truthfulness may not be proven by extrinsic evidence.  Thus, while the Court may allow inquiry into specific instances of untruthful conduct on cross examination, the examining party is stuck with the answer given by the witness.  Extrinsic evidence cannot be introduced to prove the collateral issue.  *See Scott v. Dorsey*, No. 96-2030, 1998 WL 43157, at *6 (10th Cir. Jan. 27, 1998); *United States v. Olivo*, 80 F.3d 1466, 1471 (10th Cir. 1996); *United States v. Martinez*, 76 F.3d 1145 (10th Cir. 1996) (stating that Rule 608 allows cross examination of witnesses about specific conduct that reflects a witness's character for truthfulness, but if the witness denies conduct and the conduct is collateral, the examiner must take his answer and may not prove the matter by extrinsic evidence); *United States v. Walker*, 930 F.2d 789, 791 (10th Cir. 1991) (stating that a matter is collateral if it could not have been introduced in evidence for any purpose except impeachment).  Here, Reed, in an affidavit, has denied any allegations of tax fraud, has stated that his tax returns for the year 2004

14

were audited by the IRS, no changes were required, and no fines or penalties were assessed.  (Doc. 791 Ex. C.)

Under these circumstances, it is doubtful that Reed's tax returns would be admissible for impeachment purposes.  While Defendants could cross-examine Reed at trial as to whether he made untruthful statements concerning his taxes, it does not appear that they could introduce extrinsic evidence in the form of his tax returns to attempt to prove such a fraud.  Therefore, it does not appear that the request for Reed's tax returns is calculated to lead to the discovery of admissible evidence and should therefore be denied.  Furthermore, Aetna is alleged to already have Reed's tax returns from other sources, and therefore this request is cumulative.

As to Aetna's request for records concerning the lawsuit with Dr. Ahn, to the extent Aetna is seeking those records to attempt to establish the claim of tax fraud, as was the case with the request for tax returns, this request is also not material. However, Aetna also claims that the lawsuit may relate to Ahn's concerns about unethical billing practices[10] and inappropriate referrals from Founders to Heartland.

---

[10]  From portions of the Ahn deposition that were attached to the motion to compel, it seems to the Court that any claims of unethical billing practices relate to HHSOC and not to Heartland.  (Doc. 820 Ex. 3 at 3.)  The alleged unethical practices at Heartland do not appear to relate to billing, but rather to how to increase the number of cases referred to Heartland.  *Id.* at 5-6.

While Aetna argues that this information should be produced because Ahn was an important source of revenue to Heartland, a source that has now disappeared, Aetna does not explain precisely how the requested documents are calculated to lead to the discovery of admissible evidence in this case.  Any evidence of alleged unethical billing practices at HHSOC has no relevance to Heartland's claims in this case.

There is, however, some indication that Ahn also documented instances where Founders of Heartland were allegedly encouraged to refer cases to Heartland for treatment in situations which Ahn felt were inappropriate.  (Doc. 820 Ex. 3 at 5-6)(Sealed).  While this is at best a tenuous connection with the claims in this case, if such notes or documents do exist they could relate to the issue of how many patients of what type could be treated at Heartland and therefore could be relevant to the issue of Heartland's damages in this case.  Counsel for HHSOC stated at the hearing that while he has inquired about the existence of any such notes or log, he is unable to represent to the Court that those documents do not exist.  (Doc. 829 at 144.)   Because these documents, if they exist, could arguably lead to the discovery of admissible evidence, HHSOC is directed to search for any notes or log maintained by Dr. Ahn and to produce any portion of such notes or log that discuss or relate to Ahn's concerns about how cases or patients were being

referred to Heartland or any requests by Heartland officials to increase referrals to Heartland.

In summary, Reed and HHSOC's motion to quash the subpoenas served upon them is DENIED, and Aetna's motion to compel compliance with those subpoenas is GRANTED IN PART and DENIED IN PART as set out in this Memorandum and Order.  The Court believes that it has dealt with all of the requests which were identified during the June 26, 2007 hearing, and finds that insofar as the written motion to compel seeks to compel production of documents related to subpoena requests which were not specifically identified and discussed at the hearing those have been waived.

The Court DENIES Aetna's request that Reed and HHSOC be required to provide a certification of when they received the subpoenas and what efforts they undertook to comply with the subpoenas and DENIES Aetna's request that Reed be made available for deposition regarding the additional documents to be produced.

The Court also DENIES the request by Reed and HHSOC that the Court require Aetna to bear the costs and expenses of any additional searches or production of documents required by this Memorandum and Order, including any overtime wages, copying charges and attorneys' fees. *See e.g.*, Fed. R. Civ. P.

45(c)(2)(B).  While Reed and HHSOC are not parties to this action, they are significantly involved in the activities of Heartland and they have a substantial financial interest in Heartland and, indirectly, in the results of this action. Therefore, it is appropriate under the circumstances presented that Reed and HHSOC bear the cost of any additional document production required by this Order.  *See also*, **In re First Am. Corp.,** 184 F.R.D. 234, 241-42 (S.D.N.Y. 1998); **In re Exxon Valdez,** 142 F.R.D. 380, 383-84 (D.D.C. 1992).

## AWARD OF SANCTIONS

Reed and HHSOC ask the Court to sanction Aetna, including lost earnings and attorneys' fees, pursuant to Rule 45(c)(1).  Rule 45(c)(1) requires the Court to enforce the duty of the attorney issuing a subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person subject to [a] subpoena." Once the Court has determined that an attorney has violated Rule 45(c)(1), the imposition of sanctions is mandatory.

At first blush, it does appear that Aetna failed to take reasonable steps to avoid imposing undue burden or expense on Reed and HHSOC.  The subpoena to Reed was the second one served on him by Defendants and, while Aetna contends that the second subpoenas sought information not previously requested in the

Founders Subpoenas (Doc. 820 at 3)(Sealed), that is not entirely correct.  Both sets

of subpoenas ask for information about patients who Reed contends could have

been treated at Heartland but for the alleged unlawful activity of Aetna.  *Cf.*

Founders' subpoena request 3 *with* Reed subpoena request 38.  Furthermore, many

of the requests in the second subpoenas were extremely broad in scope, e.g., Reed

requests 52-53 ("All documents concerning any Managed Care Defendant" and

"All documents concerning any Hospital Defendant").  These broad requests for

"all documents" concerning a broad topic are the very types of expansive

document requests that Aetna has previously objected to itself.  *See e.g.*, Doc. 450

at 15, 21-22.  And, as the Court noted at the June 26, 2007 hearing, some requests,

including the request for documents pertaining to Reed's wife's compensation as

an interior decorator for Heartland, appear to be totally immaterial to the issues in

this case.  These facts, along with the large number of requests and the expansive

nature of the "Definitions and Instructions" section of the subpoenas, more closely

resemble document requests served on a party to an action rather than a non-party.

That said, however, the Court is not unmindful of the frustrations expressed

by Aetna and other Defendants about the problems they encountered with attempts

to obtain documents through use of the earlier Founders' subpoenas. *See* Doc. 895

at 35-37.  This frustration culminated in a complete reversal by the Founders as to

the most important category of the subpoenas – patient information.  With

discovery coming to a close and with the inability to obtain documents through the

earlier Founders' subpoenas, Aetna's last-minute service of these two subpoenas

does not constitute a violation of  Rule 45(c)(1).  As a result, and considering all

the circumstances, the Court finds that Defendants did not breach their duty to

avoid imposing undue burden and expense on the Reed and HHSOC, and the

request by Reed and HHSOC for sanctions is DENIED.

Aetna has also asked for an award of costs and attorneys fees in connection

with its motion to compel.  Considering the broad and voluminous requests in the

subpoenas, the fact that Aetna acknowledged at the June 26, 2007 hearing that it

was not attempting to compel production of documents related to all of its requests,

and the fact that Aetna's motion was denied in part, the Court finds that an award

of fees to Aetna under the circumstances would not be just and appropriate, and its

request for costs and attorneys fees is DENIED.

Unless otherwise stated in this Memorandum and Order, any additional

production of documents required by this Memorandum and Order shall be made

within twenty (20) days of the filing of this Memorandum and Order.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas on this 20th day of July, 2007.

___ s/ DONALD W. BOSTWICK ___
DONALD W. BOSTWICK
U.S. MAGISTRATE JUDGE
