# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| HEARTLAND SURGICAL ) | |
| SPECIALTY HOSPITAL, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 05-2164-MLB-DWB |
| ) | |
| MIDWEST DIVISION, INC. d/b/a ) | |
| HCA MIDWEST DIVISION, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## **MEMORANDUM AND ORDER**

Before the Court is Defendant Midwest Division, Inc. d/b/a HCA Midwest Division's ("HCA Midwest's") motion to compel Plaintiff Heartland Surgical Specialty Hospital, LLC ("Heartland") to provide sufficient responses to HCA Midwest's second set of interrogatories. (Docs. 771, 772[1].) Heartland has filed a response (Doc. 821) and the motion is ripe for review. The nature of the underlying antitrust litigation is well-known to the Court and all parties and need not be detailed here.

---

[1] HCA Midwest filed a motion for leave to file under seal Exhibit 1 to its memorandum in support of its motion. (Doc. 770.) By Order of this Court on July 3, 2007 (Doc. 860), the Court granted the motion to seal and the exhibit was subsequently filed under seal (Doc. 875 Sealed).

1

FACTUAL BACKGROUND

HCA Midwest served nineteen contention interrogatories on Heartland on March 21, 2007. Heartland responded with objections and responses. Included in these objections are the following: (1) the information sought is "equally available" to HCA Midwest; (2) the interrogatories are overly broad and unduly burdensome; and (3) the interrogatories exceed the 25-interrogatory limit. Heartland also objected on other bases but these other objections are no longer at issue.[2]

HCA Midwest moves to compel responses to seven interrogatories; namely, Interrogatories 2, 9-11, and 13-15. Both parties contend that a March 8, 2007 ruling of this Court (Doc. 540)[3] concerning a motion to compel filed by other Defendants (CIGNA and North Kansas City Hospital) in this multi-defendant

---

[2] Heartland initially pursued an objection that the seven HCA Midwest interrogatories at issue improperly sought Heartland's attorneys' work product. (Doc. 821 at 5-7.) The Court has been informed, however, that the objection based on work product has been resolved. *See* E-mail from Erin Schmidt, HCA Midwest counsel, to Judge Bostwick's chambers (June 22, 2007, 11:11 CST).

Heartland also raised several "to the extent" objections in its response to HCA Midwest's interrogatories. (Doc. 875 Ex. 1 at 2 Sealed.) Heartland does not pursue these objections in its response to HCA Midwest's motion to compel. In the event Heartland's "to the extent" objections remain at issue, HCA Midwest is correct in noting that the objections are improper, and the Court overrules them. *See* **Swackhammer v. Sprint Corp. PCS**, 225 F.R.D. 658, 660-61 (D. Kan. 2004) (ruling that "to the extent" general objections are disapproved and "worthless" and therefore overruling the objection).

[3] *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.,* No. 05-2164-MLB, 2007 WL 756631 (D. Kan. Mar. 8, 2007).

action, is pertinent to the Court's analysis of HCA Midwest's motion.

## DISCUSSION

1.	General Objections.

Contention interrogatories are expressly permitted by Federal Rule of Civil Procedure 33(c) and are designed to "narrow and define issues for trial and to enable the propounding party to determine the proof required to rebut the respondent's position." **Steil v. Humana Kan. City, Inc.**, 197 F.R.D. 445, 447 (D. Kan. 2000). As the party objecting to the interrogatories, Heartland has the burden to support its objections. **Swackhammer v. Sprint Corp., PCS**, 225 F.R.D. 658 (D. Kan. 2004).

Heartland's first and third objections, that the information sought is equally available from HCA Midwest and that HCA Midwest has exceeded the interrogatory limit, will be addressed in this section. The Court will then address Heartland's second objection, overbreadth and undue burden, with respect to each individual interrogatory at issue.

First, as the Court has previously stated, it is not dispositive that documents or information are equally available to both parties. (Doc. 540 at 20.) Heartland cannot merely refer HCA Midwest to previous disclosures or the Third Amended Complaint in response to interrogatories. See **DIRECTV, Inc. v. Puccinelli**, 224

3

F.R.D. 677, 680-81 (D. Kan. 2004) (stating that a plaintiff "may not merely refer Defendants to other pleadings or its disclosures hoping that Defendants will be able to glean the requested information from them"); s*ee also* **Hoffman v. EEOC**, 117 F.R.D. 436, 438 (D. Kan. 1987) (stating that the court would not require one party to fathom what another party may elect to contend as claims from the documents that had been produced, even when the data was equally available to both parties); ***Continental Ill. Nat'l Bank & Trust Co. v. Caton***, 136 F.R.D. 682, 684 (D. Kan. 1991) ("The answers to interrogatories must be responsive, full, complete and unevasive."). As a result, Heartland's first objection, that the requested information is equally available to HCA Midwest, is overruled. Heartland has presented no persuasive argument to the contrary.[4]

Second, the Court finds that Heartland has not adequately supported its objection that HCA Midwest's interrogatories exceed the 25-interrogatory limit. The Court has previously stated its thoughts in connection with a supernumerary objection. (Doc. 540 at 16 n.6); ***Capacchione v. Charlotte-Mecklenburg Schs.***, 182 F.R.D. 486, 492 (W.D.C.C. 1998) (ruling that a party making a supernumerary

---

[4] Heartland has not come forward with any evidence to support the application of FED. R. CIV. P. 26(b)(2) (stating that a court shall limit discovery when the discovery is "obtainable from some other source that is more convenient, less burdensome, or less expensive").

objection to interrogatories must either seek a protective order and not answer the interrogatories or answer up to the numerical limit and object to the remaining without answering (citing 7 MOORE'S FEDERAL PRACTICE § 33.30)); *Swackhammer*, 225 F.R.D. at 664 ("[A]n interrogatory containing subparts directed at eliciting details concerning a 'common theme' should generally be considered a single question."). Heartland does not pursue this objection in its response to HCA Midwest's motion to compel. As a result, this objection is also overruled.

2. <u>Specific Interrogatories</u>.

    A. *Heartland's Claim the Interrogatories are Overly Broad and Unduly Burdensome because they seek "each fact" or "each document."*

Heartland's remaining objection is that the interrogatories are overly broad and unduly burdensome. Heartland objected to the interrogatories because they ask for "each fact" and "each document" responsive to the contention interrogatory. (Doc. 821 at 2.) HCA Midwest argues in its motion to compel that the court's March 8, 2007 order "held that interrogatories that seek facts relating to more narrow contentions may seek 'each' supporting fact." (Doc. 772 at 2.)

Courts in this district have previously summarized the following general rules concerning contention interrogatories which seek "each and every fact" supporting a contention.

> As a general rule in this District, interrogatories seeking 'each and every fact' and which blanket the entire case are objectionable. Interrogatories should not require the answering party to provide a narrative account of its case. The court will generally find them overly broad and unduly burdensome on their face to the extent they ask for 'every fact' which supports identified allegations or defenses. Interrogatories may, however, properly ask for the 'principal or material facts' that support an allegation or defense. Interrogatories which do not encompass every allegation, or a significant number of allegations, of the Complaint, reasonably places upon the answering party the duty to answer them by setting forth the material or principal facts.

***Allianz Ins. Co. v. Surface Specialties, Inc.***, No. 03-2470-CM-DJW, 2005 WL 44534, at *8 (D. Kan. Jan. 7, 2005) (internal quotations and citations omitted). However, an interrogatory which is more narrow in scope and which does not seek every conceivable detail and fact concerning the entire case is not unduly burdensome or overly broad on its face even though it asks for "each and every" specific concerning that narrow topic. ***Cardenas v. Dorel Juvenile Group, Inc.***, 231 F.R.D. 616, 619 (D. Kan. 2005) (finding an interrogatory which asks for each and every element of a product's design that Plaintiffs' contend is defective and to identify how it was defective and the manner in which Plaintiffs' injuries were caused by each alleged defect to be sufficiently narrow so as not to be unduly burdensome or overly broad on its face). When an interrogatory is not overly broad on its face, the objecting party has the burden to show "specifically how,

6

despite the broad and liberal construction afforded to federal discovery rules, each question is overly broad." *Allianz Ins. Co.,* 2005 WL 44534, at *2. An interrogatory creates an undue burden when the burden to the interrogated party outweighs the benefit to the discovering party of having the information. *Hoffman v. United Telecomms., Inc.*, 117 F.R.D. 436, 438 (D. Kan. 1987).

In the Court's March 8, 2007 order, the Court found contention interrogatories asking for the following to be overly broad and narrowed the interrogatories so that they were limited to the principal or material facts:

- each act, communication, document, and person supporting Heartland's claim of conspiracy between a managed care defendant with any or all of the managed care defendants (Doc. 540 at 18-19);

- each act and each communication by a managed care defendant that support Heartland's claim of conspiracy between a managed care defendant and the hospital defendants (Doc. 540 at 22-23);

- each act, document, and person supporting Heartland's contention that a hospital defendant conspired with other hospital defendants to prevent Heartland from receiving in-network contracts (Doc. 540 at 30-31);

- each act, document, and person supporting Heartland's contention that a hospital defendant conspired with and pressured the managed care defendants to prevent Heartland from receiving in-network contracts (Doc. 540 at 30-31); and

- each communication between a hospital defendant and any entity or person concerning a managed care defendant not providing a contract to Heartland (Doc. 540 at 31).

The following interrogatories asking for each fact or each document were found not to be overly broad:

- each document supporting Heartland's contention that a managed care defendant's decision not to provide Heartland with an in-network contract was inconsistent with the managed care defendant's independent economic self-interest (Doc. 540 at 23-25);

- each document, person, and communication supporting Heartland's contention that it was reasonably certain to have obtained in-network contracts from any managed care defendant but for the conduct of a hospital defendant (Doc. 540 at 32-33);

- identification of each in-network contract a hospital defendant prevented Heartland from obtaining (Doc. 540 at 32-33);

- each term, clause, or provision in each of the written agreements between a hospital defendant and the managed care defendants that causes harm to Heartland or prevents Heartland from obtaining in-network contracts (Doc. 540 at 34);

- each person who was treated by a hospital defendant but, although they preferred to be treated at Heartland, was unable to be treated at Heartland because Heartland lacked in-network contracts with managed care defendants (Doc. 540 at 35-37);

8

- each physician who has privileges at Heartland and has had a patient inform them that they were treated by a hospital defendant because the patient's managed care provider did not have a contract with Heartland (Doc. 540 at 35-37); and

- each document showing that a hospital defendant was aware of the existence of Heartland prior to Heartland filing its lawsuit (Doc. 540 at 38-39).

The Court also stated that it did not consider interrogatories to be overly broad when the interrogatories "seek information on only one very narrow issue on one claim in the litigation and are not seeking a wide-range view of the litigation as a whole." (Doc. 540 at 32.) The Court reviews HCA Midwest's interrogatories with the previously stated authorities and its prior rulings in mind.

Interrogatory 2:

Interrogatory 2 asks:

> Do you contend that Midwest Division 'has led the charge against Heartland, organizing local traditional acute care hospitals to pressure insurance carriers to refuse managed care contracts to Heartland,' as alleged in Paragraph 3 of the Third Amended Complaint? If your answer is anything other than an unqualified 'no,' describe each fact and identify each document that you believe supports this contention . . . .

(Doc. 875 Ex. 1 at 5-6 Sealed.)

This interrogatory is overly broad on its face. The interrogatory, at base,

9

asks for each fact and each document supporting Heartland's contention that HCA Midwest led the alleged conspiracy between it and the other hospital defendants. This is substantially similar to the interrogatory the Court found overly broad asking for each fact and each document supporting Heartland's contention that a hospital defendant conspired with other hospital defendants to prevent Heartland from receiving in-network contracts. The only difference is that the HCA Midwest interrogatory asks how HCA Midwest "led" the conspiracy, rather than just its involvement in the alleged conspiracy. This difference, however, does little to narrow the scope of the interrogatory and HCA Midwest's Interrogatory 2 is, therefore, overly broad.

As a result of the Court's finding, Interrogatory 2 is reformed to ask only for the "principal and material" facts supporting Heartland's contention. Heartland alleges it has fully answered Interrogatory 2 with the principal and material facts, yet HCA Midwest claims Heartland's response is "incomplete." The Court has reviewed Heartland's response and finds that it provides the "principal and material" facts supporting the contention asked. HCA Midwest's motion to compel regarding Interrogatory 2 is denied.

<u>Interrogatories 9, 10, and 11</u>:

Interrogatories 9 through 11 are similar in form. Interrogatory 9 asks:

> Do you contend that one or more managed care defendants with which Midwest Division has or has had contracts that contain network configuration clauses (and which contracts have been produced in this case) entered into such contracts based on assurances that other managed care defendants would enter into similar contracts with Midwest Division? If your answer is anything other than an unqualified 'no,' describe each fact and identify each document that you believe supports this contention . . . .

(Doc. 875 Ex. 1 at 18-19 Sealed.)  Interrogatory 10 asks:

> Do you contend that one or more managed care defendants with which Midwest Division has or has had contracts that contain network configuration clauses (and which contracts have been produced in this case) entered into such contracts because of anything Midwest Division communicated to that managed care defendant regarding whether other managed care defendants were also entering into contracts with Midwest Division containing similar network configuration clauses?  If your answer is anything other than an unqualified 'no,' describe each fact and identify each document that you believe supports this contention . . . .

(Doc. 875 Ex. 1 at 20 Sealed.)  Interrogatory 11 asks:

> Do you contend that any of the managed care defendants with which Midwest Division has or has had contracts that contain network configuration clauses (and which contracts have been produced in this case) entered into such contracts on the condition that other managed care defendants also had entered or would enter into contracts with Midwest Division containing similar provisions?  If your answer is anything other than an unqualified 'no,' describe each fact and identify each document that you believe supports this contention . . . as to each managed care defendant.

11

(Doc. 875 Ex. 1 at 22 Sealed.)  These interrogatories seek the contours of the alleged vertical conspiracy between HCA Midwest and the managed care defendants.  As such, they seek a narrower category of information than that requested in Interrogatory 2 and are not overly broad on their face, despite asking for "each fact" and identification of "each document" supporting the contention.  Interrogatory 9 is limited to entering a contract based on "assurances" from managed care defendants to enter contracts with network configuration clauses.  Interrogatory 10 is limited to entering a contract "because of anything HCA Midwest communicated" to managed care defendants regarding network configuration clauses.  Interrogatory 11 is limited to entering contracts "on the condition" that other managed care defendants had or would enter similar contracts with HCA Midwest.  The requests for such identification are not overly broad on their face and Heartland has not supported its overbreadth argument on any other basis that has not previously been overruled by this Court.

      <u>Interrogatory 13</u>:

      Interrogatory 13 asks:

> Do you contend that HSSH was reasonably certain to have obtained in-network contracts from any managed care defendant, but for the conduct of Midwest Division?  If your answer is anything other than an unqualified 'no,' describe each fact and identify each document that you believe supports your contention . . . .

12

(Doc. 875 Ex. 1 at 26 Sealed.)  This interrogatory is not overly broad on its face. The interrogatory asks for each fact and each document supporting Heartland's contention that it was reasonably certain to obtain in-network contracts from any of the managed care defendants but for the conduct of HCA Midwest.  This is nearly identical to the interrogatory listed above asking for each document, person and communication supporting Heartland's contention that it was reasonably certain to have obtained in-network contracts from any managed care defendant but for the conduct of a hospital defendant, which was found to not be overly broad on its face.  Heartland does not support its overbreadth argument on any other basis that has not previously been overruled by this Court.  As a result, HCA Midwest's motion to compel with respect to Interrogatory 13 is granted.

Interrogatory 14:

Interrogatory 14 asks:

> Do you contend that HSSH has suffered 'severe financial damage' as a result of the alleged unlawful conduct by Midwest Division and/or the other defendants, as alleged in Paragraph 50 of the Third Amended Complaint?  If your answer is anything other than an unqualified 'no,' describe each fact and identify each document that you believe supports this contention . . . .

(Doc. 875 Ex. 1 at 27 Sealed.)  This interrogatory is not overly broad on its face. The interrogatory concerns only Heartland's support for its contention that it has

suffered "severe financial damage."  This is similar to the interrogatories concerning damages (regarding patients and physician privileges) the Court previously found were not overly broad on their face.  Heartland does not support its overbreadth argument on any other basis that has not previously been overruled by this Court.  As a result, HCA Midwest's motion to compel with respect to Interrogatory 14 is granted.

>Interrogatory 15:
>
>Finally, Interrogatory 15 asks:
>
>>Do you contend that 'the market has been harmed' as a result of the alleged unlawful conduct by Midwest Division and/or the other defendants, as alleged in Paragraph 51 of the Third Amended Complaint?  If your answer is anything other than an unqualified 'no,' describe each fact and identify each document that you believe supports this contention . . ., including a description of the 'market' that you contend has been harmed.

(Doc. 875 Ex. 1 at 29 Sealed.)  This interrogatory is not overly broad on its face.  The interrogatory seeks information on the narrow issue of harm to the market as a result of the alleged conspiracy.  Market harm is one narrowly definable issue in an antitrust case and this interrogatory does not span the entire litigation in an impermissible manner.  Heartland does not support its overbreadth argument on any other basis that has not previously been overruled by this Court.  As a result, MCA Midwest's motion to compel with respect to Interrogatory 15 is granted.

B.   *HCA Midwest's Claim that Heartland's Answers are Not Responsive or Evasive.*

HCA Midwest also raises a complaint with the manner in which Heartland formulated its answers to Interrogatories 9 through 11. HCA Midwest contends that Heartland, when answering the interrogatories with the principal and material facts, rephrased the language of each request so that its response stated a different contention than the one propounded. (Doc. 772 at 10.) Heartland responds that it believes it did affirmatively answer the question asked. (Doc. 821 at 9.)

A somewhat similar argument was made in ***Williams v. Sprint/United Management Co.***, 235 F.R.D. 494, 498-500 (D. Kan. 2006). In responding to interrogatories from defendant, plaintiff objected to language concerning "company-wide policies, practices, or procedures" and stated that the language included in the interrogatory assumes a burden of proof standard that did not apply. 235 F.R.D. at 498. Subject to the objections, plaintiff answered the interrogatory in some detail, but referred to defendant's "repeated, routine, and/or generalized policies, practices and procedures." *Id.* at 499. With only minor exceptions, the Court concluded that the language in plaintiff's answers did not make the answers non-responsive, noting that "Plaintiffs are not required to phrase their response with the exact language of the interrogatory for their answer to be considered

15

responsive if they have indicated their objection to the language used by the contention interrogatory itself." *Id.*

The Court has reviewed Heartland's responses to Interrogatory 9 and finds that it has not answered the specific question posed by HCA Midwest – did managed care defendants enter into contracts with network configuration clauses "based on assurances that other managed care defendants would enter into similar contracts with Midwest Division." Instead, Heartland answers that other Managed Care Defendants entered into exclusive contracts "because they knew other Managed Care Defendants were entering into similar contracts." If a party enters into a contract because it knew others were doing the same thing, this may not implicate the existence of a conspiracy, but may arguably only involve parallel conduct. *See e.g.,* **Bell Atlantic Corp. v. Twombly,** __ U.S. __, 127 S.Ct. 1955, 1966 (2007) (without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality). It is completely different, however, if a party enters into a contract with the assurance that others will do the same. "Assurance" is defined as "the act of assuring: PLEDGE, GUARANTEE . . . ." WEBSTER'S THIRD INTERNATIONAL DICTIONARY at 133 (1986 ed.). Heartland's answer that contracts were entered into because a Managed Care Defendant knew that others

were entering the same contracts does not answer whether they were entering the contract based upon an assurance, pledge or guarantee that others would do the same. Heartland has not objected to the use of the word "assurance" in the interrogatory, and does not claim that the word is vague or ambiguous. HCA Midwest is entitled to have an answer to the specific question it asked in Interrogatory 9.[5]

A similar problem exists with regard to Heartland's answer to Interrogatory 11. This interrogatory asks whether any managed care defendants entered into contracts with network configurations clauses "on the condition that other managed care defendants also had entered or would enter into contracts" with similar provisions. In its objections, Heartland stated that the phrase "on the condition" was vague and ambiguous. (Doc. 875 at 24 Sealed.) Heartland,

---

[5] In its responsive brief, Heartland argues that it has contended that the Managed Care Defendants were "assured" of the fact that other Managed Care Defendants were entering into similar contracts. (Doc. 821 at 8.) It claims that it has gone farther than required to answer the interrogatory and states that "[t]he answer is intended to demonstrate that not only did the Managed Care Defendants 'receive assurances,' that they actually knew the other Managed Care Defendants were in fact entering into similar contracts with HCA Midwest." *Id.* The question, however, is not whether other Managed Care Defendants "assured" themselves that others were entering into similar contracts, but whether they entered into contracts by receiving the assurance, pledge or guarantee that others would do the same. Moreover, even if the Court were to consider the statements in Heartland's brief to be an adequate response to the interrogatory, those statements were not included in the answer itself and therefore cannot be used by HCA Midwest in connection with summary judgment motions and/or trial.

however, proceeded to answer that managed care defendants entered into exclusive contracts with HCA "because of what HCA communicated to Managed Care Defendants about HCA's other contracts." *Id.*   One of the accepted definitions of "condition" specifically references the phrase "on condition that or upon condition that" and defines this as meaning "with the provision that: IF."  WEBSTER'S THIRD INTERNATIONAL DICTIONARY at 473 (1986 ed.).  This indicates to the Court that such a phrase is commonly accepted and is not vague or ambiguous.  Moreover, Heartland must have understood the meaning of this phrase because in its response to the motion to compel it acknowledged that it did contend there were managed care defendants who entered into contracts with network configuration clauses "on the condition that others managed care defendants also had entered or would enter into contracts with Midwest Division containing similar provisions." (Doc. 821 at 9.)  However, as previously noted with interrogatory 9, *see supra* note 5, this statement was not part of Heartland's formal answer to the interrogatory.  The Court believes that Heartland has not answered the specific question posed by interrogatory 11, and HCA Midwest is entitled to a formal answer to this specific question.

The Court has reviewed Heartland's answer to Interrogatory 10, and believes that its answer adequately responds to the question asked.  Nothing further is

required as to Interrogatory 10.

## CONCLUSION

HCA Midwest's motion to compel is GRANTED in part and DENIED in part for the reasons stated more fully herein. HCA Midwest's motion to compel regarding Interrogatory 2 is DENIED and no further response from Heartland is necessary. HCA Midwest's motion to compel answers to Interrogatories 9 through 11 and 13 through 15 concerning each fact or each document is GRANTED, as stated more fully herein. To the extent Heartland's prior answers to these interrogatories do not provide this information, the answers shall be supplemented within twenty (20) days of the date of this order. Also, as to Interrogatories 9 and 11, Heartland is required to amend its prior answers to respond to the specific questions posed by these interrogatories, as stated more fully herein. This amendment is to be completed within twenty (20) days of the date of this order.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas on this 25th day of July, 2007.

    s/ DONALD W. BOSTWICK
DONALD W. BOSTWICK
U.S. MAGISTRATE JUDGE