## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| HEARTLAND SURGICAL )<br>SPECIALTY HOSPITAL, LLC, )<br> )<br>Plaintiff, )<br> )<br>v. )<br> )<br>MIDWEST DIVISION, INC. d/b/a )<br>HCA MIDWEST DIVISION, *et al.*, )<br> )<br>Defendants. )<br>_____ ) | Case No. 05-2164-MLB-DWB |

## MEMORANDUM AND ORDER

Before the Court are the following, fully briefed discovery motions filed by defendants in this litigation:

> 1. Defendants Aetna Health Inc. and Aetna Life Insurance Company's (collectively "Aetna's") motion to compel Plaintiff Heartland Surgical Specialty Hospital, LLC ("Heartland") to produce documents and respond to interrogatories (Docs. 802, 803, 881 (Sealed), 882 (Sealed) and 883 (Sealed)), and Heartland's response thereto (Doc. 871);

> 2. Defendant Coventry Health Care of Kansas, Inc.'s ("Coventry's") motion to compel Heartland to produce a deponent and documents (Docs. 809, 862 (Sealed)), and Heartland's response thereto (Doc. 869);

> 3. Defendant Coventry's motion to compel Heartland to produce documents (Docs. 812, 861 (Sealed)), and Heartland's response thereto (Doc. 870);

4.  Defendant Saint Luke's Health System's (Saint Luke's) motion to shift costs (Doc. 876 (Sealed)), and Heartland's response thereto (Doc. 868);

5. Defendants Carondelet Health, St. Joseph Medical Center, and St. Mary's Medical Center's (collectively Carondelet's) motion to compel Heartland to produce documents and testimony (Docs. 816, 887 (Sealed)), and Heartland's response thereto (Doc. 874); and

6. Saint Luke's motion to compel Heartland to produce documents and respond to interrogatories (Doc. 873 (Sealed)), and Heartland's response thereto (Docs. 867, 888 (Sealed)).

Also before the Court is Heartland's fully briefed omnibus discovery motion against the hospital defendants in this litigation:

1.  Heartland's motion to compel outstanding discovery (Doc. 864 (Sealed), as amended by e-mail dated July 9, 2007), and the hospital defendants' response thereto (Doc. 886 (Sealed)).

The briefing now under consideration is the result of a flurry of discovery motions filed after the deadline for completion of discovery.  The nature of the underlying antitrust litigation is well-known to the Court and all parties and need not be detailed here.  The Court will first address the motions it denies as procedurally defaulted and then will address the remaining motions in turn.

## DISCUSSION

**I.    Procedurally Defaulted Motions.**

Local Rule 37.1 governs motions relating to discovery.  It requires that any motion to compel discovery "shall be filed within 30 days of the default or service

of the response, answer or objection which is the subject of the motion, unless the time for filing of such motion is extended for good cause shown.  Otherwise the objection to the default, response, answer, or objection shall be waived."  D. Kan. Rule 37.1(b).  Early in the case, the Court suspended the application of Local Rule 37.1.  (Doc. 242 ¶ III(e); Doc. 245.)  However, at the September 13, 2006 status conference, and in the resulting Status Conference Order No. 1, the Court ordered that the stay would only apply until January 15, 2007, and any discovery dispute which occurs after December 15, 2006 would be subject to the thirty-day provision of Local Rule 37.1(b).  (Doc. 325 at 91-92; Doc. 319 at 4.)  This was reiterated in later status conferences and related status conference orders, including ones on January 24, 2007  (Doc. 437 at 27-28; 438 at 5-6) and March 27, 2007 (Doc. 581 at 5; Doc. 667 at 18-20).

At the January 24, 2007 conference, counsel advised the Court that they were treating the 30 day limit to file a motion to compel as beginning to run only after the parties had reached impasse in their meet and confer sessions.  (Doc. 437 at 28-29.)  The Court indicated that this was bothersome because it gave the parties an open-ended time period within which to bring the motions, and "the last thing in the world we can have here is something simmering along that doesn't get resolved and then we are pushing up to the May 18 [discovery] deadline . . . ." (*Id.* at 29-

30.)  The topic was again discussed at the March 27, 2007 status conference.  At that time the Court expressed its concern about the parties' interpretation of how the 30 day time limit was to be calculated, noting that this had caused some delay. (Doc. 667 at 18.)  The Court acknowledged that it had not strictly enforced the 30 day time period under the rule, but at this late stage of the case the parties needed to be alert to that time period.  (*Id.* at 19-20.)  Finally, as a result of the May 30, 2007 conference (which took place after the discovery cut-off of May 18, 2007), the Court ordered that "no discovery motion shall be filed after June 18, 2007 [30 days after the cut-off of discovery] unless specifically addressed otherwise by Order of the Court."  (Doc. 783 at 6.)

The four motions discussed below which the Court finds to be procedurally defaulted, were all filed on June 18, 2007.  It thus appears that counsel may have construed the Court's order at the May 30 conference as having extended the time for filing all motions to compel.  That is not the case.  The Court's recitation of the fact that no motions to compel shall be filed after June 18 was merely a recognition that any default or discovery dispute would, of necessity, have occurred <u>not later than</u> the date of the discovery cutoff on May 18, 2007; therefore, the 30-day time period under Rule 37.1(b) to file motions concerning discovery disputes which

4

became ripe on the last day of discovery would expire <u>no later than</u> June 18, 2007.[1]

In addition to the time requirements in Local Rule 37.1, there are requirements to meet and confer concerning resolution of discovery motions. Local Rule 37.2 states that a motion to resolve a discovery dispute will not be entertained "unless counsel for the moving party has conferred or has made reasonable efforts to confer with opposing counsel concerning the matter in dispute prior to the filing of the motion."  D. Kan. Rule 37.2; *see also* FED. R. CIV. P. 37(a) (requiring a movant to make a good faith effort to resolve a discovery dispute before filing a motion to compel discovery responses).  The Local Rule goes on to specify that a "'reasonable effort to confer' means more than mailing or faxing a letter to the opposing party.  It requires that the parties in good faith converse, confer, compare views, consult and deliberate, or in good faith attempt to do so." *Id.*  Having become concerned about the efficacy of the meet-and-confer process in this case, on May 30, 2007, Judge Belot ordered that meet-and- confer conferences held after that date shall be held in person, rather than by telephone or electronic means, if the lawyers involved are located in the Kansas City area.  (Doc. 783 at 6.)

---

[1]  Clearly Aetna did not view the Court's statements at the May 30, 2007 status conference and the resulting Status Conference Order No. 6 (Doc. 783), as establishing a blanket extension of time to file all motions to compel.  Otherwise, Aetna would not have pursued a stipulation with Plaintiff on June 13, 2007 which purported to extend the time for Aetna to file its motion to compel to June 18, 2007.

The appropriate action for a court in response to a motion not in compliance with the above rules is to deny the motion.  *See, e.g.*, ***Lohmann & Rauscher, Inc. v. YKK (U.S.A.), Inc.***, No. 05-2369-JWL-GLR, 2007 WL 677726, at *2 (D. Kan. Mar. 2, 2007) (overruling motion to compel for lack of compliance with meet and confer obligations where counsel filing motion had sent one email and received one emailed response before filing motion); ***Bergersen v. Shelter Mut. Ins. Co.***, No. 05-1044-JTM-DWB, 2006 WL 334675, at *1-2 (D. Kan. Feb. 14, 2006) (denying a motion to compel that was filed fifty days after the submission of responses to discovery and therefore was not filed within thirty-days of the discovery dispute); ***Aid For Women v. Foulston***, No. 03-1353-JTM-DWB, 2005 WL 1657046, at *3 (D. Kan. July 14, 2005) (denying a motion to compel because it was untimely and no good cause had been shown for extending the thirty-day deadline).  With these standards in mind, the Court will review the motions individually.

a.    Coventry's motion to compel Heartland to produce documents (Doc. 812).

Coventry's motion seeks the production of documents discussed at a deposition of Heartland's director of human resources, which Coventry believes are responsive to a request for production of documents that this Court previously

ordered be produced.  (Doc. 812.)  The Court, in an Order dated April 27, 2007,

found that "certain information in . . . former employees' personnel files would be

relevant evidence" and ordered Heartland to produce the personnel files requested

by Coventry pursuant to its requests for production.  (Doc. 669 at 17.)  Request for

production 7, the request at issue here, asked for Heartland's "personnel file for

Sandy Blattel, including, but not limited to, any severance, separation or settlement

agreement with Ms. Blattel."  (Doc. 590 at 6.)  Heartland produced its personnel

file for Blattel on May 2, 2007.  (Doc. 870 at 2.)

    At the deposition of Heartland's director of human resources on May 16,

2007, the director testified that he had performed an investigation of Blattel as the

result of complaints about Blattel.  (Doc. 861 Ex. 2 (Sealed).)  These investigation

notes were not kept in Blattel's personnel file, because no formal action was ever

taken, and Heartland did not produce them because it felt they were not responsive

to Coventry's request for production.  (Doc. 870 at 2.)  Coventry, however, knew

of this investigation as early as April 27, 2007, when it deposed Kim Krause,

Heartland's former chief executive officer, and discussed with him the

investigation.  (Doc. 861 Ex. 3 (Sealed).)  Therefore, the latest date this issue

became ripe was May 2, 2007, when Heartland produced Blattel's personnel file

and investigation notes were not present.  As a result, thirty days for filing a

7

motion under Local Rule 37.1 ran as of June 1, 2007. Coventry did not file its

motion until June 18, 2007 and offers no reason for its delay.[2]  Accordingly,

Coventry's motion is denied as untimely, pursuant to Local Rule 37.1(b).

> b.    Saint Luke's motion to shift costs (Doc. 876 (Sealed)).

Saint Luke's motion asks the Court for an order shifting the expenses to

Heartland that Saint Luke's incurred in its review of electronic documents

produced by Heartland on October 23, 2006. (Doc. 876 (Sealed).) Therefore, the

thirty days for filing a discovery motion with regard to Heartland's electronic

document production ran on November 22, 2006. Despite this, Saint Luke's

motion was not filed until June 18, 2007, nearly seven months after the issue

became ripe, and Saint Luke's offers no reason for this extraordinary delay.[3]

Therefore, the time for filing the discovery motion on this issue, as imposed by

Local Rule 37.1(b), has been exceeded and Saint Luke's motion is denied.

As an alternate basis for denying Saint Luke's motion, the Court finds that

Saint Luke's did not comply with its duty to meet and confer in good faith toward

---

[2]  A court may extend the deadline established by Local Rule 37.1(b) upon a showing of good cause, when the existence of information or documents is not known until after the deadline, or when the moving party had relied on the opposing party's false assurances of compliance. *See Aid For Women*, 2005 WL 1657046, at *3 (collecting cases). None of these circumstances has been raised here.

[3]  *See* supra note 2.

resolution of this discovery dispute before filing its motion.  Prior to filing its

motion, Saint Luke's sent one e-mail to Heartland asking if Heartland would

voluntarily reimburse Saint Luke's for its estimated costs.  (Doc. 868 Ex. 2.)  Saint

Luke's did not wait for a response from Heartland and filed its motion the same

day.  (Doc. 868 at 3.)  Saint Luke's implied in its e-mail that it was sending the e-

mail only as a formality and stated: "I'm pretty sure I know the answer to this

question, but I am required to ask it anyway."  (Doc. 868 Ex. 2.)  This one e-mail

does not rise to the "reasonable effort to confer" contemplated by Local Rule 37.2

or the "good faith" required by Rule 37.  Saint Luke's motion is alternately denied

on the ground that it did not comply with its duty to meet and confer in good faith.

    c.    <u>Carondelet's motion to compel Heartland to produce documents and
testimony (Doc. 816).</u>

Carondelet's motion seeks an order compelling testimony and the production

of documents withheld by Heartland on the basis of attorney-client or work-

product privilege.  (Doc. 816.)  The claims of privilege to which this motion relates

were made at the following times:

    1.    The December 13-15, and 19, 2006 Rule 30(b)(6) deposition of
Scott Vincent;

    2.    The May 1, 2007 deposition of Ricardo Fontg;

    3.    The May 7, 2007 deposition of Scott Vincent; and

9

4.    Plaintiff's March 15, 2007 modified privilege log.

(Doc. 874 at 3-4.)  Therefore, the latest possible date this issue became ripe was

May 7, 2007, and the thirty days for filing a discovery motion with regard to

Heartland's attorney-client and work-product privilege objections ran on June 6,

2007.  Clearly, the thirty-day time limit ran much earlier for the December 2006

and March 2007 assertions of privilege.  Despite this, Carondelet's motion was not

filed until June 18, 2007, and Carondelet offers no reason for the delay.[4] Therefore,

the time for filing the discovery motion on this issue imposed by Local Rule

37.1(b) has been exceeded and Carondelet's motion is denied.

d.    Aetna's motion to compel Heartland to produce documents and
respond to interrogatories (Doc. 802).

Aetna's motion seeks production of documents and responses to

interrogatories.  (Doc. 802.)  Aetna served its written discovery to Heartland on

April 9, 2007 and Heartland responded on May 14, 2007.  (Doc. 803 at 1.)

Therefore, the thirty day deadline for filing a motion with respect to this discovery

ran on June 13, 2007.  On June 13, Aetna and Heartland filed a Stipulation of

Extension of Time to File Motion to Compel concerning Aetna's outstanding

discovery.  (Doc. 793.)  Aetna then filed its motion to compel on June 18, 2007.

_____

[4]    *See* supra note 2.

10

Fed. R. Civ. P. 29(2) allows stipulations which

> modify other procedures governing or limitations placed
> upon discovery, except that stipulations extending the time
> provided in Rules 33, 34, and 36 for responses to discovery
> may, if they would interfere with any time set for
> completion of discovery, for hearing of a motion, or for
> trial, be made only with the approval of the court.

The District of Kansas does not have a similar rule.  However, D. Kan. Rule 6.1

does reference Fed. R. Civ. P. 29 in two subsections.  Local Rule 6.1(a), which

governs motions for extension of time to perform an act, states that "[s]ubject to

the provisions of Fed. R. Civ. P. 29, stipulations for extensions of time are subject

to the approval of the court."  Likewise, Local Rule 6.1(c), which governs joint or

unopposed motions, states that "[s]ubject to the provisions of Fed. R. Civ. P. 29,

stipulations for extensions of time are subject to the approval of the court."  That

subsection also identifies three events that are not subject to continuances upon

stipulation of counsel: pretrial conferences, hearings on motions, and trials.  *Id.*

Here, the event which was the subject of the stipulation – additional time to

file a motion to compel – is not specifically precluded by either Fed. R. Civ. P. 29

or by the Local Rules.  It is clear, however, that had the parties sought to stipulate

to an extension of time to respond to either interrogatories or document requests

and had the extension extended beyond the time set for the completion of

discovery, the stipulation would have required court approval.  It seems logical to

also conclude that where the time for discovery has already expired, the parties should not be allowed to further delay resolution of discovery disputes without permission of the court.  In this case, the Court previously had expressed its concern about last-minute discovery motions and their possible impact on the discovery schedule.  Likewise, the Court had consistently indicated that there would be no extensions of the discovery cutoff because that could impact the resolution of dispositive motions and affect the trial date set by the Court.  While the Court does wish to inhibit cooperation among counsel in conducting discovery, it cannot allow agreements that interfere with important deadlines set in the scheduling order.  Accordingly, the Court concludes that the parties' agreement to extend the time to file a motion to compel – particularly motions filed after the cutoff of discovery – requires Court approval and absent such approval it does not extend the 30-day requirement in the Local Rules and in the Scheduling Order. Because the time for filing the discovery motion on this issue imposed by Local Rule 37.1(b) has been exceeded without court approval, Aetna's motion is denied.[5]

---

[5] Other parties who sought an extension of the time to file motions to compel obtained court approval of their requested extension.  *See, e.g.,* Docs. 782 (Heartland); 797 (Shawnee Mission); 817 (Saint Luke's).  While Aetna may feel that it is unfair that others were granted extensions while the Court has refused to recognize its Stipulation, the fact that Aetna chose to proceed unilaterally rather than with Court approval prevented the Court from assessing the reasons for the requested extension and whether those reasons justified an extension.  The Stipulation itself is wholly devoid of *any* statement as to why the extension was being sought.  *See* Doc. 793.

**II.    Additional Motions.**

      a.    <u>Coventry's motion to compel Heartland to produce a deponent and documents (Doc. 809).</u>

Coventry's motion (Doc. 809) seeks a deponent and documents responsive to category #1 of its June 12, 2007 notice of deposition duces tecum (Doc. 790). Category #1 seeks testimony regarding: "Any analysis, modeling, and/or projections of the valuation of the provider contract(s) which Plaintiff has entered into with any defendant (or former defendant) in this litigation pursuant to a settlement agreement between the parties."  (Doc. 790 at 2.)  Category #1 also seeks production of: "All documents which evidence any analysis, modeling, and/or projections of the valuation of the provider contract(s) which Plaintiff has entered into with any defendant (or former defendant) in this litigation pursuant to a settlement agreement between the parties."  (Doc. 790 at 2-3.)

The Court previously ruled on the parties' dispute regarding production of the settlement agreements made in this litigation.  The Court ruled that "the terms and copies of any existing settlement agreements" were relevant and discoverable but that "settlement-related communications with the settling co-defendants" were

not.[6] (Doc. 669 at 10-14.)

Coventry argues that the valuation of the settlements is relevant to the issue of damages because the value of settlement will be analyzed with respect to potential set-offs of joint and several liability of Heartland's conspiracy claims. (Doc. 862 at 6 (Sealed).)  Heartland objects that Coventry's notice of deposition duces tecum: (1) was filed out of time (after the close of discovery), despite Coventry having possession of the managed care contracts resulting from the settlement agreements since February 2007 and April 2007; (2) seeks additional Rule 30(b)(6) testimony that is prohibited by prior Order of this Court; and (3) is moot because Heartland has either already produced any documents that may be responsive or such items do not exist.  (Doc. 869.)  Coventry responds that: (1) its discovery is not time-barred by the close of fact discovery because Heartland did not produce the settlement agreements indicating that the managed care contracts were the sole consideration for settlement until after the close of discovery; (2) the Court's prior order limiting Rule 30(b)(6) deposition topics to those previously identified does not bar the noticed deposition because the previously identified topics adequately cover the category of information sought by the notice of

---

[6]  Heartland filed objections to this Court's ruling, which were overruled by the district court.  (*See* Doc. 760.)

deposition duces tecum; and (3) Heartland's contention that it has no further documents to produce with respect to this issue is unbelievable. (Doc. 862 (Sealed).)

The Court first notes that in Coventry's previous motion to compel seeking production of any communications between Plaintiff and any settling defendants about the settlement agreements, Coventry argued that the communications "may be important to understand and assess the terms of the settlements" and "may shed light on the value of those contracts [managed care contracts] to the parties." (Doc. 590 at 8.) Furthermore, in the earlier filing, Coventry also stated that the settlement agreements "would have to be analyzed to determine [their] effect on the potential liability of the other defendants or setoff that may be available" due to the fact that Plaintiff's claims sought to impose joint and several liability on defendants. *Id.* Now, Coventry makes another document request – after the discovery cutoff has passed – seeking very similar information. Coventry urges, however, that it could not have made this new request earlier because it had not yet seen the settlement agreements. The Court does not agree. Clearly Coventry knew before the discovery cutoff passed that it wanted information about the valuation of the settlements, but it did not make its current request until after the discovery cutoff had passed. It did not need to wait to see the settlement agreements before

15

making its request, particularly since it had already received copies of the managed care contracts which were the result of the settlements.  The present request simply comes too late.

Furthermore, the Court cannot compel Heartland to produce documents that its counsel has stated to the Court do not exist.  The Court has ruled on similar issues before.  *See, e.g.*, Doc. 568 at 59-60 (ruling that no more can be expected of a party that "state[s] through officers of the Court" that they have fully responded to propounded discovery (other than identified objections otherwise briefed)).  Heartland has stated to this Court that no responsive documents exist to Coventry's inquiry and, therefore, no responsive testimony could be given.  (Doc. 869 at 3-4.)  The Court credits these statements by Heartland's counsel.[7]  Coventry attempts to counter Heartland's assertion by citing deposition testimony of Heartland's chief financial officer that he "looked at" or "compared" out-of-network rates Heartland was receiving with proposed in-network rates that Heartland would receive under a settlement agreement.  (Doc. 862 at 11 (Sealed).)  However, this testimony shows

_____

[7] Obviously, if, in the future, evidence is presented which brings into question the accuracy of counsel's representations about the existence or non-existence of specific documents or the accuracy of interrogatory answers, the trial judge can consider appropriate sanctions, if justified.  From a review of the court file, it appears that the parties are already claiming that some documents being used as exhibits in connection with summary judgment motions  have been improperly withheld from discovery and that certain witnesses were not identified during discovery.  *See e.g.*, Doc's 897, 914.

that the chief financial officer could offer no more than what Coventry has already received: the actual managed care contracts entered into by Heartland giving the in-network rates.  As a result, Coventry has offered no persuasive evidence to controvert Heartland's assertion that responsive documents do not exist and Coventry's motion seeking the documents and testimony stemming from them is denied.

        b.      Saint Luke's motion to compel Heartland to produce documents and respond to interrogatories  (Doc. 873 (Sealed)).

Saint Luke's motion seeks production of documents and responses to interrogatories propounded April 18, 2007.[8]  (Doc. 873 (Sealed).)  Specifically, Saint Luke's motion concerns its request for production of documents 11 and responses to interrogatories 1-6, 8-13, 16, 18-19, and 21.[9]  Saint Luke's contends

_____

[8]  The timing of Saint Luke's motion to compel differs from the ones found by the Court to have been procedurally defaulted.  First, Saint Luke's did not serve their discovery until April 18, 2007, and Heartland served its responses on May 18, 2007.  Therefore, this is precisely the factual situation contemplated by the Court's statement at the May 30, 2007 status conference that all discovery motions would have to be filed no later than June 18, 2007.  (While the 30-day period would expire on June 17, that is a Sunday making Saint Luke's motion due on Monday, June 18.)  However, before the 30-day period expired, Saint Luke's counsel contacted the court, requested a short extension of time to file the motion to compel and explained why it need the extension.  After hearing the reasons, the Court approved a four-day extension for Saint Luke's.  (Doc. 817.)

[9]  Currently pending before the Court is a motion for a protective order with respect to an interrogatory propounded by Saint Luke's in conjunction with certain requests for admission.  (*See* Docs. 734, 735, 807 (Sealed).)  The Court will rule on that interrogatory in conjunction with its ruling on the requests for admission.

that Heartland is relying on general objections of overbreadth, undue burden, and that evidence is equally available to Saint Luke's as it is to Heartland.  (Doc. 873 at 3-6 (Sealed).)  Saint Luke's then contends that Heartland's responses to its contention interrogatories are inadequate.  (Doc. 873 at 6 (Sealed).)  Saint Luke's goes on to argue that the evidence Heartland alleges in its responses to the contention interrogatories is not sufficient to support Heartland's claims.  (Doc. 873 at 7-10 (Sealed).)  Saint Luke's then challenges the method by which Heartland intends to prove its damages in moving to compel additional responses to interrogatories concerning damages.  (Doc. 873 at 10-14 (Sealed).)  Finally, Saint Luke's alleges Heartland has backed out of agreements to supplement its responses to the interrogatories and request for production 11.

Heartland responds that it is not standing on its general objections and that it has nothing further to provide in response to Saint Luke's discovery requests.  (Doc. 867.)  Heartland states that it has supplemented its responses to interrogatories 8 and 21 and provided a complete response to request for production 11.  (Doc. 867 at 7.)  Heartland alleges throughout its response to Saint Luke's motion that it has provided Saint Luke's with all the information it has with respect to the propounded discovery.

The court turns first to Saint Luke's contention interrogatories – no's 1-5, 8,

18

18 and 19.  Saint Luke's complains that none of the answers to these

interrogatories identify the name of any Saint Luke's employee or representative

who allegedly entered into the alleged agreements to boycott Heartland.  (Doc. 873

at 7, 9) (Sealed).  However, as to interrogatories 1, 2 and 3, this is not the

information Saint Luke's requested.  Instead, it asked for persons who have

knowledge of the facts concerning such agreements.  (Doc. 873, Ex. A at 3, 6, 8)

(Sealed).  This is a different question.  As to interrogatories 18(b) and 19(b),

however, Saint Luke's has asked specifically for the names of each person who

participated in the principal and material communications about the conspiracy.

(Doc. 873, Ex. A at 3, 8) (Sealed).  Likewise, in interrogatories 4(b) and 5(b), Saint

Luke's wants the identity of each principal and material person who participated in

the allegedly illegal acts.   (Doc. 873, Ex. A at 11-12) (Sealed).

Heartland responds that it is impossible in some cases to identify specific

individuals who may have been involved in communications or actions where the

testimony only refers generally to the acts of a corporate entity.  (Doc. 867 at 3-4.)

However, Heartland states that it went back and added specific names of

individuals, where known, in its supplemental answers to interrogatories 1-5 and

18-19.  *Id*.   On July 5, 2007, Heartland supplemented or amended its answers to

Saint Luke's interrogatories and specifically identified three Saint Luke's

employees or representatives by name – Bob Bonney, Rich Hastings and Darryl Bieberly – as being the primary individuals acting on behalf of Saint Luke's.  (Doc. 888 at 4) (Sealed).  Heartland also "incorporated" in its answers the statement of facts it set out in opposition to Aetna's motion for summary judgment as well as the facts and documents referenced in the expert report of Dr. George Hay.  *Id.* at 5.

Heartland's objections as to burdensomeness, equal availability of information to Saint Luke's as to Heartland, and duplication of prior discovery, cannot insulate Heartland from fully answering these contention interrogatories. Nor can Heartland simply "incorporate" other documents such as its response to Aetna's summary judgment motion and its expert reports as a means of answering the contention interrogatories.  Therefore, to the extent that Heartland can identify any persons by name who participated in the referenced principal and material communications or in the allegedly illegal conduct <u>on behalf of Saint Luke's</u> as requested in interrogatories 4(b), 5(b), 18(b) and 19(b), it must identify those persons in amended or supplemental answers without merely referencing other documents.  Saint Luke's is entitled to know these specifics so it can ascertain precisely what it must defend against at trial.  *See **Cont. Ill. Nat'l Bank & Tr. v. Caton***, 136 F.R.D. 682, 689-90 (D. Kan. 1991).   If Heartland cannot identify any

additional principal and material persons who acted <u>on behalf of Saint Luke's</u> by name other than the three individuals identified in its July 5, 2007 supplemental answers, it must so state.[10]

Except as to the four specific contention interrogatories discussed above, this Court accepts Heartland's counsel's statements that it has fully complied by producing all responsive documents and answered the interrogatories with its "principal and material facts." [11] After full consideration of Saint Luke's motion, Heartland's response, and the discovery requests and responses at issue, the Court finds that Heartland's other responses sufficiently answer the discovery propounded.   It appears to the Court that Saint Luke's is arguing the merits of Heartland's evidence (particularly as to the damages issue) in its discovery motion, which is an exercise that should be reserved for the district court's consideration of the merits of Heartland's claims.  Saint Luke's motion to compel is denied except for the requirement that Heartland supplement contention interrogatories 4(b), 5(b), 18(b) and 19(b) as outlined above.

    <u>c.</u>    <u>Heartland's motion to compel outstanding discovery<br>(Doc. 864 (Sealed)).</u>

Heartland's "omnibus" motion seeks discovery from each of the hospital

---

[10]  *See* supra note 7.

[11]  *See* supra note 7.

defendants remaining in this litigation.  (Doc. 864 (Sealed).)  Specifically,

Heartland alleges the following applicable time line for its discovery:

> 1.  Carondelet: Heartland served discovery to Carondelet on March 15, 2007 and March 27, 2007, and Carondelet responded on April 16, 2007 and May 3, 2007, respectively;

> 2.  HCA Midwest: Heartland served discovery to HCA Midwest on March 15, 2007 and March 27, 2007, and HCA Midwest responded on April 19, 2007 and April 30, 2007, respectively;

> 3.  Saint Luke's: Heartland served discovery to Saint Luke's on March 15, 2007 and March 27, 2007, and Saint Luke's responded on April 16, 2007 and April 30, 2007, respectively; and

> 4.  Shawnee Mission Medical Center: Heartland served discovery to Shawnee Mission Medical Center on March 15, 2007 and March 27, 2007, and Shawnee Mission Medical Center responded on April 16, 2007 and April 30, 2007, respectively.

(Doc. 864 at 2-5 (Sealed).)[12]  Heartland alleges the following discovery disputes

require court resolution:

> 1.  Records received from the Hospital Industry Data Institute ("HIDI") (involving Carondelet, HCA Midwest, Shawnee Mission, and Saint Luke's);

> 2.  Records relating to vendor volume agreements that Shawnee Mission and Carondelet are objecting to based on relevance grounds;

---

[12]  Heartland sought an extension to file motions related to this discovery (Doc. 738) which was granted by the Court (Doc. 782) until June 18, 2007.  Heartland filed its omnibus motion within the extension.

22

   3.   Records of Shawnee Mission's files on metro healthcare issues that Shawnee Mission is objecting to based on relevance grounds;

   4.   Documents Saint Luke's claims are privileged;

   5.   Documents that must be in Shawnee Mission's possession but which it claims it does not have;[13] and

   6.   Supplementation of previous document requests by Shawnee Mission.

(Doc. 864 at 1-2 (Sealed) (as amended by E-mail from Virginia Crimmins, Counsel for Heartland, to Judge Bostwick, Magistrate (July 9, 2007 03:09 CST)).)  For ease of analysis, the Court considers each of these six disputes in turn.

---

  [13] In its introduction, Heartland contends that this topic also relates to Saint Luke's production of documents.  (*See* Doc. 864 at 2 (Sealed).)  In its argument, however, Heartland only discusses Shawnee Mission.  (*Id.* at 15-16 (Sealed).)  Additionally, in one of the applicable subsections, Heartland asserts Saint Luke's has produced documents responsive to the request at issue.  (*Id.* at 16 ("St. Luke's and HCA Midwest, in addition to Plaintiff, have agreed to provide this information, and so should SMMC.") (Sealed).)  The Court, therefore, assumes that this issue only involves Shawnee Mission and not Saint Luke's.

### 1.  HIDI.

Heartland moves the court to order the Hospital Defendants to produce "all in-patient and out-patient origin/discharge data . . . for any in-patient or out-patient facility in the States of Missouri or Kansas, including any such data compilation obtained from the Hospital Industry Data Institute."[14]  (Doc. 886 at 2 (Sealed).) The Hospital Defendants object on multiple grounds, including: confidentiality concerns, contractual prohibitions to production, relevancy, overbreadth, and that the HIDI data should be directly obtained from HIDI.  (Doc. 886 at 2-7 (Sealed).)

Discovery requests must be relevant on their face.  *Williams v. Bd. of County Comm'rs*, 192 F.R.D. 698, 705 (D. Kan. 2000).  Once this low burden of relevance is established, however, the legal burden regarding the defense of a motion to compel resides with the party opposing the discovery request.  *See Swackhammer v. Sprint Corp. PCS*, 225 F.R.D. 658, 661, 662, 666 (D. Kan. 2004) (stating that the party resisting a discovery request based on overbreadth, vagueness, ambiguity, or undue burden/expense objections bears the burden to support the objections); *Cont'l Ill. Nat'l Bank & Trust Co. of Chicago v. Caton*,

---

[14]  In addition to HIDI data, the discovery request seeks data compilations from the American Hospital Association, the Federation of American Hospitals, the Kansas Hospital Association, and the Missouri Hospital Association.  (Doc. 886 at 2 (Sealed).) Heartland's motion discusses only the HIDI data, and Heartland has apparently abandoned its request for the data compilations from the other organizations.

136 F.R.D. 682, 685 (D. Kan. 1991) (stating that a party resisting a discovery request based on relevancy grounds bears the burden of explaining how "each discovery request is irrelevant, not reasonably calculated to the discovery of admissible evidence, or burdensome").

The Court determines the relevancy of a particular request for production with the Federal Rules of Civil Procedure in mind. Rule 26(b)(1) permits discovery of "any matter, not privileged, that is relevant to the claim or defense of any party" and the Court can, for good cause shown, order discovery of any matter relevant to the subject matter of the action. *See also **Gomez v. Martin Marietta Corp.**,* 50 F.3d 1511, 1520 (10th Cir. 1995) (noting the broad scope of discovery under the federal rules, that "discovery is not limited to issues raised by the pleadings," and that the court has "wide discretion to balance the needs and rights" of the parties).

Heartland claims its request for HIDI data is relevant to "quality of care and other relevant information for the Kansas City hospital market" and because "[t]he Defendants have produced records in this case that were created by relying upon the HIDI data." (Doc. 864 at 6 (Sealed).) Heartland informs the Court that the HIDI data: compiles and summarizes data from inpatient and outpatient discharge records from the hospitals in the Kansas City area; contains comprehensive

information concerning hospitalization patterns and patient characteristics; is a

valuable tool for hospital planning and evaluation; and includes data regarding the

500 most frequent principal procedures and all diagnosis-related groups.  (Doc.

864 at 6-7 (Sealed).)

The Hospital Defendants argue that the HIDI data requested is not relevant

because the HIDI data relates to all Missouri hospitals, not just those in the Kansas

City metropolitan area.  (Doc. 886 at 5 (Sealed).)  The Hospital Defendants do not

argue, however, that the Kansas City area HIDI data is not relevant, just that the

majority of the HIDI data is related to Missouri hospitals outside the Kansas City

area.  (Doc. 886 at 5 (Sealed).)  The Hospital Defendants argue that because of the

limited relevance of the HIDI data, the burden of production outweighs the

discovery benefit.

The Hospital Defendants inform the Court that, as a condition of

membership in HIDI, member hospitals contractually agree to a Data Use

Agreement that permits the use of HIDI data "only for the purposes of research,

public health or health care operations."  (Doc. 866 Ex. A (Sealed).)  The Hospital

Defendants contend that their contract with HIDI prohibits the propounded

discovery.  Because of this, they argue, and the overbreadth of the request based on

the HIDI data's inclusion of all Missouri hospitals, Heartland's motion to compel

26

this discovery should be denied.

The Court agrees that the HIDI data requested is overbroad.  Heartland has never contended that the appropriate geographic scope of this litigation spans the state of Missouri.  (*See* Doc. 249 at ¶ 53-55 (defining the relevant market as the "Kansas City metropolitan area" in Heartland's Third Amended Complaint).) Therefore, the propounded discovery is not relevant on its face.  Heartland offers no way to limit the scope of the propounded discovery of the HIDI data, and the Court is unfamiliar with any way to do so.  The Hospital Defendants have supported their objections with the Data Use Agreement from HIDI that outlines the breadth of the available data elements.  (Doc. 886 Ex. A (Sealed).)  Heartland has not carried its burden with respect to this discovery and its motion to compel with respect to Request 2 to the Hospital Defendants is denied.  ***Owens v. Sprint/United Mgmt. Co.***, 221 F.R.D. 649, 652 (D. Kan. 2004) (noting that when a request is overly broad on its face or when the relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevance of the request).

### 2.  Vendor Volume Agreements.

Heartland moves the Court to order Shawnee Mission and Carondelet to produce documents reflecting agreements with vendors for volume discounts,

alleging that these documents are relevant because Defendants have opened the door to the issue of vendor rebates and volume agreements at several depositions of two physician founders of Heartland.  (Doc. 864 at 11 (Sealed).)  Shawnee Mission and Carondelet argue that these documents are wholly irrelevant to the litigation.  (Doc. 866 at 8 (Sealed).)

Noting the authority regarding relevancy discussed above, the Court agrees with Shawnee Mission and Carondelet.  Heartland offers no argument to support the documents' relevance other than that the Hospital Defendants asked deposition questions and therefore Heartland is "entitled" to the discovery to "rebut, contradict or put into context any attacks on Heartland at trial."  (Doc. 864 at 11 (Sealed).)  Shawnee Mission and Carondelet inform the Court that the issue was raised in passing.  Regardless of whether the Hospital Defendants pursued deposition questions along this vein, however, the Court can see no relevance of a vendor-hospital relationship to the claims made in this litigation.  The Court cannot fathom how these documents could be relevant to the subject matter of the litigation.  *See **Gheesling v. Chater***, 162 F.R.D. 649, 650 (D. Kan. 1995) (noting that the requesting party must specify how the requested discovery is relevant and that discovery requests should be considered relevant and allowed "if there is any possibility that the information sought may be relevant to the subject matter of

[the] action" unless "it is clear that the information sought can have no possible bearing upon the subject matter of the action"). Heartland's motion to compel with respect to Shawnee Mission Requests 26 and 27 and Carondelet Requests 28 and 29 is denied.

### 3. Metro Healthcare Issues.

Heartland moves the Court to order Shawnee Mission to produce "all compilations or other files . . . that contain newspaper articles, periodicals or other publications in connection with health care related issues in the Kansas City metropolitan area." (Doc. 864 Ex. B4 at 13 (Sealed).) Heartland asserts that these documents are relevant "to show that SMMC monitored the market closely" and "will assist in piecing together information about the relevant product and geographic market, as well as the state of mind, plans, intent and knowledge" concerning the alleged antitrust boycott. (Doc. 864 at 12 (Sealed).) Shawnee Mission responds that the documents are inadmissible hearsay, that Heartland could gather the same documents on its own, and that production of the documents would involve significant costs. (Doc. 886 at 11 (Sealed).)

The Court denies Heartland's motion with respect to this discovery request. If what Heartland seeks is the actual news documents, it could certainly gather that information on its own, at far less expense. Shawnee Mission has supported its

undue burden objection with an affidavit stating that the file it maintains is 6300 pages in length, the production of which would entail "significant costs." (Doc. 886 Ex. 8 ¶ 4 (Sealed).) Additionally, Heartland's request is overbroad, as it seeks production of a file containing news items spanning "every health care issue in the Kansas City metropolitan area" (Doc. 886 Ex. 8 ¶ 4), which obviously far exceeds the scope of this litigation.

If what Heartland seeks is evidence of the fact that Shawnee Mission maintains a file of news items, the propounded discovery is not the appropriate method for obtaining the information. Heartland informs the Court that Shawnee Mission's witness testified that Shawnee Mission "generally followed the local market and stayed aware of current events and market changes such as new competitors arriving in the market." (Doc. 864 at 12 (Sealed).) If Heartland needed additional information about Shawnee Mission's state of mind, plans, intent and knowledge, additional deposition questions on this topic should have been pursued, rather than pursuing a costly production of a file of news clippings. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (stating that discovery "shall be limited by the court" if the discovery sought is "obtainable from some other source that is more convenient, less burdensome, or less expensive"). Heartland's motion to compel with respect to Shawnee Mission Request 32 is denied.

### 4.  Privileged Documents.

Heartland moves the Court to order Saint Luke's to produce "all communications to or from any lobbyist in connection with issues associated with physician-ownership in hospitals, specialty hospitals, surgery centers or other in-patient or out-patient facilities."  (Doc. 864 Ex. B3 at 13 (Sealed).)  Saint Luke's objects to production based on the First Amendment privilege and the Noerr-Pennington doctrine.  (Doc. 886 at 11-13 (Sealed).)

Saint Luke's objection is difficult to follow.  The Noerr-Pennington doctrine places certain "[j]oint efforts to influence public officials" beyond the reach of the antitrust laws.  *United Mine Workers of Am. v. Pennington,* 381 U.S. 657, 670 (1965); *E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 136 (1961); *see also Tal v. Hogan*, 453 F.3d 1244, 1259-60 (10th Cir. 2006) (discussing the contours of Noerr-Pennington doctrine); *GF Gaming Corp. v. City of Black Hawk, Colo.*, 405 F.3d 876, 883-84 (10th Cir. 2005) (discussing same).

Saint Luke's is correct in arguing that the "First Amendment grants Saint Luke's the right to lobby the government for legislative change."  (Doc. 886 at 12 (Sealed)); *Tal*, 453 F.3d at 1259 ("The [Noerr-Pennington] doctrine is grounded in the First Amendment . . .").  Saint Luke's is also correct in noting that "Noerr-Pennington recognizes that such lobbying efforts cannot form the basis of antitrust

31

liability." (Doc. 886 at 12(Sealed)); *Tal*, 453 F.3d at 1259 (stating that the Noerr-Pennington doctrine "exempts from antitrust liability any legitimate use of the political process by private individuals, even if their intent is to eliminate competition").

This is where Saint Luke's argument ends, however. Saint Luke's expressly states that it does not object to production on the basis of the First Amendment privilege of association. Saint Luke's assertion of the Noerr-Pennington doctrine as a protection of its lobbying efforts from antitrust liability has no bearing on the discovery of otherwise relevant information. Saint Luke's could be arguing that the information is not relevant because it cannot form the basis for liability, but Saint Luke's presents no analysis of this topic. In addition, Heartland is not seeking the lobbyist's documents, but is seeking Saint Luke's communications to or from any lobbyist. This information is relevant to testing Saint Luke's Noerr-Pennington defense and to Saint Luke's participation in the Kansas City healthcare market. Heartland's motion to compel Saint Luke's Request 29 is granted.

### 5.  Documents Heartland Alleges Shawnee Mission Possesses.

Heartland moves the Court to order Shawnee Mission to produce documents identifying previously-resolved medical malpractice or negligence matters involving Shawnee Mission's inpatient and outpatient facilities from January 1,

2002 to present.  (Doc. 864 at 16 (Sealed).)  Shawnee Mission informs the Court

that it has agreed to produce a list of current medical malpractice lawsuits; objects

to the request as irrelevant to any claim or defense in the litigation; and objects that

the development of a list would be unduly burdensome because it currently has a

list going only back to January 1, 2006.  (Doc. 886 at 10.)

Heartland presents no argument informing the Court why it believes these

documents are relevant and argues only that other parties to this litigation have

provided the information, so Shawnee Mission should provide it as well.  (Doc.

864 at 16.)  Keeping in mind the standards of relevance outlined above, the Court

cannot see any relevance to this propounded discovery, and Heartland's motion to

compel with respect to Shawnee Mission Request 22 is denied.

### 6.  Supplementation.

Finally, Heartland moves the Court to order Shawnee Mission to supplement

its document request responses.  (Doc. 864 at 17 (Sealed).)  Shawnee Mission

responded to this discovery as overly broad and unduly burdensome.  (Doc. 864

Ex. B4 at 16 (Sealed).).  Heartland informs the Court that it offered to alleviate any

claim of burden by limiting its request to the following categories:

- Contracts and negotiations of contracts containing network
  configuration clauses, or similar rate penalty or geographic limitation
  clauses, including any drafts that may or may not have been executed;

- Communications (external and internal) relating to the negotiation of the same;

- Communications relating to requests to add facilities to networks in which SMMC participates;

- Communications (both internal and external) relating to physician-owned facilities in Kansas City; and

- Communications among the defendants relating to (1) network configuration language, (2) physician-owned hospitals, or (3) this lawsuit.

(Doc. 864 at 17-18 (Sealed).)  Shawnee Mission responds that its productions to Heartland's request 34 through 36 of the same discovery request cover the first two categories of documents, that it has agreed to produce the third category of documents, and that it has also produced all documents responsive to the fifth category of documents.  (Doc. 886 at 13-14.)

This leaves the Court to resolve Shawnee Mission's objections to the fourth category of supplementation: Communications (both internal and external) relating to physician-owned facilities in Kansas City.  Shawnee Mission contends that this request is overbroad, and therefore burdensome, because it "would include, for example, every document referencing Shawnee Mission's own joint-venture surgery center that is partially owned by physicians."  (Doc. 886 at 13 (Sealed).)

Some communications concerning physician-owned facilities in Kansas City would clearly be relevant to the central issue in this litigation.  However, these

communications are relevant only with regard to the issues in this litigation, such

as competition, for example.  As currently worded, Heartland's proposal would

require production of communications internal to Shawnee Mission concerning

scheduling a patient at Shawnee Mission's physician-owned facility, or other day-

to-day communications that are not calculated to lead to the discovery of

admissible evidence in this case.  For this reason, the Court reforms the fourth

category as follows:

> Communications (both internal and external) concerning
> competition and the effects of competition from
> physician-owned facilities in Kansas City.

This is the only proposal currently before the Court and, at this very late stage in

the litigation, the Court declines to attempt to create its own manifestation of

Heartland's intent with its request.

Of course, Shawnee Mission is bound to supplement previous discovery

requests.  FED. R. CIV. P. 26(e)(2) ("A party is under a duty seasonably to amend a

prior response to an interrogatory, request for production, or request for admission

if the party learns that the response is in some material respect incomplete or

incorrect and if the additional or corrective information has not otherwise been

made known to the other parties during the discovery process or in writing.").  Any

discovery requests that have previously been propounded (and not objected to by

Shawnee Mission without resolution or modification by this Court) that would further pertain to communications relating to physician-owned facilities in Kansas City shall be supplemented by Shawnee Mission.

Heartland's motion to compel with respect to Shawnee Mission Request 41 is granted in part and denied in part.


CONCLUSION

Defendants' motions (Docs. 802, 809, 812, 876 (Sealed) and 816) are DENIED for the reasons stated more fully herein.  Defendant Saint Luke's motion (Doc. 873 (Sealed)) is GRANTED IN PART and DENIED IN PART as stated in this Order.  Heartland's motion (Doc. 864 (Sealed)) is GRANTED IN PART and DENIED IN PART for the reasons stated more fully herein.  Any requests for attorneys' fees or sanctions in conjunction with these motions are also DENIED.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas on this 6th day of September, 2007.

        __s/__
        DONALD W. BOSTWICK
        U.S. MAGISTRATE JUDGE